John A. Vogt (State Bar No. 198677)
javogt@JonesDay.com
Ann T. Rossum (State Bar No. 281236)
atrossum@JonesDay.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
Telephone:  949.851.3939
Facsimile:  949.553.7539

Jayant W. Tambe*
jtambe@JonesDay.com
JONES DAY
222 East 41st Street
New York, NY  10017.6702
Telephone:  212.326.3939
Facsimile:  212.755.7306

J. Todd Kennard*
jtkennard@JonesDay.com
Brandy H. Ranjan*
branjan@JonesDay.com
JONES DAY
325 John H. McConnell Blvd., Suite 600
P.O. Box 165017
Columbus, OH  43216-5017
Telephone:  614.469.3939
Facsimile:  614.461.4198

Attorneys for Defendant
iYOGI, INC.

*Motions for admission pro hac vice pending.

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI ESTRADA, PATRICIA GOODMAN and KIM WILLIAMS-BRITT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>iYOGI, INC., a New York corporation,<br><br>Defendant. | Case No. 2:13-cv-01989-WBS-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF iYOGI, INC.'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT**<br><br>Hearing Date:    January 27, 2014<br>Hearing Time:   2:00 p.m.<br>Location:           Courtroom 5 |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

INTRODUCTION .................................................................................................................... 1

4

SUMMARY OF ALLEGATIONS ........................................................................................... 2

5

     I.     ATDS Issues (Counts I, II, and III) ............................................................. 2

6

     II.    Do Not Call Issue (Count IV) ..................................................................... 3

7

STANDARD OF REVIEW ...................................................................................................... 4

8

LEGAL ARGUMENT .............................................................................................................. 4

9

     I.     Plaintiffs Fail To State A Claim For Violations Of The TCPA's ATDS

10

             Provisions ..................................................................................................... 4

11

     II.    Plaintiffs Fail To State A Claim For Violations Of The Do Not Call

12

             Registry ........................................................................................................ 7

13

             A.     The Complaint Alleges That The "Do Not Call Registry" Putative

14

                    Class Members Had "Established Business Relationships" With

15

                    iYogi .............................................................................................. 9

16

             B.     Plaintiff Williams-Britt Does Not Claim She Received A

17

                    "Telephone Solicitation" From iYogi Because She Fails To Allege

18

                    That She Answered Any Calls .......................................................  10

19

CONCLUSION ........................................................................................................................ 11

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................... 4, 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 4, 11

*City of Fresno v. United States*,
    709 F. Supp. 2d 888 (E.D. Cal. 2010) ..................................................................... 7

*Connelly v. Hilton Grand Vacations Co., LLC*,
    No. 12CV599, 2012 U.S. Dist. LEXIS 81332 (S.D. Cal. June 11, 2012) ............................ 5, 7

*Genaw v. NCO Fin. Sys., Inc.*,
    No. 2:12-CV-0260-J, 2013 U.S. Dist. LEXIS 64483 (N.D. Tex. May 06, 2013) ................... 10

*In re Stac Electronics Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................................. 4

*Iniguez v. The CBE Grp.*,
    No. 2:13-cv-00843-JAM-AC, 2013 U.S. Dist. LEXIS 127066 (E.D. Cal. Sept. 5,
    2013) ................................................................................................................. 6

*Johansen v. Vivant, Inc.*,
    No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ................................... 1, 5, 6, 7

*Jones v. FMA Alliance Ltd.*,
    No. 13-11286-JLT, --- F. Supp. 2d ---, 2013 WL 5719515 (D. Mass. Oct. 17, 2013) ............ 5

*Knutson v. Reply!, Inc.*,
    No. 10-cv-1267, 2011 WL 1447756 (S.D. Cal. Apr. 13, 2011) .................................... 6, 7

*Knutson v. Reply!, Inc.*,
    No. 10-CV-1267, 2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ................................... passim

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ............................................................................. 7, 11

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) .............................................................................. 4, 6

*Wood v. Motorola Mobility, Inc.*,
    No. C-11-04409-YGR, 2012 WL 892166 (N.D. Cal. Mar 14, 2012) ................................. 7

*Zelma v. Conway*,
    No. 2:12-cv-256-DMC-JBC, 2013 U.S. Dist. LEXIS 175668 (D.N.J. Dec. 11, 2013) .......... 10

STATUTES

47 U.S.C. § 227(a)(1) .................................................................................................. 1, 2, 4

47 U.S.C. § 227(b)(1)(A) ..................................................................................................... 7

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................................... 1, 2

47 U.S.C. § 227(c)(5) ......................................................................................... 7, 8, 9, 10

OTHER AUTHORITIES

*Petition for Declaratory Ruling Regarding Non-Telemarketing Use of Predictive Dialers*,
   CG Doc. No. 02-278 ...................................................................................................... 11

Report and Order, 18 F.C.C. Rcd. at 14079 ........................................................................ 9

Report and Order, 18 F.C.C. Rcd. at 14079-80 ............................................................... 10

Report and Order, 18 FCC Rcd. at 14102-03, ¶¶ 147-48 .................................................. 3

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991
   (SoundBite Communications, Inc. Pet. For Expedited Declaratory Ruling)*,
   FCC 12-143, 27 FCC Rcd. 15391 (Nov. 29, 2012) ........................................................ 2

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   FCC 03-153, 18 FCC Rcd. 14014 (July 3, 2003) (hereinafter, "2003 Report and
   Order") ......................................................................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1

## INTRODUCTION

2       Plaintiffs' Complaint purports to assert claims for violations of the Telephone Consumer

3 Protection Act ("TCPA") based on allegations that, among other things, defendant iYogi, Inc.

4 ("iYogi") called plaintiffs' and class members' cell phones.  (*See generally* Complaint at Counts

5 I, II, and III.)  But the Complaint fails to plead factual allegations sufficient to state a claim for

6 relief that the alleged calls were made using an automatic telephone dialing system ("ATDS").

7       The use of an ATDS is an express element for a plaintiff to plead and prove under the

8 TCPA's plain language.   *See* 47 U.S.C. § 227(b)(1)(A)(iii).   Multiple federal courts have

9 dismissed TCPA claims (including class action claims) in similar circumstances.  *See, e.g.,*

10 *Knutson v. Reply!, Inc.*, No. 10-CV-1267, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011)

11 (dismissing TCPA class action claim that alleged that "Defendant used an 'automatic dialing

12 system as defined by 47 U.S.C. § 227(a)(1).'"); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012

13 WL 6590551, at *1 (N.D. Ill. Dec. 18, 2012) (granting motion to dismiss a class action complaint

14 that alleged that defendant called plaintiff's cell phone "using an automatic telephone dialing

15 system . . . without obtaining Plaintiff's permission prior to the calls").  The same applies here to

16 plaintiffs' conclusory ATDS allegations.

17       Plaintiffs' only other claim relates to the national "Do Not Call" registry.  This claim also

18 falls short with respect to named plaintiff Williams-Britt and the "Do Not Call Registry" class.

19 The Complaint alleges that iYogi called putative class members after their subscription

20 agreements ended, but the plain language of the Federal Communication Commission's ("FCC"

21 or "Commission") regulations, as well as guidance it has released interpreting those regulations,

22 allows companies to call consumers with whom they have an established business relationship for

23 up to eighteen months after the relationship ends.  Plaintiffs do not identify any calls after the

24 eighteen-month window closed.  Plaintiff Williams-Britt's do-not-call claims fare no better

25 because she fails to state that she answered any of the calls she claims iYogi made to her.  Thus

26 she cannot claim that the alleged calls were "telephone solicitations," a key fact without which

27 her do-not-call claims fail as a matter of law.  Accordingly, Count IV should be dismissed with

28 respect to the proposed "Do Not Call Registry" class and plaintiff Williams-Britt.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

### SUMMARY OF ALLEGATIONS[1]

iYogi provides technical support services to consumers and small businesses across a wide range of computing devices and software application.  (Compl. ¶ 1.)  According to the Complaint, iYogi offers its services through yearly flat-free technical support plans.  (*Id*. at ¶ 2.)

### I.   ATDS Issues (Counts I, II, and III)

Plaintiffs assert that iYogi called various classes of plaintiffs "without prior express consent, and by utilizing an automatic telephone dialing system."  (*Id*. at ¶ 53 (Count I, "No Service Plan" Class), ¶ 60 (Count II, "Expired Service Plan" Class), ¶ 67 (Count III, "Revocation" Class).)  Parroting the ATDS statutory definition, plaintiffs allege that iYogi placed calls in violation of 47 U.S.C. § 227(b)(1)(A)(iii) "using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers."  (*Id*. at ¶¶ 40, 51, 58, 65).  Those allegations largely mimic the statutory and regulatory language.  *See* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity (A) to store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."); 47 C.F.R. § 64.1200(f)(2) (same).

Recognizing recent guidance from the FCC indicating that equipment is *not* an ATDS if it requires human intervention to place calls,[2] the Complaint also alleges, in a similarly conclusory fashion, that iYogi placed the calls "simultaneously and without human intervention."  (Compl. ¶¶ 52, 59, 66.)  Finally, the Complaint alleges that iYogi "utilized interactive voice recognition technology, also known as a predictive dialer" (*Id.* ¶ 40), again without any indication regarding how or why Plaintiffs reached this conclusion.[3]

---

[1] iYogi assumes certain facts alleged in the Complaint to be true for purposes of this motion only.

[2] *See* FCC, Declaratory Ruling, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (SoundBite Communications, Inc. Pet. For Expedited Declaratory Ruling)*, FCC 12-143, 27 FCC Rcd. 15391, 15932 n.5 (Nov. 29, 2012) ("The Commission has emphasized that [the] definition [of ATDS] covers any equipment that has the specified capacity to generate numbers and dial them *without human intervention* . . . ." (emphasis altered)).

[3] "Predictive dialer" is a term of art in the telemarketing industry with a very specific

- 2 -

While the Complaint largely mimics the statute, plaintiffs do not provide factual allegations that are often associated with calls allegedly made with an ATDS or a "predictive dialer." Plaintiffs never allege, for example, that they or any class members ever had even one dropped call from iYogi.[4] Plaintiffs also never say that there was any pause or delay after they or even a single putative class member ever answered one of the myriad of calls they claim were made using an ATDS.

The absence of these kinds of allegations is perhaps not surprising, as plaintiffs aver that they answered only a handful of the calls upon which their claims are purportedly based. *See* Compl. ¶ 25 ("Plaintiff Estrada did not answer the vast majority of the calls . . . ."), ¶ 31 ("[Goodman] did not answer the vast majority of these calls."). In fact, plaintiff Williams-Britt fails to specifically allege that she actually answered ***even a single call*** that she claims iYogi made. *See id.* ¶¶ 34-39.

## II.     Do Not Call Issue (Count IV)

In Count IV, plaintiffs seek relief on behalf of persons who (1) received more than one telephone call by iYogi after their service plan had expired and (2) were registered on the national Do Not Call Registry, among other things. (Compl. ¶ 42 (Do Not Call Registry Class).) The Complaint, however, does not specifically identify any calls made more than eighteen months after putative class members' service plans expired. (*See generally* Compl.)

---

(continued…)

definition. The FCC has defined a "predictive dialer" as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." FCC, Report and Order, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 03-153, 18 FCC Rcd. 14014, 14022 n.31 (July 3, 2003) (hereinafter, "2003 Report and Order"). The Complaint is devoid of facts to support plaintiffs' assertion that iYogi used this type of technology. Moreover, telemarketers and other businesses use other types of dialing technology, such as preview dialers, that may not be considered "automatic telephone dialing systems" under the TCPA.

[4] Dropped calls are one possible sign of the potential use of a predictive dialer. *See* 2003 Report and Order, 18 FCC Rcd. at 14102-03, ¶¶ 147-48.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

**STANDARD OF REVIEW**

A court must dismiss a cause of action pursuant to Rule 12(b)(6) when the allegations "fail to state claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although courts construe factual allegations as true in connection with a motion to dismiss, that "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "formulaic recitation of the elements" is insufficient to survive a motion to dismiss because "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Instead, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citation omitted). As a result, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

**LEGAL ARGUMENT**

**I.** **Plaintiffs Fail To State A Claim For Violations Of The TCPA's ATDS Provisions**

Federal courts have repeatedly dismissed claims (including putative class action claims under the TCPA) where a plaintiff merely makes conclusory allegations regarding an ATDS. For example, in *Knutson*, the United States District Court for the Southern District of California considered a class action complaint that alleged that "[d]efendant used an 'automatic dialing system as defined by 47 U.S.C. § 227(a)(1).'" 2011 WL 291076, at *2. The Court granted the defendant's motion to dismiss, holding that "[p]laintiff has failed to state a claim for relief based on the Telephone Consumer Protection Act because he has failed to plead one of the necessary elements." *Id.* "As an isolated assertion," the Court noted in discussing another decision that rejected a similar allegation, "*it is conclusory to allege that [calls] were [made] 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be*

- 4 -
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1  *called, using a random or sequential number generator.  Such a naked assertion need not be*

2  *taken as true.*"  *Id.* (quoting *Kramer v. Autobytel, Inc.*, 2010 U.S. Dist. LEXIS 137257, at \*12-13

3  (N.D. Cal. Dec. 29, 2010)) (emphasis added).

4         Similarly, in *Johansen*, another federal court granted a defendant's motion to dismiss a

5  class action complaint that alleged "[defendant] called Johansen's cellular phone number using an

6  automatic telephone dialing system . . . without obtaining Plaintiff's permission prior to the

7  calls."  2012 WL 6590551, at \*1.  The Court agreed with defendant Vivant's  argument that

8  "*pleading the use of an ATDS, without providing any other supporting facts, makes the allegation*

9  *a conclusory statement merely reciting the legal elements of a TCPA claim.*"  *Id.* at \*2 (emphasis

10  added).  After collecting various cases that have both granted and denied motions to dismiss, the

11  Court reasoned:

12  
13        In this case, Plaintiff provides no information about the two
      messages he allegedly received from Vivint other than stating that
      Vivint left prerecorded messages on his cellular telephone using an
14        ATDS.  ***Without enhancing his complaint with anything more***
      ***than the language already available in the statute, Plaintiff***
15        ***provides only a threadbare, formulaic recitation of the elements*** of
      a TCPA cause of action, which is not entitled to an assumption of
16        truth.  Use of an ATDS and the pre-recorded nature of the messages
      are not legal conclusions, they are facts.  Still, when a fact is itself
17        an element of the claim, as is the case here, it is not sufficient to
      recite that fact verbatim without other supporting details.
18  

19  *Id.* at \*3 (internal quotation marks and citations omitted) (emphasis added).  *See also Jones v.*

20  *FMA Alliance Ltd.*, No. 13-11286-JLT, --- F. Supp. 2d ---, 2013 WL 5719515, at \*1-2 (D. Mass.

21  Oct. 17, 2013) (dismissing complaint for failure to state a claim where plaintiff alleged "[o]n

22  information and belief . . . Defendant used an automated telephone dialing system . . . when it

23  made each and every call to Plaintiffs['] wireless numbers" because "[s]imply alleging the use of

24  an ATDS, without more, is insufficient to sustain a TCPA claim.").

25         In contrast to decisions like *Knutson* and *Johansen* that have dismissed TCPA claims

26  based on conclusory ATDS allegations, courts have declined to dismiss complaints that allege

27  *facts*, as opposed to mere recitations of statutory language, in support of the use of an ATDS.

28  *See, e.g., Connelly v. Hilton Grand Vacations Co., LLC*, No. 12CV599, 2012 U.S. Dist. LEXIS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

81332, at *13 (S.D. Cal. June 11, 2012) (refusing to dismiss complaint alleging that there was "a delay prior to a live person speaking to Plaintiffs or [no] transfer to a live person").[5]

Another example of the kinds of ATDS allegations that have survived a motion to dismiss is found in subsequent proceeding in *Knutson*.  After the Court dismissed the conclusory ATDS allegations in the decision discussed above, the plaintiff filed an amended complaint that contained additional factual allegations that were sufficient to withstand a motion to dismiss.  Those facts included: that when plaintiff "received the calls, he inquired as to who was calling and received no response.  After approximately five seconds, he could hear the line click over to another party."  *Knutson v. Reply!, Inc.*, No. 10-cv-1267, 2011 WL 1447756, at *1 (S.D. Cal. Apr. 13, 2011).

Here, plaintiffs' Complaint provides no such factual allegations regarding the use of an ATDS.  Instead, the reasoning of the initial decision in *Knutson* (where the Complaint provided only conclusory allegations along the lines of the statute) and *Johansen* apply here to mandate dismissal of Counts I, II, and III.  "Here, the complaint gives no details about the manner of the calls," and thus provides no basis to infer that the calls were made using an ATDS.  *Knutson*, 2011 WL 291076, at *2.

Plaintiffs' primary ATDS allegations are found in Paragraphs 51, 58, and 65 of the Complaint.  Those allegations merely assert, in a conclusory fashion, that iYogi used an ATDS to place calls by using language that parrots the TCPA.  *See supra* at 3-4 (comparing Complaint with statutory definition); (*see also* Compl. ¶¶ 40, 53, 60, 67).  Stripping away these legal conclusions couched as facts, *Warren*, 328 F.3d at 1139,  the Complaint provides "no factual

---

[5] *See also Iniguez v. The CBE Grp.*, No. 2:13-cv-00843-JAM-AC, 2013 U.S. Dist. LEXIS 127066, at *13 (E.D. Cal. Sept. 5, 2013) (alleging that artificial voice was used in addition to ATDS).  Although *Iniguez* denied CBE Group's motion to dismiss for failure to state a claim for the use of an ATDS, it explained that "Plaintiff's complaint alleges **both** that Defendant used an automatic telephone dialing system **and** that Defendant's system utilized an artificial voice." *Id.*  The Court reasoned that "[t]he allegation that Defendant's system utilized an artificial voice is based on Plaintiff's own experience when she answered Defendant's phone calls, and it is therefore not vague or conclusory." *Id.* at *13-14.  Here, plaintiffs have not alleged that iYogi used an artificial voice to place calls and, in any event, iYogi submits that the reasoning of *Knutson* and *Johansen* should apply.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1   content that [would] allow[] the Court to draw the reasonable inference that [iYogi] is liable for

2   the misconduct alleged." *City of Fresno v. United States*, 709 F. Supp. 2d 888, 913 (E.D. Cal.

3   2010) (quoting *Iqbal*, 556 U.S. at 678). Indeed, allegations that "simply parrot the language of

4   the statute . . . fail[] to meet the *Twombly/Iqbal* standard." *Wood v. Motorola Mobility, Inc.*, No.

5   C-11-04409-YGR, 2012 WL 892166, at *3 (N.D. Cal. Mar 14, 2012). In that regard, the

6   reasoning of *Knutson* and *Johansen* apply here.

7       Finally, while Courts sometimes allow plaintiffs to try to amend complaints to make

8   additional ATDS allegations, it is noteworthy that plaintiff Williams-Britt apparently failed to

9   answer ***even a single call*** that she claims iYogi made. (*Compare* Compl. ¶¶ 25, 31 (alleging that

10  plaintiffs Estrada and Goodman answered at least some calls) *with id.* ¶¶ 34-39.) In that event,

11  she presumably cannot plead facts that would support the use of an ATDS, such as a pause or a

12  click after she answered the phone. *Cf. Connelly*, 2012 U.S. Dist. LEXIS 81332, at *13; *Knutson*,

13  2011 WL 1447756, at *1. Furthermore, she would not know the purpose for which the calls were

14  placed when she failed to answer the phone, *cf.* 47 U.S.C. § 227(b)(1)(A) (exempting calls made

15  for emergency purposes). Indeed, the allegation that Williams-Britt (or other plaintiffs) did not

16  answer calls raises the question of how she can allege that iYogi actually placed the calls. *See,*

17  *e.g.*, FCC, *Caller ID and Spoofing*, www.fcc.gov/guides/caller-id-and-spoofing (last visited Dec.

18  18, 2013) ("Caller ID service . . . is susceptible to fraud. Using a practice known as 'caller ID

19  spoofing,' callers can deliberately falsify the telephone number and/or name relayed as the Caller

20  ID information to disguise the identity of the calling party."). Accordingly, iYogi respectfully

21  submits that the dismissal as to plaintiff Williams-Britt and the class she seeks to represent should

22  be with prejudice. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)

23  ("Although there is a general rule that parties are allowed to amend their pleadings, it does not

24  extend to cases in which any amendment would be an exercise in futility, or where the amended

25  complaint would also be subject to dismissal." (citations omitted)).

26  **II.    Plaintiffs Fail To State A Claim For Violations Of The Do Not Call Registry**

27      In Count IV, plaintiffs allege iYogi violated 47 U.S.C. § 227(c)(5) by placing calls to

28  individuals whose phone numbers were registered on the national Do Not Call Registry. (*See*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

*generally* Compl. ¶ 42 (defining "Do Not Call Registry Class"), ¶¶ 75-78.)  Plaintiffs assert this

claim on behalf of the putative "Do Not Call Registry Class", (*id.* at p. 12), defined as:

> Any person in the United States who (1) received more than one
> telephone call made by or on behalf of iYogi; (2) within any 12-
> month period; (3) after the call recipient's iYogi service plan had
> expired; and (4) the call recipient's telephone number was
> registered on the National Do Not Call Registry.

(*Id.* ¶ 42.)

Section 227(c)(5) of the TCPA creates a private right of action for "[a] person who has

received more than one telephone call within any 12-month period by or on behalf of the same

entity in violation of the regulations prescribed under this section." *Id.*   Those regulations, in

turn, provide, in relevant part:

> No person or entity shall initiate any ***telephone solicitation*** to: . . .
> A residential telephone subscriber who has registered his or her
> telephone number on the national do-not-call registry of persons
> who do not wish to receive telephone solicitations that is
> maintained by the Federal Government.

47 C.F.R. § 64.1200(c)(2) (emphasis added).  Importantly, the term "telephone solicitation" is

defined to exclude calls made pursuant to an established business relationship:

> The term *telephone solicitation* means the initiation of a telephone
> call or message for the purpose of encouraging the purchase or
> rental of, or investment in, property, goods, or services, which is
> transmitted to any person, but such term ***does not includ***e a call or
> message:
>
> > (i)      To any person with that person's prior express
> > invitation or permission; [or]
>
> > (ii)     To any person with whom the caller has an
> > ***established business relationship***[.]

47 C.F.R. § 64.1200(f)(14) (emphasis added).  "Established business relationship," in turn, is

defined to include a prior relationship for up to eighteen months preceding a call:

> The term *established business relationship* for the purposes of
> telephone solicitations means ***a prior*** or existing relationship
> formed by a voluntary two-way communication between a person
> or entity and a residential subscriber with or without an exchange of
> consideration, on the basis of the subscriber's purchase or
> transaction with then entity ***within the eighteen (18) months
> immediately preceding the date of the telephone call*** or on the
> basis of the subscriber's inquiry or application regarding products

- 8 -

1
2

> or services offered by the entity within the three months
> immediately preceding the date of the call, which relationship has
> not been previously terminated by either party.

3

47 C.F.R. § 64.1200(f)(5).

4

    Thus, to state a claim under 47 U.S.C. § 227(c)(5) by calling numbers registered on the

5

national Do Not Call Registry, a plaintiff must plead at least that: (i) a defendant placed more

6

than one telephone call within any 12-month period, (ii) to the same residential telephone

7

subscriber; (iii) who registered his or telephone number on the national Do Not Call Registry; and

8

(iv) the calls placed were "telephone solicitations."    47 U.S.C. § 227(c)(5);  47 C.F.R.

9

§ 64.1200(c)(2).  If an entity has an "established business relationship" with an individual, then

10

the entity does not place "telephone solicitations" by calling the individual.    47 C.F.R.

11

§ 64.1200(f)(14).

12

    The FCC has clarified, moreover, that "[t]he 18-month time period [described in the

13

definition of 'established business relationship'] runs from the date of the last payment or

14

transaction with the company, making it more likely that a consumer would expect a call from a

15

company with which they have recently conducted business."  2003 Report and Order, 18 F.C.C.

16

Rcd. at 14079.  In other words, "a company's prior relationship with a consumer entitles the

17

company to call that consumer for eighteen (18) months from the date of the last payment or

18

financial transaction, *even if the company does not currently provide service to that customer*."

19

*Id.* at 14080 (emphasis added).  "For example, a consumer who once had telephone service with a

20

particular carrier or a subscription with a particular newspaper could expect to receive a call from

21

those entities in an effort to 'winback' or 'renew' that consumer's business within eighteen (18)

22

months."  *Id.*

23
24

    A.    **The Complaint Alleges That The "Do Not Call Registry" Putative Class Members Had "Established Business Relationships" With iYogi.**

25

    The Complaint is insufficient to state a claim for violations of 47 U.S.C. § 227(c)(5) and

26

the regulations enacted pursuant to that provision with respect to the "Do Not Call Registry"

27

Class.  The Complaint alleges that "iYogi offers its services through yearly flat-fee technical

28

support plans" on an annual subscription basis.  *See* Compl. ¶¶ 2-3.  The class described in Count

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

IV, by definition, includes only prior subscribers to iYogi's services.  *See* Compl. ¶ 42.  Because the putative class members had "a prior or existing relationship formed by a voluntary two-way communication between [iYogi] and [plaintiffs]," 47 C.F.R. § 64.1200(f)(5) – as demonstrated by their subscription to iYogi's services, *see* Compl. ¶ 42 – iYogi is "entitle[d] . . . to call [such] consumer[s] for eighteen (18) months from the date of the last payment or financial transaction, *even if [iYogi] d[id] not currently provide service to [such] customer[s]*." 2003 Report and Order, 18 F.C.C. Rcd. at 14079-80.  Such calls, to customers with whom iYogi had an "established business relationship," are not considered "telephone solicitations" and cannot constitute violations of the national Do Not Call Registry provisions.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2), (f)(5), (f)(14); *see also, e.g., Zelma v. Conway*, No. 2:12-cv-256-DMC-JBC, 2013 U.S. Dist. LEXIS 175668, at *5-7 (D.N.J. Dec. 11, 2013) (dismissing plaintiff's amended complaint for failure to state a claim where she had an established business relationship with Prevention Magazine, who called her to solicit a renewal).  Accordingly, the class claims asserted in Count IV should be dismissed.

**B.**      **Plaintiff Williams-Britt Does Not Claim She Received A "Telephone Solicitation" From iYogi Because She Fails To Allege That She Answered Any Calls.**

The Complaint is also insufficient to state a claim for violations of 47 U.S.C. § 227(c)(5) and the regulations enacted pursuant to that provision with respect to named plaintiff Williams-Britt.  Telephone solicitations are defined as calls made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 C.F.R. § 64.1200(f)(14). It is not a violation of 47 C.F.R. § 64.1200(c)(2) to call individuals who are registered on the national Do Not Call Registry for other purposes.  Thus, in order to state a claim for violations of 47 C.F.R. § 64.1200(c)(2), a plaintiff must plead, among other things, facts that are sufficient to create a reasonable inference that the calls at issue were made for the purpose of, in this case, encouraging the purchase of iYogi's services.  *See also Genaw v. NCO Fin. Sys., Inc.*, No. 2:12-CV-0260-J, 2013 U.S. Dist. LEXIS 64483, at *2-4 (N.D. Tex. May 06, 2013) (dismissing do not call claims where plaintiff failed to allege that calls were made to deliver an advertising or solicitation message).  Plaintiff Williams-Britt does not plead such facts, nor could she apparently

- 10 -

1  do so, because she does not allege that she answered any of the calls that form the basis of her

2  claims.  *See supra*.  Thus, even assuming that iYogi actually called Williams-Britt, Williams-Britt

3  is not able to describe the purpose for such calls.

4    Although the Complaint is devoid of any facts that would establish the purpose of the calls

5  iYogi allegedly place to plaintiff Williams-Britt, it does make blanket, conclusory assertions that,

6  for example, "iYogi . . . places *telemarketing* calls to consumers who have never had an iYogi

7  service plan."  Compl. ¶ 19 (emphasis revised).  But such "formulaic recitation of the elements"

8  is insufficient to survive a motion to dismiss because "a plaintiff's obligation to provide the

9  'grounds' of his 'entitle[ment] to relief' requires *more than labels and conclusions*."  *Twombly*,

10  550 U.S. at 555 (emphasis added) (citation omitted).  Furthermore, because a plaintiff who cannot

11  allege that she answered calls could not possibly correct this pleading deficiency, the dismissal as

12  to plaintiff Williams-Britt and the class she seeks to represent should be with prejudice.  *See*

13  *Steckman*, 143 F.3d at 1298.

14  ### CONCLUSION

15    This Court should not accept plaintiffs' invitation to allow them to conduct a fishing

16  expedition through discovery.  Without scrutinizing plaintiffs' complaint for compliance with the

17  pleading standards set forth in *Iqbal* and *Twombly*, this Court would invite endless litigation

18  against any company that, like iYogi, attempts to contact its customers for legitimate business

19  purposes.  Indeed, as one recent FCC petition indicates, "there has been an 800% increase in the

20  number of predictive dialer class actions filed in the last few years," and, including complaints

21  that reference the broader class of "autodialers," "the true number of such class actions is likely

22  much higher."  Communication Innovators, *Petition for Declaratory Ruling Regarding Non-*

23  *Telemarketing Use of Predictive Dialers*, CG Doc. No. 02-278, Pet. at 15, CG Doc. No. 02-278

24  (filed June 7, 2012).  Especially with the increasing prevalence in cellular telephones as a sole

25  means for contacting many individuals, *id.* at 22-23, plaintiffs' firms are seeking to line their

26  pockets with the unnecessary legal fees incurred by companies attempting to do nothing more

27  than conduct legitimate business operations.  Ensuring that the claims they are asserting have

28  some legitimate basis in fact, before opening the gates to costly discovery, will promote the

consumer protection goals articulated in the TCPA by ensuring that excessive and unnecessary litigation costs are not shifted to the very consumers the TCPA is meant to protect.

For the foregoing reasons, Counts I through III of plaintiffs' complaint should be dismissed in whole, Count IV should be dismissed with respect to Plaintiff Williams-Britt and the "Do Not Call Registry" class, and iYogi respectfully submits that the dismissal with respect to Williams-Britt should be with prejudice.

Dated: December 18, 2013                     JONES DAY


                                             By: */s/ John A. Vogt*
                                                 John A. Vogt
                                             ATTORNEYS FOR DEFENDANT
                                             iYOGI, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**