Sean P. Reis (SBN 184044)
sreis@reisfirm.com
EDELSON PC
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: 949.459.2124

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

[Additional counsel appearing on signature page.]

* *Pro Hac Vice* Admission to Be Sought

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI ESTRADA, PATRICIA GOODMAN and KIM WILLIAMS-BRITT individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br>v.<br>IYOGI, INC., a New York corporation,<br>*Defendant*. | Case No. 13-cv-01989<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-Britt bring this class action complaint against Defendant iYogi, Inc., to stop Defendant's practice of making unsolicited calls to the telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Defendant iYogi, Inc. claims to be "a leading provider of tech support services to consumers and small businesses across a wide range of computing devices and software applications." iYogi allegedly offers a number of tech support services like PC installation and recovery, anti-virus/spyware, data back-up and PC speed optimization.

2. iYogi offers its services through yearly flat-fee technical support plans.

3. However, after the one-year service plan expires, and in an effort to retain customers, Defendant iYogi makes repeated and harassing telephone calls to consumers' telephones, even in the face of *repeated* requests to stop calling.  Even more egregiously, Defendant also places telemarketing calls to consumers who have never been iYogi customers or otherwise interacted with them. Because these calls were made without the express consent of Plaintiffs and the other members of the Classes, and made with an automated telephone dialing system, each violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

4. Neither Plaintiffs, nor the other members of the proposed Classes ever provided their cellular telephone numbers to Defendant for the purpose of receiving telemarketing calls.

5. By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and the monies paid to their wireless telephone carriers for the receipt of such calls.

6. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs filed the

instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

7. Plaintiff Vicki Estrada is a natural person and citizen of the State of California.

8. Plaintiff Patricia Goodman is a natural person and citizen of the State of Texas.

9. Plaintiff Kim Williams-Britt is a natural person and citizen of the State of Kentucky.

10. Defendant iYogi, Inc. is a corporation incorporated in and existing under the laws of the State of New York, with its headquarters and principal place of business located at 181 Hudson Street, Unit 1C, New York, New York 10013. iYogi conducts business throughout the State of California, this District, and nationwide. Additionally, iYogi is registered to do business with the California Secretary of State (entity number C3430371) and maintains offices in this State.

## JURISDICTION AND VENUE

11. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute.

12. The Court has personal jurisdiction over Defendant and venue is proper in this District because it is registered to do business here and transacts significant amounts of business within this District. This District is additionally proper because Plaintiff Estrada resides here and a substantial portion of the conduct giving rise to this action occurred here.

## COMMON FACTUAL ALLEGATIONS

13. Defendant iYogi offers remote technical support for computers and related peripheral devices such as printers. Defendant's business functions on a subscription-based pricing model in which consumers sign up for a year-to-year flat fee service plan.

14. However, when the plans near or pass their date of expiration, Defendant iYogi resorts to aggressive sales tactics to get customers to renew their subscriptions for an additional fee, or in the event their plans lapsed, to sign up again: repeated and unsolicited telemarketing.

15. Then, even if the consumer informs the telemarketer that they are not interested in a new contract, and that they do not want to be called again, the calls continue unabated.

16. Once the service plan actually expires, the calls continue for months, with consumers receiving calls several times per week, and even several times per day.

17. Regardless of whether a consumer refuses the offer, had previously asked that Defendant not call, or expressly and repeatedly asks that the calls stop, Defendant will continue to call.

18. In addition to placing harassing calls to its former customers, iYogi also places telemarketing calls to consumers who have *never had an iYogi service plan*. Like calls placed to former customers, these calls can occur multiple times per week and even multiple times per day.

19. Defendant utilizes several different numbers in order to trick consumers into answering (instead of screening a recognizable number). Those numbers include but are not limited to: (877) 314-5230, (877) 384-6406, (877) 466-7164, (877) 314-5232, (877) 473-0276, (877) 687-6011, (877) 204-7985, (800) 237-3901, (877) 314-5231, (877) 891-2936, (866) 712-9860, and (866) 489-8390. Online complaint boards contain hundreds of consumer complaints regarding unwanted calls made by Defendant from the above listed numbers.

20. For example, some of the online complaints concerning phone number (877) 891-2936 state that iYogi makes "telemarketing calls," "call[s] incessantly," "hound[s] you to death," and fails to honor do-not-call requests.

21. In making the calls at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls

simultaneously and automatically connecting answered calls to then available telemarketers and disconnecting the rest (or placing them on hold). Accordingly, consumers receiving calls from Defendant are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").[1]

22. Defendant was and is aware that the above-described telephone calls were and are being made to consumers without those consumers' prior express consent and after they have expressly requested that the calls cease.

### FACTS SPECIFIC TO PLAINTIFF ESTRADA

23. Plaintiff Estrada retained Defendant's services over the phone in or around November 2011 to help with a computer printer issue. At that time, Plaintiff Estrada provided full payment for a one-year contract for ongoing computer support services. As the subscription was not an auto-renewal plan, Plaintiff Estrada's service plan expired in December 2012.

24. Leading up to the expiration of Plaintiff Estrada's service plan, Defendant placed numerous calls to her cellular telephone soliciting her to renew her service plan. Plaintiff explicitly stated that she was not interested in renewing her plan and expressly asked that Defendant not make further calls to her. By indicating that she did not wish to receive any more telephone calls from Defendant, and expressly requesting that Defendant not call her again, Plaintiff Estrada confirmed and re-established that Defendant iYogi did not have consent to call her.

---

[1] Defendant's use of an ATDS is further bolstered by it's own job posting, which states "URGENTLY NEED TEAM LEADERS FOR CUSTOMER ACTIVATION (DIALER) PROCESS WITH KNOWLEDGE OF DIALERS". *See* http://www.localjobswebsite.net/job-team-leader-customer-activation-dialer-iyogi-call-9990872304-delhi-ncr-gurgaon-abhishek-5-to-8-years-experience-jobs-india_NiD_304480.html.  Online consumer complaints also corroborate Defendant's use of an ATDS. *See, e.g.*, http://800notes.com/Phone.aspx/1-877-473-0276/4 "(I am tired of these calls.  Every day we receive 4-6 calls a day all times of the day.  No one there when you answer"…"I have also been getting phone calls from this number AT ALL TIMES OF THE DAY AND NIGHT!!!!!!!  So annoying!  Also with no one on the other end, and as soon as I hang up, they call right back!"…"Was getting numerous daily calls from this number with hangups.  When they started to leave extended messages on my answering machine (no words, just really loud offensive noise [,] maybe a fax signal but no faxes ever came through. I blocked their number. They then did the same thing with a "private" number. I block all anonymous calls. That worked for one week. They just started to use a new number 877-687-6011.").

25. In direct contrast to her requests, Defendant made phone calls to Plaintiff Estrada on dozens of occasions between January 2013 and the present, all after her service plan had expired. The calls came from such numbers as (877) 384-6406, (877) 466-7164, (877) 314-5230, and (877) 314-5232. The express purpose of these calls was to sell Plaintiff another subscription to iYogi's service.

26. In fact, Plaintiff Estrada received numerous calls per week, at times daily, from Defendant. For example, Plaintiff received calls from Defendant on July 15th, 16th, 17th, 18th, 23rd, 24th, 25th, 26th, and 31st.

27. Plaintiff Estrada did not answer the vast majority of calls because she recognized the telephone numbers on her caller ID as belonging to Defendant.

28. Plaintiff Estrada did not provide her cellular telephone number to Defendant for telemarketing purposes and never consented to receive telemarketing calls from Defendant. Even more, Plaintiff never consented to receive telemarketing calls from Defendant after her service plan expired and her contract with Defendant was finished.

29. Plaintiff Estrada's cellular telephone number has been registered with the National Do Not Call Registry since before she had any interaction with Defendant. Plaintiff Estrada re-registered her cellular telephone number with the National Do Not Call Registry on June 11, 2013, in an effort to stop Defendant's ongoing calls, yet still received calls from Defendant more than thirty days later.

**FACTS SPECIFIC TO PLAINTIFF GOODMAN**

30. In or around 2012, Plaintiff Goodman signed up for an iYogi service plan.

31. Leading up to the expiration of Plaintiff Goodman's service plan, Defendant placed numerous calls to her cellular telephone soliciting her to renew her service plan.

32. Plaintiff had been unhappy with the service provided by Defendant, and repeatedly informed Defendant that she had no interest in their service and that she wanted them to stop calling her. Specifically, prior to the expiration of her service plan, Plaintiff called as well as sent an email to Defendant stating that she had no interest in renewing her subscription and that she wanted the calls to stop. By indicating that she did not wish to receive any more telephone calls

from Defendant, and expressly requesting that Defendant not call her again, Plaintiff Goodman confirmed and re-established that Defendant iYogi did not have consent to call her.

33. Yet, following the expiration of her service plan in or around March 2013, Plaintiff Goodman received dozens of calls, sometimes multiple times per day, soliciting her to pay for a new service plan. Because Plaintiff recognized the incoming telephone numbers—(800) 237-3901 and (877) 473-0276—as associated with Defendant, she did not answer the vast majority of these calls.

34. On several occasions when she did answer the calls, Plaintiff Goodman answered the telephone only to be presented with nothing but silence at the other end of the line. At other times, the line would disconnect shortly after she answered.

35. On at least one occasion, when Plaintiff Goodman answered the phone there was a short pause, followed by a pre-recorded voice (a "robo-call") stating "please wait for the next available technician" (or a similarly worded statement).

36. In or around May 17, 2013, Plaintiff Goodman answered one of the numerous calls from Defendant and again requested that the calls cease. While the calls stopped briefly, they resumed on June 26, 2013.

37. Plaintiff Goodman did not provide her cellular telephone number to Defendant for telemarketing purposes and never consented to receive telemarketing calls from Defendant. Even more, Plaintiff never consented to receive telemarketing calls from Defendant after her service plan expired and her contract with Defendant was finished.

38. Plaintiff Goodman's cellular telephone number has been registered with the National Do Not Call Registry since before she had any interaction with Defendant. Plaintiff re-registered her cellular telephone number with the National Do Not Call Registry on May 6, 2013, in an effort to stop Defendant's ongoing calls, yet still received multiple calls from Defendant more than thirty days later.

**FACTS SPECIFIC TO PLAINTIFF WILLIAMS-BRITT**

39. Plaintiff Williams-Britt has never had an iYogi service plan, nor has she provided iYogi with her cellular telephone number.

40. Plaintiff's cellular telephone number has also been listed on the National Do Not Call Registry since prior to 2013.

41. Starting in or around August 2013, Defendant began calling Plaintiff's cellular telephone number from the phone number (877) 891-2936, among others.

42. On more than one occasion, Plaintiff answered the calls. When a live operator came on the line, the telemarketer would attempt to offer her computer protection services and pressed the fact that her computer warranty had expired. Plaintiff Williams-Britt, who had no interest in the services being offered, repeatedly requested that Defendant stop calling her. By indicating that she did not wish to receive any more telephone calls from Defendant, and expressly requesting that Defendant not call her again, Plaintiff Williams-Britt confirmed and re-established that Defendant iYogi did not have consent to call her.

43. Likewise, on some occasions when she answered, Plaintiff experienced a slight delay before the person on the other end of the line would be connected. Moreover, on occasions when Plaintiff did not answer the calls, Defendant's call would reach her voicemail and leave a message made up of only call center background noise.

44. After receiving numerous calls from Defendant, Plaintiff Williams-Britt did an online search for the inbound numbers and reviewed the online complaints regarding Defendant's calls. There, Plaintiff Williams-Britt confirmed that the calls were solicitations from Defendant for a computer related service she did not want or need.

45. Plaintiff was able to identify many calls made by Defendant from her caller ID system and therefore did not answer.

46. Defendant called Plaintiff well over a dozen times (and multiple times per day, occasionally just a few minutes after the previous call), including, for example, on September 6th, 7th, 9th, 11th, 12th, 13th, 14th, and 16th.

47. Plaintiff Williams Britt never provided her cellular telephone number to Defendant for any purpose and never consented to receive telephone calls from Defendant.

**CLASS ALLEGATIONS**

48. Plaintiffs jointly bring this action pursuant to Federal Rules of Civil Procedure

23(b)(2) and 23(b)(3) on behalf of themselves and a Class defined as follows:

**Cell Phone Class**

Any person in the United States who (1) received a telephone call; (2) on his or her cellular phone; (3) made by or on behalf of Defendant iYogi; and (4) for whom Defendant has no record of consent to call him or her.

Plaintiffs jointly bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and a Class defined as follows:

**Cell Phone Do Not Call Registry Class**

Any person in the United States who (1) received more than one telephone call; (2) on his or her cellular phone; (3) made by or on behalf of Defendant iYogi; (4) within any 12-month period; (5) while the cellular phone number was registered with the National Do Not Call Registry; and (6) for whom Defendant has no record of consent to call him or her.

Plaintiff Goodman brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as follows:

**Cell Phone Robo-Call Class**

Any person in the United States who (1) received a telephone call; (2) on his or her cellular phone; (3) made by or on behalf of Defendant iYogi; (4) that featured a pre-recorded or artificial voice; and (5) for whom Defendant has no record of consent to call him or her.

49. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definitions of the Classes. Members of the Classes can be identified through Defendant's records.

50. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

51. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and they have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

52. **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct constitutes a violation of the TCPA;

    (b)    whether the equipment Defendant used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    (c)    whether Defendant systematically made telephone calls to persons who did not previously provide it with prior express consent to receive such telephone calls;

    (d)    whether Defendant systematically made telephone calls to individuals whose telephone numbers were registered with the National Do Not Call Registry;

    (e)    whether Defendant systematically made telephone calls that featured a pre-recorded or artificial voice; and

    (e)    whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

53. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiffs and the Cell Phone Class)**

54.  Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

55.  Defendant made unsolicited telephone calls to cellular telephone numbers belonging to Plaintiffs and the other members of the Cell Phone Class without their prior express consent to receive such calls.

56.  Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

57.  Defendant utilized equipment that made the telephone calls to Plaintiffs and other members of the Cell Phone Class simultaneously and without human intervention.

58.  By making unsolicited telephone calls to Plaintiffs and members of the Cell Phone Class's cellular telephones without prior express consent, and by utilizing an automatic telephone dialing system, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

59.  As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Cell Phone Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

60.  Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Cell Phone Class.

**COUNT II**
**Violation of the TCPA, 47 U.S.C. § 227(c)(5)**
**(On behalf of Plaintiffs and the Cell Phone Do Not Call Registry Class)**

61.  Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

62. 47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may," bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

63. The Telephone Consumer Protection Act's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to "…(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

64. 47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

65. 47 C.F.R. § 64.1200(d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person

or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for *5* years from the time the request is made.

66.  Defendant violated § 64.1200(c) by initiating telephone solicitations to wireless telephone subscribers such as Plaintiffs and the Cell Phone Do Not Call Registry Class members who registered their respective cellular phone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendant, as set forth in § 64.l200(d)(3).

67.  Defendant and/or its agents made more than one unsolicited telephone call to Plaintiffs and members of the Cell Phone Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls.

68.  Defendant violated § 64.1200(d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as Plaintiffs and the Cell Phone Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

69.  Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Cell Phone Do Not Call Registry Class received more than one telephone call within a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of

Defendant's conduct as alleged herein, Plaintiffs and the Cell Phone Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

70. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Cell Phone Do Not Call Registry Class.

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff Goodman and the Cell Phone Robo-Call Class)**

71. Plaintiff Goodman incorporates by reference the foregoing allegations as if fully set forth herein.

72. Defendant made unsolicited telephone calls to telephone numbers belonging to Plaintiff Goodman and the other members of the Cell Phone Robo-Call Class without their prior express consent.

73. Defendant made unsolicited telephone calls to telephone numbers belonging to Plaintiff Goodman and the other members of the Cell Phone Robo-Call Class using a prerecorded or artificial voice, more commonly known as a "robo-call."

74. Defendant's telephone calls were made to the telephones of Plaintiff Goodman and other members of the Cell Phone Robo-Call Class without obtaining their prior express consent to make the calls.

75. By making, or having made on its behalf, unsolicited robo-calls utilizing an artificial or prerecorded voice to Plaintiff Goodman's and the Cell Phone Robo-Call Class's telephones without prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's illegal conduct, Plaintiff Goodman and the other members of the Cell Phone Robo-Call Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the Act.

76. Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages

recoverable by Plaintiff Goodman and the other members of the Cell Phone Robo-Call Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-Britt individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Vicki Estrada, Patricia Goodman, and Kim Williams-Britt as representatives of the Classes, and appointing their counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**VICKI ESTRADA, PATRICIA GOODMAN**, and **KIM WILLIAMS-BRITT** individually and on behalf of classes of similarly situated individuals,

Dated: January 8, 2014    By:   /s/ Christopher L. Dore
                                One of Plaintiffs' Attorneys

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sean P. Reis (SBN 184044)
sreis@reisfirm.com
EDELSON PC
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Tel: 949.459.2124

Stefan Coleman, Esq.*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: (877) 333-9427

* *Pro Hac Vice* Admission to Be Sought

**CERTIFICATE OF SERVICE**

  I, Christopher L. Dore, an attorney, hereby certify that on January 8, 2014, I served the above and foregoing ***First Amended Class Action Complaint***, by causing true and accurate copies of such paper to be filed and served upon all counsel of record via the Court's CM/ECF electronic filing system, on this the 8th day of January, 2014.

                /s/ Christopher L. Dore