Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

[Additional counsel appear on signature page.]

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI ESTRADA, PATRICIA GOODMAN and KIM WILLIAMS-BRITT individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br> *v.* <br><br> IYOGI, INC., a New York corporation, <br><br> *Defendant.* | Case No. 2:13-cv-01989-WBS-CKD <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** <br><br> Judge William B. Shubb <br> Magistrate Judge Carolyn K. Delaney |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on October 5, 2015 at 2:00 p.m., or at such other time as may be set by the Court, Plaintiffs Vicki Estrada, Patricia Goodman and Kim Williams-Britt will appear, through counsel, before the Honorable William B. Shubb, or any Judge sitting in his stead, in Courtroom 5, 14th Floor, of the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the proposed class action settlement reached between themselves and Defendant iYogi, Inc.

Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Parties' proposed class action settlement agreement and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

**VICKI ESTRADA**, **PATRICIA GOODMAN** and **KIM WILLIAMS-BRITT**, individually and on behalf of all others similarly situated,

Dated: August 21, 2015     By:  /s/ Benjamin H. Richman
                               One of Plaintiffs' attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Courtney C. Booth (Admitted *Pro Hac Vice*)
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 3

   A.   Plaintiffs' Allegations ............................................................................ 3

   B.   The Litigation and Settlement Discussions ............................................ 4

III. THE TERMS OF THE SETTLEMENT AGREEMENT ...................................... 6

   A.   Class Definition ..................................................................................... 6

   B.   Monetary Relief ..................................................................................... 6

   C.   Prospective Relief .................................................................................. 6

   D.   Class Representatives' Incentive Award ................................................. 6

   E.   Attorneys' Fees and Costs ...................................................................... 6

   F.   Release .................................................................................................. 6

   G.   Miscellaneous ....................................................................................... 7

IV.  THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR
     SETTLEMENT PURPOSES ................................................................................ 7

   A.   The Proposed Class Meets the Requirements of Rule 23 ........................ 8

      1.   The proposed Settlement Class is sufficiently numerous ................. 9

      2.   Settlement Class Members share common questions of law
           and fact ........................................................................................ 9

      3.   Plaintiffs' claims are typical of the Settlement Class Members'
           claims ......................................................................................... 10

      4.   Plaintiffs and Class Counsel will adequately represent the
           Settlement Class .......................................................................... 11

      5.   The proposed Settlement Class satisfies the requirements of Rule
           23(b)(3) ...................................................................................... 13

         i.   Common questions of law and fact predominate ....................... 13

         ii.  A class action is the superior method of resolving the
              controversy ........................................................................... 14

V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ......... 14

VI.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ......... 16

**A.**   **The Settlement is the Product of Arm's-Length, Informed, and Non-Collusive Negotiations Amongst Experienced Counsel** ..........................17

**B.**   **The Settlement is Clear of Defects and Provides Real, Immediate Relief** .....18

**C.**   **The Settlement Treats Settlement Class Members Fairly** ...............................21

**D.**   **The Settlement Falls Squarely Within the Range of Possible Approval** ........22

**VII.**   **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN** ................23

**VIII.**   **CONCLUSION** ...........................................................................................................24

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**:

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................ 7, 8, 13

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ........................................................................................ 23

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011) .................................................................................... 13

*Mims v Arrow Fin. Servs. LLC,*
    132 S. Ct. 740 (2012) ........................................................................................ 4

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) .................................................................................... 10

**United States Circuit Court of Appeals Cases**:

*Bateman v. Am. Multi-Cinema, Inc.,*
    623 F.3d 708 (9th Cir. 2010) ............................................................................ 8

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ............................................................................ 9

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................... 22

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ........................................................................ 16

*Evon v. Law Offices of Sidney Mickell,*
    688 F.3d 1015 (9th Cir. 2012) ........................................................................ 10

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................. 11, 13, 16

*In re Mego Fin. Corp. Secs. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ............................................................... 18, 22, 23

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) .......................................................................... 24

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) ........................................................................ 16

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ........................................................................ 22

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) .................................................................... 16, 22

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008).........................................................................9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir.2009).......................................................................21

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009).................................................................4, 15

*Stanton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).....................................................................21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010)........................................................10, 13, 14

*Zinser v. Accufix Research Institute*,
    253 F.3d 1180 (9th Cir. 2001).....................................................................14

**United States District Court Cases**:

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012)....................................................10, 11, 14

*Alberto v. GMRI, Inc.*,
    252 F.R.D. 652 (E.D. Cal. 2008)...............................................................9, 13

*Anderson-Butler v. Charming Charlie Inc.*,
    No. 14-cv-01921, 2015 WL 4599420 (E.D. Cal. July 29, 2015)......................24

*Arthur v. Sallie Mae, Inc.*,
    No. 10-cv-198 (W.D. Wash. 2012)...........................................................2, 19

*Baird v. Sabre Inc.*,
    995 F. Supp. 2d 1100 (C.D. Cal. 2014).......................................................19, 20

*Balschmiter v. TD Auto Finance LLC*,
    No. 13-cv-1186, 2014 WL 6611008 (E.D. Wis. Nov. 20, 2014)......................20

*Burton v. iYogi, Inc.*,
    No. 13-cv-06926 (S.D.N.Y.).......................................................................7

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)..................................................................9

*Ching v. Siemens Indus., Inc.*,
    No. 11-cv-04838, 2014 WL 2926210 (N.D. Cal. June 27, 2014)......................21

*Collins v. Cargill Meat Solutions Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011)................................................................22

*Ellison v. Steven Madden, Ltd.*,
    No. 11-cv-5935 (C.D. Cal. 2012).................................................................15

*Flores v. Velocity Exp., Inc.*,
    No. 12-cv-05790, 2013 WL 2468362 (N.D. Cal. June 7, 2013)........................8

*Grannan v. Alliant Law Grp., P.C.*,
  No. 10-cv-02803, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ...................................... 13

*Harris v. Vector Mktg. Corp.*,
  No. 08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................... 17

*Heffelfinger v. Elec. Data Sys. Corp.*,
  No. 07-cv-00101, 2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) ......................................... 8

*In re Capital One Telephone Protection Act Litig*,
  No. 12-cv-10064, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015) ...................................... 19

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)....................................... 17

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
  No. 11-md-2261 (S.D. Cal.)..................................................................................... 1, 19

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*,
  282 F.R.D. 486 (C.D. Cal. 2012) ................................................................................ 15

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 16, 18, 22

*In re TD Ameritrade Account Holder Litig.*,
  No. 07-cv-2852, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ...................................... 16

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ................................................................................ 12

*Kazemi v. Payless Shoesource, Inc.*,
  No. 09-cv-5142 (N.D. Cal. 2012)............................................................................ 1, 18

*Kesler v. Ikea U.S., Inc.*,
  No. 07-cv-0568, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008)......................................... 13

*Kramer v. Autobytel, Inc., et al.*,
  No. 10-cv-2722 (N.D. Cal.)................................................................................. 15, 18

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014)  ......................................................................... 9, 14

*Lee v. Stonebridge Life Ins. Co.*,
  289 F.R.D. 292 (N.D. Cal. 2013) ................................................................................ 10

*Lee v. Stonebridge Life Ins. Co.*,
  No. 11-cv-43 (N.D. Cal.)................................................................................... 12, 15

*Lozano v. Twentieth Century Fox Film Corp.*,
  No. 09-cv-6344 (N.D. Ill.)........................................................................................ 18

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ......................................... 11

*Moreno v. AutoZone, Inc.*,
  No. 05-cv-4432, 2008 WL 2271599 (N.D. Cal. May 30, 2008) ...................................... 13

*Pimental, et al. v. Google Inc., et al.,*
    No. 11-cv-2585 (N.D. Cal.)................................................................. 10, 12, 15

*Roberts v. Paypal, Inc.,*
    No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013) ............... 19, 20

*Robles v. Lucky Brand Dungarees, Inc.,*
    No. 10-cv-04846 (N.D. Cal.)................................................................. 12, 15

*Ryabyshchuck v. Citibank (S.D.) N.A.,*
    No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) ............... 19, 20

*Satchell v. Fed. Exp. Corp.,*
    No. 03-cv-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................... 17

*Satterfield v. Simon & Schuster, Inc., et al.,*
    No. 06-cv-2893 (N.D. Cal.)............................................................. 12, 15, 18

*Simon v. Toshiba Am.,*
    No. 07-cv-06202, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) ..................... 21

*State of California v. eBay, Inc.,*
    No. 12-cv-05874, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ..................... 16

*Sullivan v. Chase Inv. Servs., Inc.,*
    79 F.R.D. 246 (N.D. Cal. 1978) ............................................................... 9

*Swift, et al. v. Direct Buy, Inc., et al.,*
    No. 11-cv-401 (N.D. Ind.)................................................................... 20-21

*Tijero v. Aaron Bros.,*
    No. 10-cv-01089, 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) ............... 16, 18

*Villegas v. J.P. Morgan Chase & Co.,*
    No. 09-cv-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ......... 17, 18, 21

*Weinstein v. The Timberland Co., et al.,*
    No. 06-cv-00484 (N.D. Ill.)..................................................................... 18

*West v. Circle K Stores, Inc.,*
    No. 04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006)........................... 9

**State Court Case:**

*Asbury v. iYogi, Inc.,*
    No. 2015 CH 05846 (Ill. Cir. Ct.). ......................................................... 7

**Statutes & Miscellaneous:**

28 U.S.C. § 1715 ................................................................................... 24

47 C.F.R. § 64.1200 ............................................................................... 4

47 U.S.C. § 227 ...........................................................................*passim*

Alba Conte & Herbert Newberg,
 Newberg on Class Actions (4th ed. 2002) ................................................................ 17, 23

Charles Wright, et al.,
 Federal Practice and Procedure (3d ed. 2005) .................................................................. 14

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Manual for Complex Litigation (Fourth) (2004) .................................................................. 7, 16

*Privacy Policy,* iYogi,
 http://www.iyogi.net/privacy-policy.html (last visited Aug. 21, 2015) ........................... 19

**I.     INTRODUCTION**

Plaintiffs Vicki Estrada, Patricia Goodman and Kim Williams-Britt ("Plaintiffs" or "Class Representatives") seek preliminary approval of a class action settlement that (if approved) will resolve certain claims against Defendant iYogi, Inc. ("iYogi") arising out of its alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The proposed settlement ("Settlement")—reached after both formal and informal discovery, a lengthy mediation process with the Honorable Morton Denlow (ret.) of JAMS, and more than a year's worth of arm's-length negotiations—represents a strong result for the Settlement Class,[1] providing both monetary relief and various prospective measures that will ensure that the sorts of allegedly unauthorized calls at issue do not continue into the future.

With respect to the former, the Settlement provides each Settlement Class Member the opportunity to claim a set cash award of $40 (without any cap on the total amount payable to the Class as a whole) through the submission of an easy-to-complete Claim Form—requiring the submission of only the Class Member's name, address, and the telephone number on which the allegedly unauthorized calls were received. As explained further below, the amount of the individual payments is consistent with (and in many instances, greater than) the monetary relief offered by other similar TCPA settlements that have previously been approved in the Ninth Circuit and throughout the country. Indeed, this is not a prototypical TCPA case where the defendant placed thousands of unsolicited marketing calls to individuals with whom it had no previous relationship. Rather, as discovery has shown, the calls at issue here were made to iYogi's customers regarding their ongoing (but soon-to-expire) subscriptions to its services and to phone numbers provided to iYogi by those customers. In these sorts of "direct relationship" TCPA cases—where the person called voluntarily provided their cellular telephone number to the caller at some point in time—settlements generally result in only the distribution of coupons or relatively small cash awards.[2] Thus, the provision of $40 cash payments to each claimant here (with only

---

[1]     Except as otherwise indicated, all defined terms used herein shall have the same meanings ascribed to them in the Parties' proposed Stipulation of Class Action Settlement.

[2]     *See, e.g., Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher, which could be redeemed

1    minimal effort on their part) clearly falls within the range of approvability.

2         The strength of the Settlement is further demonstrated when considered in light of the

3    prospective relief iYogi has agreed to implement. In particular, the Settlement requires iYogi to

4    modify its applicable terms and conditions to (i) more clearly inform its customers that by entering

5    into the agreement for its services, they consent to be contacted via telephone regarding the

6    services, and (ii) more clearly inform customers of their option to elect not to receive such calls in

7    the future. In that way, the Settlement accomplishes the primary goals of this lawsuit—ensuring

8    that only those individuals who provide the requisite consent receive calls from iYogi and

9    providing Class Members (and other customers) control over their contact preferences going

10   forward.

11        Finally, it also bears noting that this relief was not achieved easily. Beginning in the spring

12   of 2014, the Parties spent more than a year and a half attempting to resolve this case. Those initial

13   discussions led them to a private mediation before the Honorable Morton Denlow (ret.) of JAMS

14   in mid-August last year and to months of contentious discussions thereafter. Despite those efforts,

15   the Parties reached an impasse late last year and determined to return to litigation. However, as the

16   Court entered a revised schedule of discovery and case deadlines in March 2015, the Parties

17   agreed to make one last push at a resolution, and after several weeks of additional negotiations

18   were able to overcome their differences and reach an agreement in principle as to the key terms of

19   a class-wide settlement. Even still, it would take several more months—until late July—for the

20   Parties to come to final terms and reduce the Settlement to writing in the form of the Agreement

21   now before the Court.

22        Ultimately, and in light of the substantial relief it provides to the Settlement Class and the

23   extensive, arm's-length process that produced it, the Court should have little doubt that the

24   Settlement is fair, reasonable and adequate. Accordingly, Plaintiffs respectfully request that the

25   Court grant the instant motion, certify the Settlement Class for settlement purposes, appoint them

26   as Class Representatives and their counsel as Class Counsel, approve the Notice Plan, and

27

28   for $15 cash after expiration of nine month waiting period); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-
     198, Dkt. 266 (W.D. Wash. 2012) (providing for a $20-40 cash payment to each class member).

1  preliminarily approve the Settlement.

2  **II.      BACKGROUND**

3       **A.      Plaintiffs' Allegations.**

4       iYogi is a technical support company that offers remote computer support services to

5  millions of individuals worldwide. (Dkt. 32 ¶ 13.) iYogi's services function on a subscription-

6  based pricing model in which consumers sign up for a year-to-year flat fee service plan. (*Id.*)

7  However, as the plans near or pass their date of expiration, Plaintiffs allege that iYogi employs

8  overly aggressive sales tactics to get customers to renew their subscriptions for an additional fee,

9  or in the event their plans have lapsed, to sign up again. (*Id.* ¶ 14.) Regardless of whether a

10 consumer refuses the offer or had previously asked that iYogi not call, Plaintiffs allege that iYogi

11 would often place additional calls in hopes of obtaining customers' agreements to renew their

12 subscriptions. (*Id.* ¶ 17.)

13      Plaintiffs Estrada, Goodman and Williams-Britt all allege that they received several such

14 calls to their cell phones from iYogi soliciting them to renew their service plans. (*See id.* ¶¶ 22-27,

15 29-33, 36-41.) As a result, Plaintiffs filed their initial complaint on July 3, 2013 (dkt. 1) and later,

16 their First Amended Complaint (dkt. 32), asserting claims on behalf of themselves and all

17 similarly situated individuals for iYogi's alleged violations of the TCPA.

18      In particular, Plaintiffs asserted claims under three provisions of the TCPA. The first

19 provision makes it unlawful to place calls to cellular telephones without the recipient's consent

20 using equipment the statute defines as an automatic telephone dialing system, or "ATDS":

21          It shall be unlawful for any person within the United States . . . to make any call
            (other than a call made for emergency purposes or made with the prior express
22          consent of the called party) using any automatic telephone dialing system . . . to
            any telephone number assigned to a . . . cellular telephone service . . . .
23
   47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity
24
   (A) to store or produce telephone numbers to be called, using a random or sequential number
25
   generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)–(B).
26
27      For its part, the second provision makes it unlawful to place more than one telephone call

28 within a twelve-month period to persons whose cellular telephone numbers are listed on the

national Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c), (e). And the third prohibits the making of unsolicited robocalls utilizing an artificial or prerecorded voice to cell phones without first obtaining the call recipients' prior express consent to do so. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(1)(B).

iYogi's intrusive calls, Plaintiffs allege, are exactly the type contemplated by the TCPA, which was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy." *Id.* at 745; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that the statute's purpose is to protect significant privacy interests). Reflecting the importance of telephone subscribers' privacy, the TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is willful) and also provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C); 47 U.S.C. § 227(c)(5)(B).

Based on the foregoing and the nature of telemarketing calls that iYogi allegedly placed, Plaintiffs sought both monetary and injunctive relief under the TCPA. (Dkt. 32, Prayer for Relief.)

**B.      The Litigation and Settlement Discussions.**

Plaintiffs filed their original class action complaint against iYogi on September 23, 2013. (Dkt. 1.) On December 18, 2013, iYogi filed a motion to dismiss the complaint in its entirety, arguing primarily (i) that Plaintiffs did not adequately plead iYogi's use of an automatic telephone dialing system ("ATDS") to make the calls, (ii) that Plaintiffs failed to state a claim because the calls fell into the established business relationship exemption under the TCPA, and (iii) that Plaintiff Williams-Britt could not allege the calls were telephone solicitations since she did not plead that she answered any of them.

Although Plaintiffs initially prepared to respond to the motion, on January 8, 2014, they amended their complaint to allege in greater detail the basis for their allegations that iYogi used an ATDS to make the calls and that Plaintiff Williams-Britt in fact answered some of them. (*See* dkt. 32.) On February 3, 2014, iYogi answered the First Amended Complaint, raising eighteen affirmative defenses including, *inter alia*, that it had obtained consent to make the calls at issue,

1  that Plaintiffs cannot satisfy Rule 23's requisites to class certification, that Plaintiffs were not

2  charged for the calls, and that their claims are at least partially barred by the statute of limitations.

3  (Dkt. 39.)

4       On April 4, 2014, the Parties exchanged their initial disclosures and thereafter commenced

5  formal discovery, serving their respective first sets of written discovery requests. (*See* Declaration

6  of Rafey S. Balabanian ["Balabanian Decl."] ¶ 7 attached as Exhibit 2.) As the Parties reviewed

7  and prepared to respond to the outstanding discovery, they also began discussing the potential for

8  resolving the case without the need for additional protracted litigation. (*Id.* ¶ 8.) After numerous

9  telephone conferences and correspondence, the discussions progressed to the point that the Parties

10 determined to proceed with an initial private mediation before the Honorable Morton Denlow

11 (ret.) of JAMS (Chicago). (*Id.*) At that time, they also agreed that it would be most efficient to

12 continue their formal discovery obligations in order to focus their efforts and resources on

13 resolution. (*Id.*) Nevertheless, they commenced informal discovery aimed at further exploring their

14 respective views of the claims and defenses at issue and possible settlement frameworks—

15 including exchanging information related to the volume of calls at issue, the number of individuals

16 to whom the calls were placed, the calls Plaintiffs received, and information relating to iYogi's

17 financial condition and applicable insurance coverage. (*Id.*)

18      On August 18, 2014, the Parties participated in their first mediation session with Judge

19 Denlow. (*Id.* ¶ 19.) Although the Parties were unable to reach an agreement that day, they agreed

20 to exchange certain additional information and believed that they had made progress towards an

21 ultimate resolution. (*Id.*) Nevertheless, after several months of additional arm's-length settlement

22 negotiations with the assistance of Judge Denlow—through numerous telephone conferences and

23 correspondence—it became apparent that the Parties had reached an impasse and a settlement

24 could not be reached at that time. (*Id.* ¶ 10.) Accordingly, the Parties determined to proceed with

25 the litigation, including meeting and conferring on a revised schedule of discovery and general

26 case deadlines and proposing the same to the Court. (Dkts. 58, 62.)

27      In March 2015, as the Parties geared up for more formal discovery and litigation, they

28 decided to make one last attempt at resolution. (Balabanian Decl. ¶ 11.) That led to weeks of

1  additional negotiations and ultimately, an agreement in principle as to a proposed settlement. (*Id.*)

2  Notwithstanding, it would take several additional months of additional (and often contentious)

3  negotiations for the Parties to reach the final terms and reduce them to writing in the form of the

4  proposed Stipulation of Class Action Settlement now before the Court. (*See* dkts. 62-69.)

5  **III.    THE TERMS OF THE SETTLEMENT AGREEMENT**

6          A copy of the Stipulation of Class Action Settlement ("Settlement Agreement" or

7  "Agreement") is attached hereto as Exhibit 1. The key terms of the Agreement are briefly set forth

8  below:

9          **A.    Class Definition:** The Settlement Class is defined as all individuals who are iYogi

10 subscribers or former subscribers in the United States to whom iYogi or any agent or affiliate of

11 iYogi made or attempted to make outbound calls (including but not limited to subscription

12 renewal calls) to a telephone number assigned to a cellular telephone service from September 23,

13 2009 until November 18, 2013. (Agreement ¶ 1.35.)

14         **B.    Monetary Relief:** Each Settlement Class Member who submits a valid Claim Form

15 will receive a one-time cash payment of $40.00. (*Id.* ¶ 5.2.)

16         **C.    Prospective Relief:** Defendant has agreed to (i) revise its applicable terms and

17 conditions for technical support services regarding customers providing consent for iYogi or any

18 affiliate or agent to place "telephone calls" to new subscribers and (ii) provide additional language

19 regarding the new subscribers' option to revoke such consent. (*Id.* ¶ 5.1.) Defendant has further

20 agreed that these procedures shall remain in effect for no less than two years after the Effective

21 Date of the Settlement. (*Id.*)

22         **D.    Class Representatives' Incentive Award:** In recognition of Plaintiffs' efforts on

23 behalf of the Settlement Class, Defendants have agreed to pay or cause to be paid to Estrada,

24 Goodman, and Williams-Britt a collective incentive award of up to $3,000 (in addition to any

25 relief to which they are otherwise entitled under the Settlement). (*Id.* ¶ 10.1.)

26         **E.    Attorneys' Fees and Costs:** Class Counsel have agreed to limit their request for a

27 Fee Award to no more than $300,000. (*Id.* ¶ 10.2.)

28         **F.    Release:** In exchange for the relief described above, upon the Effective Date of the

1  Settlement, Class Members will be deemed to have released all claims arising out of or relating in

2  any way to the cell phone calls made to them by or on behalf of iYogi for the purpose of offering

3  iYogi services between September 23, 2009 and November 18, 2013. (*Id.* ¶¶ 1.28, 1.35.)

4          **G.      Miscellaneous.** In order to carry out the terms of the Parties' Settlement, and as

5  referenced in the Parties' prior notice regarding the same (*see* dkt. 66), iYogi and Epiq Class

6  Actions & Claims Solutions, Inc. ("Epiq") have or will enter into an escrow agreement and a

7  services agreement, pursuant to which Epiq will act as the Settlement Administrator and escrow

8  agent in connection with the Settlement, if approved by the Court. The escrow will be initially

9  funded by iYogi's insurance. Pursuant to these agreements, Epiq will, among other obligations,

10 send Notice to the Settlement Class, process Claim Forms and Requests for Exclusion, and make

11 various payments from the escrow (e.g., payments for approved Class Member claims, notice and

12 administration expenses, etc.).

13         As the Parties have also advised the Court, there were separate actions filed by other

14 clients of Edelson PC against iYogi on claims unrelated to this Action. *See Burton v. iYogi, Inc.*,

15 No. 13-cv-06926 (S.D.N.Y.); *Asbury v. iYogi, Inc.*, No. 2015 CH 05846 (Ill. Cir. Ct.). Those

16 matters have been settled on an individual basis, with monetary payments to the plaintiffs,

17 implementation of prospective measures aimed at correcting the alleged conduct at issue, and fees

18 to plaintiffs' counsel.  Under the express terms of the separate settlement agreement, the attorneys'

19 fees will be subordinate to all payments made in connection with the instant case (including

20 defense costs). Further, the attorneys' fees to be paid (if any) will be limited to the limits

21 remaining of iYogi's insurance policy used to initially fund the escrow account and shall not be

22 collectable directly as from iYogi itself.

23 **IV.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT**
          **PURPOSES.**
24
25         Before granting preliminary approval, the Court must determine that the proposed

26 Settlement Class is appropriate for certification by ensuring that it meets the requirements of

27 Federal Rule of Civil Procedure 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621

28 (1997); Manual for Complex Litigation (Fourth) § 21.633 (2004). Although the proposed

Settlement Class definition differs from those which Plaintiffs originally submitted in their

amended complaint, an amended class definition is permissible in conjunction with a motion to

certify. *See Heffelfinger v. Elec. Data Sys. Corp.*, No. 07-cv-00101, 2008 WL 8128621, at *10

(C.D. Cal. Jan. 7, 2008) (noting that "the court has discretion either to redefine the class or to

afford plaintiffs an opportunity to do so" and collecting cases), *aff'd and remanded*, 492 F. App'x

710 (9th Cir. 2012); *Flores v. Velocity Exp., Inc.*, No. 12-cv-05790, 2013 WL 2468362, at *8

(N.D. Cal. June 7, 2013) (granting motion for conditional class certification in FLSA collective

action based on amended class definition). As explained below, the Settlement Class is well suited

for certification.

### A.  The Proposed Class Meets the Requirements of Rule 23.

Plaintiff respectfully requests that the following class (the "Settlement Class") be certified

for settlement purposes:

> All individuals who are iYogi subscribers or former subscribers in the United States to whom iYogi or any agent or affiliate of iYogi made or attempted to make outbound calls (including but not limited to subscription renewal calls) to a telephone number assigned to a cellular telephone service from September 23, 2009 until November 18, 2013.

To be certified, a proposed class must satisfy the criteria set forth in Federal Rule of Civil

Procedure 23(a) and fit into one of the three categories outlined in Rule 23(b). *Amchem*, 521 U.S.

at 614; *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted).

Rule 23(a) requires that (1) the proposed class is so numerous that joinder of all individual class

members is impracticable (numerosity), (2) there are questions of law or fact common to the

proposed class (commonality), (3) the named-plaintiff's claims are typical of those of the class

(typicality), and (4) the named-plaintiff and her counsel will adequately protect the interests of the

class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here, certification is sought

under Rule 23(b)(3), the proponent of class certification must show that (1) the common questions

of law or fact predominate over questions affecting only individual class members

(predominance), and (2) that a class action is superior to other available methods of resolving the

controversy (superiority). Fed. R. Civ. P. 23(b)(3). Here, the proposed Settlement Class satisfies

1  all of these requirements and should therefore be certified for settlement purposes.[3]

2  **1.   The proposed Settlement Class is sufficiently numerous.**

3  The first requirement of Rule 23(a)—numerosity—is satisfied where "the class is so

4  numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No specific

5  number of class members is required for numerosity, nor are Plaintiffs required to state the exact

6  number of potential class members. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 659-60 (E.D. Cal.

7  2008) (citing *Sullivan v. Chase Inv. Servs., Inc.,* 79 F.R.D. 246, 257 (N.D. Cal. 1978)).

8  Numerosity is generally satisfied where the number of class members exceeds forty, and

9  particularly where class members number in excess of one hundred. *See West v. Circle K Stores,*

10  *Inc.*, No. 04-0438, 2006 WL 1652598, at *3 (E.D. Cal. June 13, 2006) ("[A]ccepting plaintiffs'

11  alleged class size as true, and recognizing that the joinder of 1,752 plaintiffs would be

12  impracticable, the court holds that the numerosity requirement is satisfied…."). Here, the

13  Settlement Class list includes approximately 189,000 persons, thus easily satisfying the

14  numerosity requirement. (Balabanian Decl. ¶ 14); *see also Blackie v. Barrack*, 524 F.2d 891, 901

15  (9th Cir. 1975) (finding that Rule 23(a) requirements can be established by providing the court

16  with a sufficient basis for forming a "reasonable judgment" on each requirement).

17  **2.   Settlement Class Members share common questions of law and fact.**

18  The second requirement of Rule 23(a)—commonality—is satisfied where "there are

19  questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists

20  "[w]here the circumstances of each particular class member vary but retain a common core of

21  factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th

22  Cir. 2008). The standard is "construed permissively," *id*. at 978, and "[i]t is not necessary that

---

23  [3]   In addition to Rule 23's requirements, some courts require that "the class must be
24  adequately defined and clearly ascertainable before a class action may proceed." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (collecting cases and requiring
25  that "it must be administratively feasible to determine whether a particular person is a class member"). Here, iYogi has agreed to produce a list of the Settlement Class Members as identified
26  within its records. (*See* Agreement ¶ 7.1.) Consequently—and as a result of the amended class definition—it is completely feasible to determine whether any particular person is a Settlement
27  Class Member, and the Settlement Class is thus definite and ascertainable. *See also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (holding class ascertainable
28  where cellular telephone company agreed to provide a list of subscribers that would identify individual class members).

1  members of the proposed class share every fact in common." *Evon v. Law Offices of Sidney*

2  *Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotations omitted). As the Supreme Court

3  has noted, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

4  2541, 2556 (2011) (internal quotations and alterations omitted).

5       Here, several questions of law and fact are common to the proposed Settlement Class, such

6  as: (i) whether iYogi used an ATDS to make the calls at issue and (ii) whether iYogi's uniform

7  terms and conditions amounted to the requisite prior express consent to make such calls under the

8  TCPA. These questions—whose answers depend solely on Defendant's identical conduct towards

9  every member of the Settlement Class—are sufficient to establish commonality. *See, e.g., Agne v.*

10  *Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (finding commonality satisfied in

11  text messaging case with parallel factual and legal issues, including: (1) whether defendant's text

12  messaging equipment qualified as an ATDS, (2) whether one defendant controlled, participated in,

13  or authorized the text-message campaign carried out by another, (3) whether a defendant could be

14  held vicariously liable for the placement of the text message calls, and (4) whether an established

15  business relationship is a valid defense to placing text message calls to cellular telephones under

16  the TCPA); *Pimental, et al. v. Google Inc., et al.*, No. 11-cv-2585, Dkt. 97 at 3 (N.D. Cal.)

17  (finding that "there are questions of law and fact common to the [c]lass" in a TCPA action); *Lee v.*

18  *Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D. Cal. 2013) (finding that defendants in a

19  TCPA text message action did not to point to any "question of law or fact that [was] not suitable

20  for disposition on a class-wide basis" and that issues of liability "can be made as to the class as a

21  whole.").

22       **3.       Plaintiffs' claims are typical of the Settlement Class Members' claims.**

23       The third requirement of Rule 23(a)—typicality—is satisfied where "the claims . . . of the

24  representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The test

25  of typicality is "whether other members have the same or similar injury, whether the action is

26  based on conduct which is not unique to the named plaintiffs, and whether other class members

27  have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

28  F.3d 1168, 1175 (9th Cir. 2010). Like commonality, typicality is viewed "permissive[ly]," and the

standard is satisfied if the class representative's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, although only reasonable co-extensiveness is required, Plaintiffs' claims are essentially identical to the claims of the absent Settlement Class Members. They allege that they were called on their cellular phones by iYogi in an attempt to secure ongoing subscriptions to iYogi's remote technical support services, and that iYogi employed an ATDS and/or prerecorded messages to make the calls. (Dkt. 32 ¶¶ 23–47.) Having received the same calls, allegedly made by the same Defendant, in the same manner, Plaintiffs' claims are unquestionably typical of those of the Settlement Class and their pursuit of their claims will necessarily advance the interests of the absent Settlement Class Members. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (finding typicality met where all class members were called by defendant on their cell phones using an ATDS); *Agne*, 286 F.R.D. at 569 (finding typicality satisfied where "[plaintiffs' TCPA] claims, like all class members' claims, arise from text marketing campaigns commissioned by [defendants] and executed by the same marketing vendor.").

### 4. Plaintiffs and Class Counsel will adequately represent the Settlement Class.

The fourth and final requirement of Rule 23(a)—adequacy—is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy has two components: (i) whether the named-plaintiff and her counsel have any conflicts of interest with other class members, and (ii) whether the plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Here, there are no conflicts of interest between Plaintiffs (or their counsel) and the other members of the Settlement Class, as they are all seeking recovery under the same law for the same kind of injury. *Cf. id.* at 1020–21 (noting that intra-class conflicts can arise where class members have suffered different injuries or seek relief under different state laws).

In addition, Plaintiffs and their counsel have vigorously pursued this Action on behalf of

the Settlement Class and will continue to do so. (Balabanian Decl. ¶ 15.) The Parties have been

engaged in litigation for almost two years now, which has included both formal and informal

discovery and motion practice. (*See id.* ¶ 3-5, 7-8.) As explained more fully below, *see infra*

Section V, Plaintiffs' counsel are well qualified and experienced members of the plaintiffs' bar

who have extensive experience in class actions of similar size, scope, and complexity as the

instant Action, particularly in the TCPA arena. (*See* Balabanian Decl. ¶ 16.) Indeed, courts

throughout the Ninth Circuit have previously found Plaintiffs' counsel at Edelson PC to be

adequate representatives of classes of individuals who received allegedly unsolicited calls in

violation of the TCPA. *See, e.g.*, *Pimental*, No. 11-cv-2585, Dkt. 97 at 1 (appointing Class

Counsel and "find[ing] that [Jay Edelson and Rafey Balabanian of Edelson PC] are competent and

capable of exercising the responsibilities of Class Counsel…."); *see also Pimental*, Dkt. 107 at 2

(finally approving class action settlement and finding that "[t]he Class Representatives and Class

Counsel adequately represented the Settlement Class for purposes of entering into and

implementing the Settlement Agreement."); *Lee v. Stonebridge Life Insurance Co.*, No. 11-cv-43,

Dkt. 161 (N.D. Cal. 2014) (appointing Plaintiffs' counsel as class counsel in TCPA action);

*Satterfield v. Simon & Schuster, Inc., et al.,* No. 06-cv-2893, Dkt. 132 (N.D. Cal. Aug. 6, 2010)

(finally approving settlement in TCPA class action with Plaintiffs' counsel as co-lead counsel);

*Robles v. Lucky Brand Dungarees, Inc., et al.,* No. 10-cv-04846, Dkt. 105 at 4 (N.D. Cal. May 10,

2013) (finally approving TCPA class action settlement and finding that Plaintiffs' counsel

adequately represented the settlement class).

     Additionally, Plaintiffs' counsel have already dedicated substantial resources to the

prosecution of this Action—by, for example, investigating the claims of Plaintiffs and the

Settlement Class, working to understand the technology at issue, and maintaining an ongoing

dialogue with iYogi throughout the proceedings in an effort to secure a favorable result for the

Settlement Class—and they will continue to do so throughout the Action's pendency. (*See*

Balabanian Decl. ¶¶ 15, 18.) Rule 23(a)'s adequacy requirement is therefore met as well. *See, e.g.,*

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (finding adequacy met where

named plaintiffs "demonstrated their commitment to the action" and their attorneys were

"qualified to represent the class").

**5.      The proposed Settlement Class satisfies the requirements of Rule 23(b)(3).**

In addition to meeting all four of Rule 23(a)'s requisites for certification, the proposed Settlement Class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. As detailed below, both requirements of Rule 23(b)(3) are satisfied.

### *i.     Common questions of law and fact predominate.*

"While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate." *Wolin*, 617 F.3d at 1172. That is, Rule 23(b)(3) tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.* (citing *Amchem*, 521 U.S. at 623-24). Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *see also Grannan v. Alliant Law Grp., P.C.*, No. 10-cv-02803, 2012 WL 216522, at *5 (N.D. Cal. Jan. 24, 2012) (finding that common issues predominated over individualized issues in TCPA class action).

Here, the common factual and legal questions detailed in Section IV.A.2, *supra*—e.g., whether iYogi used an ATDS to make the alleged calls and whether iYogi's uniform terms and conditions constitute the requisite prior express consent to make the calls at issue—are the foundation of Plaintiffs' and the Settlement Class Members' TCPA claims. Given that the Settlement Class Members all allegedly received the same calls, made by the same entity, in the same manner, it is clear that core questions of liability predominate here. *See Alberto*, 252 F.R.D. at 663-64 (citing *Moreno v. AutoZone, Inc.,* No. 05-cv-4432, 2008 WL 2271599, at *8 (N.D. Cal. May 30, 2008) (predominance inquiry satisfied even though court would have to "grapple with individual issues, such as whether a late paycheck reflects earned or unearned wages"); *Kesler v. Ikea U.S., Inc.,* No. 07-cv-0568, 2008 WL 413268, at *7 (C.D. Cal. Feb. 4, 2008) (predominance inquiry satisfied even though "each putative class member's right to recovery depends on the fact

that he or she is a 'consumer' for the purposes of the FCRA")); *see also Kristensen*, 12 F. Supp. 3d at 1307 (finding "courts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.").

### ii.    A class action is the superior method of resolving the controversy.

Finally, a class action is superior to other methods of resolving this controversy. *See* Fed. R. Civ. P. 23(b)(3). This requirement, rooted in a concern for judicial economy, ensures "that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citing Charles Wright, et al., Federal Practice and Procedure § 1779 (3d ed. 2005)). When the expense of litigating on an individual basis would completely subsume any recovery an individual could hope for, this factor weighs in favor of certification. *Id.* (citing *Zinser v. Accufix Research Institute*, 253 F.3d 1180, 1189 (9th Cir. 2001)). This is certainly the case here, where statutory damages are $500 per call received or, at most, $1,500 if iYogi's conduct was found to be willful. *See* 47 U.S.C. § 227(b)(3)(C); 47 U.S.C. § 227(c)(5)(B). By comparison, the cost of litigating TCPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. In addition, individual claims would clog the courts with an influx of separate actions. By providing swift resolution of common claims in a way that would not be possible on an individual basis, this class action is the superior method of adjudication. *See Kristensen*, 12 F. Supp. 3d at 1308 (finding that a class action was the superior method of adjudicating a TCPA action when the statutory damage was "insufficient to incentivize individual actions); *Agne*, 286 F.R.D. at 571 (finding that "[f]ive hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation like Papa John's") (citation omitted).

Accordingly, the requirements of both Rule 23(a) and 23(b)(3) are satisfied, and the Court should certify the proposed Settlement Class.

## V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.

When certifying a class, a court must also appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating

potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see, e.g.*, *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*, 282 F.R.D. 486, 492 (C.D. Cal. 2012) (finding criteria of Rule 23(g) satisfied where proposed class counsel had researched, prepared, and filed cases, dedicated their careers to class action litigation, and demonstrated "extensive experience" in this realm).

Proposed Class Counsel readily satisfy the criteria of Rule 23(g). First, they have devoted—and will continue to devote—a significant amount of time, effort and other resources to this litigation, beginning with their initial investigation of Plaintiffs' allegations. (*See* Balabanian Decl. ¶¶ 15, 18.) Through both formal and informal discovery, they have diligently sought the information needed to develop the alleged claims, represent the Settlement Class and evaluate the potential resolution of the case. (*See id.* ¶¶ 7-8, 15, 18.) Second, proposed Class Counsel have extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many of them in this Circuit. (*See* Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit 2-A to the Balabanian Declaration); *see also Pimental*, No. 11-cv-2585, Dkt. 97 (appointing Plaintiffs' counsel as class counsel in $6 million text spam settlement); *Stonebridge*, No. 11-cv-43, Dkt. 161 (N.D. Cal. 2014) (appointing Plaintiffs' counsel as class counsel in $10.7 million constructive common fund text spam settlement) ; *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722 (N.D. Cal. 2012) (serving as lead counsel in $12.2 million text spam settlement); *Robles*, No. 10-cv-04846 (N.D. Cal.) (serving as lead counsel in $10 million text spam settlement); *Satterfield*, No. 06-cv-2893 (N.D. Cal.) (serving as co-lead counsel in $10 million text spam settlement). They have also developed an in-depth understanding of the TCPA and have successfully litigated emerging issues that continue to redefine the statute's boundaries. *See, e.g.*, *Satterfield*, 569 F.3d at 946 (securing ruling applying the TCPA to text messages, a decision that reshaped the TCPA litigation landscape); *see also Ellison v. Steven Madden, Ltd.*, No. 11-cv-5935, Dkt. 73 at 9 (C.D. Cal. 2012) ("[Edelson PC attorneys] specialize in litigating consumer class actions and have pioneered the application of the

1  TCPA to text-messaging technology, litigating some of the largest consumer class actions in the

2  country on this issue.").

3        Accordingly, the Court can appropriately appoint Jay Edelson, Rafey S. Balabanian,

4  Benjamin H. Richman and Courtney C. Booth of Edelson PC as Class Counsel.

5  **VI.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.**

6        Rule 23(e) requires judicial approval of a proposed class action settlement based on a

7  finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlement

8  approval follows a well established two-step process, beginning with a preliminary evaluation of

9  the settlement's fairness. *In re TD Ameritrade Account Holder Litig.*, No. 07-cv-2852, 2011 WL

10  4079226, at *5 (N.D. Cal. Sept. 13, 2011); Manual for Complex Litigation (Fourth) § 21.632.

11  Once preliminary approval is granted, the court will order notice to be disseminated and then carry

12  out the second step of the process—the final fairness determination. *Id.*; Fed. R. Civ. P. 23(e)(2).

13  Whether a settlement should be approved rests within the sound discretion of the court. *Officers*

14  *for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco,* 688 F.2d 615, 625 (9th

15  Cir. 1982). However, deference should be afforded to the private consensual decision of parties to

16  resolve disputes between them. *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice*, 688 F.2d at

17  625). Indeed, the Ninth Circuit recognizes a strong judicial policy in favor of the voluntary

18  settlement of class action litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

19  2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

20        Although the Ninth Circuit has not articulated a particular standard for evaluating whether

21  preliminary approval of a class settlement should be granted, courts within this District typically

22  grant preliminary approval when: "[1] the proposed settlement appears to be the product of

23  serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not

24  improperly grant preferential treatment to class representatives or segments of the class, and [4]

25  falls within the range of possible approval . . . ." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d

26  1078, 1079 (N.D. Cal. 2007) (citation omitted); *see also State of California v. eBay, Inc.*, No. 12-

27  cv-05874, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (citation omitted); *Tijero v. Aaron*

28  *Bros.*, No. 10-cv-01089, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013) (citation omitted).

The instant Agreement easily satisfies all four of these factors and thus is deserving of preliminary approval.

### A. The Settlement is the Product of Arm's-Length, Informed, and Non-Collusive Negotiations Amongst Experienced Counsel.

First and as explained above, the Settlement is the product of serious, informed, non-collusive negotiations. While the other three factors also support preliminary approval, settlements that are the result of arm's-length negotiations among experienced counsel, such as this one, are "entitled to an initial presumption of fairness." *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citing Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)) (internal quotations omitted); *see also Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). The involvement of a third-party neutral also tends to support a finding that the process used to reach the settlement was not collusive. *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citing *Satchell v. Fed. Exp. Corp.*, No. 03-cv-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Here, it is a fact that the Settlement is the product of more than a year's worth of arm's-length negotiations and was only reached with the assistance of a well-respected third-party neutral. (*See* Balabanian Decl. ¶¶22.) The Parties first began their formal negotiations in the spring of 2014 and later, in August 2014, proceeded with a formal mediation before Judge Morton Denlow (ret.) of JAMS, a neutral experienced in mediating class actions and particularly, TCPA actions. (*Id.* ¶ 23.) And when the Parties were unable to reach an agreement after their initial mediation with Judge Denlow and months of additional discussions, they turned back to the litigation. (*Id.*) It was not until March 2015—nearly seven months after their initial mediation and nearly ten months since their first settlement discussions—that the Parties successfully redoubled their efforts at settlement and were able to reach an agreement in principle. (*Id.* ¶ 24.) Even still, they fought hard for their respective positions over several more months as they negotiated the finals terms of the written Agreement and its exhibits now before the Court. (*Id.* ¶ 25.)

Ultimately, the negotiations were never collusive, which alone warrants preliminary approval of the Settlement. *See Villegas,* 2012 WL 5878390, at *6 (citation omitted).

**B.      The Settlement is Clear of Defects and Provides Real, Immediate Relief.**

Second, the Settlement is free of any obvious defects. A court is likely to find a settlement agreement free from obvious deficiencies when it provides a real, immediate monetary benefit to the class despite numerous risks. *See In re Tableware*, 484 F. Supp. 2d at 1080 (finding settlement providing a $500,000 fund free of obvious defects in light of "the anticipated expense and complexity of further litigation"); *see also Tijero*, 2013 WL 6700102, at *8 (granting preliminary approval to settlement agreement that conferred "tangible monetary benefits to the class" via an $800,000 fund); *Villegas*, 2012 WL 5878390, at *6 (citing *In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000)) (finding that fairness and adequacy of the settlement are assessed "relative to [the] risks of pursuing the litigation to judgment.").

First, the settlement—in terms of tangible monetary relief and improved customer telephone contact practices going forward—is strong, both compared to other similar TCPA actions and when viewed in light of the risks of protracted litigation. In terms of comparable settlements, here the monetary relief of $40 per Settlement Class Member is consistent with (and in several cases, greater than) other settlements in this area of the law. As noted above, in the prototypical TCPA case—where individuals alleged they received unsolicited telemarketing calls from entities with which they have no connection or relationship—class members generally receive as much as $200. *See, e.g., Kramer*, No. 10-cv-2722, Dkt. 148 (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) (providing for a cash payment of $150 to each class member); *Satterfield,* No. 06-cv-2893, Dkt. 132 (providing for a cash payment of $175 to each class member); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65 (N.D. Ill. 2011) (providing for a cash payment of $200 to each class member). But "direct relationship" TCPA cases, like the instant one, where the person called voluntarily provided their cellular telephone number to the caller, generally result in coupon settlements or less than $25 in cash to each claiming class member. *See Kazemi*, No. 09-cv-5142, Dkt. 94 (providing for a $25 voucher to

each class member); *In re Jiffy Lube*, No. 11-md-2261, Dkt. 97 (providing for a $20 voucher, which could be redeemed for $15 cash after nine month waiting period); *Arthur*, No. 10-cv-198, Dkt. 266 (providing for a $20-40 cash payment to each class member).

As it relates to iYogi's defenses and the relationship of the Parties, the strength of the Settlement becomes ever more apparent. On the issue of consent, there is no dispute that iYogi collected the phone numbers for the calls at issue directly from its customers at the time they subscribed to its remote support services. (*See* Balabanian Decl. ¶ 26.) Thus, there exists a "direct relationship" between iYogi and the individuals who received the calls (i.e., its customers), and some courts have held that where such a relationship exists and the called party voluntarily provided their cellular phone number to the caller, then that constitutes the requisite express consent to be called. *See Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.) N.A.,* No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014).

Moreover, although they do not specifically identify "telephone calls" as a means of contact, the terms do contemplate iYogi using the information voluntarily provided by its customers to contact them. *See Privacy Policy,* iYogi, http://www.iyogi.net/privacy-policy.html (last visited Aug. 21, 2015). Thus, the question of whether iYogi's applicable terms and conditions constitute sufficient consent by its customers to receive the calls at issue is also an arguably close call and posed a very real (and potentially dispositive) risk to the class's ability to prevail on the merits here. *See Roberts*, 2013 WL 2384242, at *5 (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *In re Capital One Telephone Protection Act Litig*, No. 12-cv-10064, 2015 WL 605203, at *6-7 (N.D. Ill. Feb. 12, 2015) (noting that the FCC's series of TCPA Orders are not the most clear and are often the subject of "split opinion among practitioners and the courts" and that, "without the prompt and final resolution a settlement provides, [p]laintiffs [in TCPA cases] run the risk that forthcoming

1  FCC orders may extinguish their claims") (citing *Balschmiter v. TD Auto Finance LLC*, No. 13-

2  cv-1186, 2014 WL 6611008, at *8 (E.D. Wis. Nov. 20, 2014); *Baird*, 995 F. Supp. 2d at 1106).

3      Monetary relief aside, the Settlement also requires iYogi to provide substantial prospective

4  relief. In particular, it has agreed to take certain measures to ensure that only persons who provide

5  prior express consent receive telephone calls to their cellular phones and that its customers, in

6  general, are better informed of the terms and conditions of its services as they relate to use of their

7  contact information. Specifically, iYogi has agreed to revise its applicable terms and conditions to

8  expressly explain that by providing their cellular phone numbers to iYogi in conjunction with

9  signing up for its services, customers are consenting to iYogi placing "telephone calls" to them.

10  Perhaps more importantly, iYogi has also agreed to include additional language in its terms and

11  conditions regarding subscribers' option to revoke such consent and thus, avoid receiving future

12  calls.

13      While Plaintiffs are confident that they would ultimately prevail at trial, the risks of further

14  litigation are not insignificant—making the relief obtained all the more approvable. (Balabanian

15  Decl. ¶ 26.) For instance, if the settlement is not approved and the litigation proceeds, iYogi will

16  almost certainly raise the "direct relationship" defense—that each Settlement Class Member

17  consented to receive calls placed by or on behalf of iYogi when they voluntarily provided it with

18  their cellular phone numbers at some point in the past—which, again, courts in this Circuit have

19  upheld. *See, e.g., Roberts*, 2013 WL 2384242, at *5 (holding that the prior provision of a cell

20  phone number to the caller for any reason constitutes prior express consent to be called);

21  *Ryabyshchuck*, 2012 WL 5379143, at *3; *Baird*, 995 F. Supp. 2d at 1106. Even if Plaintiffs

22  cleared that initial—potentially dispositive—hurdle, iYogi would undoubtedly challenge a motion

23  for class certification, further delaying the possibility of relief to the class. (Balabanian Decl. ¶

24  27.) Further still, if the case proceeded to trial, other roadblocks—such as the need for expert

25  testimony to establish whether the equipment used to make the calls at issue meets the definition

26  of an ATDS—would stand between the class and any ultimate recovery. (*Id.*) Additionally, given

27  iYogi's financial condition and limited insurance coverage, even if Plaintiff did ultimately prevail

28  at trial, the class cannot be assured of recovery. (*Id*); *Swift, et al. v. Direct Buy, Inc., et al.*, No. 11-

1    cv-401, Dkt. 189 at 7, 9 (N.D. Ind. Oct. 24, 2013) (preliminarily approving settlement against

2    defendant in "dire financial situation," when "a major benefit of the settlement [was] that class

3    members [would] obtain these benefits much more quickly than had the parties not settled,"

4    because "even if the case reached trial, the class members would not receive benefits for many

5    years, if they received any at all."). And given the amount at stake and iYogi's reputational

6    interests, if Plaintiff could overcome all of these hurdles and obtain a judgment in favor of the

7    class, iYogi is certain to appeal, further delaying any relief to the class. (*Id.*).

8        In the end, when the Settlement is viewed in light of those risks, it should be clear that

9    Plaintiffs obtained a substantial result for the Settlement Class. The Settlement is free of any

10   deficiencies and thus warrants preliminary approval.

11       **C.      The Settlement Treats Settlement Class Members Fairly**.

12       Third, the Settlement treats Class Members fairly. That is, it provides equal ($40) recoveries

13   to each Class Member, which again, are on par with (or better than) the recoveries obtained in

14   other similar TCPA settlements. And, while Defendant has agreed to pay Plaintiffs Estrada,

15   Goodman, and Williams-Britt a collective incentive award in the amount of $3,000 for their roles

16   as named plaintiffs and Class Representatives, the Ninth Circuit has recognized that service

17   awards to named plaintiffs in a class action are permissible and do not render a settlement unfair

18   or unreasonable. *See Stanton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W.*

19   *Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009). That's especially true here, given that the

20   proposed incentive award of $1,000 to each Class Representative is modest in comparison to the

21   $5,000 incentive awards courts in this Circuit consider "presumptively reasonable." *See, e.g.*,

22   *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838, 2014 WL 2926210, at *9 (N.D. Cal. June 27,

23   2014); *Simon v. Toshiba Am.*, No. 07-cv-06202, 2010 WL 1757956, at *5 (N.D. Cal. Apr. 30,

24   2010); *see also Villegas*, 2012 WL 5878390, at *7 (noting that an incentive award of $10,000 did

25   not render a settlement unfair).

26       Thus, the absence of any preferential treatment supports preliminary approval of the

27   Settlement Agreement.

28

**D.     The Settlement Falls Squarely Within the Range of Possible Approval.**

Finally, this Settlement falls well within the range of possible approval. "To determine whether a settlement falls within the range of possible approval a court must focus on substantive fairness and adequacy, and consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (quoting *In re Tableware,* 484 F. Supp. 2d at 1080) (internal quotations omitted). A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Rather, the agreement reached normally embodies a compromise; "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted) (observing that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes'").

As described above, the value of the Settlement—in terms of tangible monetary relief and improved telephone calling practices going forward—is strong compared to the risks of litigation. Each Settlement Class Member who submits a valid claim form can receive a cash payment of $40. Given that the TCPA provides for damages of $500 "for each such violation" of the statute, 47 U.S.C. § 227(b)(3)(B); 47 U.S.C. (c)(5)(B), the $40 payments represent 8% of the recovery that would be available under the statute. A recovery of 8% of available damages falls squarely within the range of possible approval. *See Linney*, 151 F.3d at 1242 (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 & n. 2 (2d Cir. 1974)) ("As the Second Circuit has pointed out: 'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'")); *see also supra* n.2 (collecting cases and showing that 4-20% potential recovery is within the range of possible approval). To be sure, a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to class members at trial. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d at 459. Further, in weighing this

1  factor, the Court may also consider the difficulties that Plaintiffs would have in proceeding with

2  litigation (as described in *supra* Section VI.B) and the fact that numerous other settlements

3  approved in similar TCPA actions have provided the same or less relief. *See id.*

4      In the end, when viewed in comparison with other similar settlements, and in light of the

5  substantial risks of ongoing litigation, the immediate monetary recovery the Agreement affords to

6  Settlement Class Members is within the range of possible approval.

7  **VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN.**

8      Finally, once a class has been certified, Due Process and Rule 23 require that the court

9  "direct to class members the best notice that is practicable under the circumstances, including

10  individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

11  23(c)(2)(B). That is, whenever possible "[i]ndividual notice must be sent to all class members

12  whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle &*

13  *Jacquelin*, 417 U.S. 156, 173 (1974). Likewise, Rule 23(e)(1) provides that after settlement, "[t]he

14  court must direct notice in a reasonable manner to all class members who would be bound by the

15  proposal." Pursuant to Rule 23(c)(2)(B), the notice must describe the action, define the class,

16  inform class members that they may enter an appearance through an attorney or, if desired, request

17  exclusion. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Notice is adequate when it provides the information

18  necessary to make a decision in language that can be readily understood by the average class

19  member. Newberg on Class Actions § 11:53. This is the case here, where the format and language

20  of each form of notice have been carefully drafted in straightforward, easy-to-read language, and

21  all information required under Rule 23 is present. All forms of notice are attached to the

22  Agreement as Exhibits A and D.

23      To ensure that the requirements of Due Process and Rule 23 are met, the Parties have

24  agreed to a comprehensive Notice Plan developed in conjunction with professional settlement

25  administrator Epiq. First, relying on the Settlement Class list provided by iYogi, Epiq will send

26  direct notice to Settlement Class Members via e-mail.[4] The notice will direct Settlement Class

27

28  _____

[4]     The Parties and the Settlement Administrator expect direct e-mail notice to be particularly
effective in this case given that e-mail was one of the primary means by which iYogi

Members to the Settlement Website, which contains electronic versions of the Claim Form that can be submitted online (or downloaded for submission by mail), important court documents, and answers to frequently asked questions. And no later than ten days after the filing of the Agreement with the Court, Epiq will serve upon the Attorney General of the United States, the Attorneys General of each state, and any other required government officials notice of the proposed Agreement in accordance with the requirements set forth in 28 U.S.C. § 1715(b)(1)–(8).

Through emails sent directly to Settlement Class Members and a dedicated Settlement Website, the Notice Plan will reach as many members of the Settlement Class as possible under the circumstances. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding that notice plan consisting of, *inter alia*, direct email notice and a settlement website "was sufficient under the Constitution and Rule 23(e)."); *Anderson-Butler v. Charming Charlie Inc.*, No. 14-cv-01921, 2015 WL 4599420, at *7 (E.D. Cal. July 29, 2015) (approving notice plan consisting of, *inter alia*, email notice and website notice).  The Court should therefore approve the proposed Notice Plan.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) certify the Settlement Class, (2) appoint Plaintiffs as Class Representative, (3) appoint Jay Edelson, Rafey S. Balabanian, Benjamin H. Richman, and Courtney C. Booth of Edelson PC as Class Counsel, (4) grant preliminary approval of the proposed Settlement Agreement, (5) approve the proposed Notice Plan, and (6) grant such further relief the Court deems reasonable and just.

Respectfully Submitted,

**VICKI ESTRADA**, **PATRICIA GOODMAN** and **KIM WILLIAMS-BRITT**, individually and on behalf of all others similarly situated

Dated: August 21, 2015

By: /s/ Benjamin H. Richman
　　　One of Plaintiffs' attorneys

---

communicated with its customers, and each customer that registered for iYogi's services was required to provide a valid e-mail address to do so. (Balabanian Decl. ¶ 20.)

Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Courtney C. Booth (Admitted *Pro Hac Vice*)
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan Coleman (Admitted *Pro Hac Vice*)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427