1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10
                                  ----oo0oo----
11

12   VICKI ESTRADA, PATRICIA          CIV. NO. 2:13-01989 WBS CKD
     GOODMAN and KIM WILLIAMS-
13   BRITT on behalf of themselves    MEMORANDUM AND ORDER RE: MOTION
     and all others similarly         FOR PRELIMINARY APPROVAL OF
14   situated,                        CLASS ACTION SETTLEMENT

15               Plaintiffs,

16        v.

17   IYOGI, INC., a New York
     Corporation,
18

19               Defendant.

20
                                  ----oo0oo----
21

22           Plaintiffs brought this putative class action against

23   iYogi, Inc. ("iYogi"), alleging defendant violated the Telephone

24   Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by employing

25   aggressive sales tactics to get customers to renew their

26   subscriptions to iYogi and placing calls to consumers regardless

27   of whether they had refused the offer or previously asked that

28   defendant not call.  Presently before the court is plaintiffs'

                                      1

1  motion for preliminary approval of the class action settlement.

2  I. Factual and Procedural Background

3      iYogi is a technical support company that offers remote

4  computer services to millions of individuals worldwide.

5  Consumers sign up for a year-to-year flat fee service plan.

6  Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-

7  Britt allege they received several calls to their cellphones from

8  iYogi soliciting them to renew their service plans.

9      Plaintiffs contend defendant violated three provisions

10  of the TCPA.  The first provision makes it "unlawful for any

11  person within the United States . . . to make any call (other

12  than a call made for emergency purposes or made with the prior

13  express consent of the called party) using any automatic

14  telephone dialing system . . . to any telephone number assigned

15  to a . . . cellular telephone service."  47 U.S.C.

16  § 227(b)(1)(A)(iii).  The second provision makes it unlawful to

17  place more than one telephone call within a twelve-month period

18  to persons whose cellular telephone numbers are listed on the

19  national do-not-call registry.  Id. at § 227(c)(5); 47 C.F.R. §

20  64.1200(c), (e).  The third provision prohibits the making of

21  unsolicited robocalls utilizing an artificial or prerecorded

22  voice to cellular phones without first obtaining the call

23  recipients' prior express consent to do so.  47 U.S.C.

24  § 227(b)(1)(A)(iii), (b)(1)(B).

25      Plaintiffs brought this lawsuit on behalf of a putative

26  class of consumers in the United States who are iYogi subscribers

27  or former subscribers whom iYogi called on their cellphones.

28  Plaintiffs now seek preliminary approval of the parties'

1  stipulated class-wide settlement, pursuant to Federal Rule of

2  Civil Procedure 23(e).

3  II. <u>Discussion</u>

4          Rule 23(e) provides that "[t]he claims, issues, or

5  defenses of a certified class may be settled . . . only with the

6  court's approval."  Fed. R. Civ. P. 23(e).  "Approval under 23(e)

7  involves a two-step process in which the Court first determines

8  whether a proposed class action settlement deserves preliminary

9  approval and then, after notice is given to class members,

10 whether final approval is warranted."  <u>Nat'l Rural Telecomms.</u>

11 <u>Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 525 (C.D. Cal. 2004)

12 (citing <u>Manual for Complex Litig., Third</u>, § 30.41 (1995)).

13         This Order is the first step in that process and

14 analyzes only whether the proposed class action settlement

15 deserves preliminary approval.  <u>See</u> <u>Murillo v. Pac. Gas & Elec.</u>

16 <u>Co.</u>, 266 F.R.D. 468, 473 (E.D. Cal. 2010).  Preliminary approval

17 authorizes the parties to give notice to putative class members

18 of the settlement agreement and lays the groundwork for a future

19 fairness hearing, at which the court will hear objections to (1)

20 the treatment of this litigation as a class action and/or (2) the

21 terms of the settlement.  <u>See</u> <u>id.</u>; <u>Diaz v. Trust Territory of</u>

22 <u>Pac. Islands</u>, 876 F.2d 1401, 1408 (9th Cir. 1989) (stating that a

23 district court's obligation when considering dismissal or

24 compromise of a class action includes holding a hearing to

25 "inquire into the terms and circumstances of any dismissal or

26 compromise to ensure that it is not collusive or prejudicial").

27 The court will reach a final determination as to whether the

28 parties should be allowed to settle the class action on their

3

1   proposed terms after that hearing.

2       The Ninth Circuit has declared a strong judicial policy

3   favoring settlement of class actions.  Class Plaintiffs v. City

4   of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

5   where, as here, "the parties reach a settlement agreement prior

6   to class certification, courts must peruse the proposed

7   compromise to ratify both [1] the propriety of the certification

8   and [2] the fairness of the settlement."  Staton v. Boeing Co.,

9   327 F.3d 938, 952 (9th Cir. 2003).

10      The first part of this inquiry requires the court to

11  "pay 'undiluted, even heightened, attention' to class

12  certification requirements" because, unlike in a fully litigated

13  class action suit, the court "will lack the opportunity . . . to

14  adjust the class, informed by the proceedings as they unfold."

15  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

16  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

17  The parties cannot "agree to certify a class that clearly leaves

18  any one requirement unfulfilled," and consequently the court

19  cannot blindly rely on the fact that the parties have stipulated

20  that a class exists for purposes of settlement.  See Windsor, 521

21  U.S. at 621-22 (stating that courts cannot fail to apply the

22  requirements of Rule 23(a) and (b)).

23      The second part of this inquiry obliges the court to

24  "carefully consider 'whether a proposed settlement is

25  fundamentally fair, adequate, and reasonable,' recognizing that

26  '[i]t is the settlement taken as a whole, rather than the

27  individual component parts, that must be examined for overall

28  fairness . . . .'"  Staton, 327 F.3d at 952 (quoting Hanlon, 150

1  F.3d at 1026); see also Fed. R. Civ. P. 23(e) (outlining class

2  action settlement procedures).

3       A. Class Certification

4            A class action will be certified only if it meets the

5  four prerequisites identified in Rule 23(a) and additionally fits

6  within one of the three subdivisions of Rule 23(b).  See

7  Ontiveros v. Zamora, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506,

8  at *4 (E.D. Cal. July 7, 2014); Fed. R. Civ. P. 23(a)-(b).

9  Although a district court has discretion in determining whether

10 the moving party has satisfied each Rule 23 requirement, see

11 Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v.

12 Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must

13 conduct a rigorous inquiry before certifying a class, see Gen.

14 Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex.

15 Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403-05 (1977).

16       1. Rule 23(a) Requirements

17            Rule 23(a) restricts class actions to cases where:

18       (1) the class is so numerous that joinder of all
         members is impracticable; (2) there are questions of
19       law or fact common to the class; (3) the claims or
         defenses of the representative parties are typical of
20       the claims or defenses of the class; and (4) the
         representative parties will fairly and adequately
21       protect the interests of the class.

22 Fed. R. Civ. P. 23(a).

23            a. Numerosity

24            Under the first requirement, "[a] proposed class of at

25 least forty members presumptively satisfies the numerosity

26 requirement." Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450,

27 456 (C.D. Cal. 2012); see also, e.g., Collins v. Cargill Meat

28 Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger,

1   J.) ("Courts have routinely found the numerosity requirement

2   satisfied when the class comprises 40 or more members."). Here,

3   plaintiffs estimate the proposed class will contain approximately

4   189,000 members. (See Pls.' Mot. at 9 (Docket No. 74).) This

5   easily satisfies the numerosity requirement.

6                         b. Commonality

7          Commonality requires that the class members' claims

8   "depend upon a common contention" that is "capable of classwide

9   resolution--which means that determination of its truth or

10  falsity will resolve an issue that is central to the validity of

11  each one of the claims in one stroke." Wal-Mart Stores, Inc. v.

12  Dukes, 131 S. Ct. 2541, 2550 (2011). "[A]ll questions of fact

13  and law need not be common to satisfy the rule," and the

14  "existence of shared legal issues with divergent factual

15  predicates is sufficient, as is a common core of salient facts

16  coupled with disparate legal remedies within the class." Hanlon,

17  150 F.3d at 1019.

18         The proposed class includes "[a]ll individuals who are

19  iYogi subscribers or former subscribers in the United States to

20  whom iYogi or any agent or affiliate of iYogi made or attempted

21  to make outbound calls (including but not limited to subscription

22  renewal calls) to a telephone number assigned to cellular

23  telephone service from September 23, 2009 until November 18,

24  2013." (Pls.' Mot. at 8.) Like the named plaintiffs, the class

25  would be comprised of individuals alleging that an iYogi employee

26  or agent called their cellphones to convince them to renew their

27  subscription in violation of the TCPA. Due to their common legal

28  contentions, the proposed class meets the commonality

                                   6

1  requirement.

2                          c. Typicality

3         Typicality requires that named plaintiffs have claims

4  "reasonably coextensive with those of absent class members," but

5  their claims do not have to be "substantially identical."

6  Hanlon, 150 F.3d at 1020.  The test for typicality "is whether

7  other members have the same or similar injury, whether the action

8  is based on conduct which is not unique to the named plaintiffs,

9  and whether other class members have been injured by the same

10  course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497,

11  508 (9th Cir. 1992) (citation omitted).

12         The putative class members allege a simple set of facts

13  that are essentially identical to those alleged by the named

14  plaintiffs.  The class injury for all class members was the

15  aggravation and nuisance of receiving unsolicited and harassing

16  telephone calls and the money paid to wireless telephone carriers

17  for the receipt of such calls.  Such injury was caused by the

18  same conduct of iYogi.  (See First Am. Compl. ("FAC") at 1.)

19  Plaintiffs seek the remedy of statutory damages, which would

20  presumably be the same award for each individual injury.  (See

21  id. at 10, 13.)  While there could conceivably be nuances with

22  respect to a class member's experiences with iYogi or costs from

23  receiving a call, class members' claims appear to be reasonably

24  coextensive with those of the named plaintiffs.  The proposed

25  class therefore meets the typicality requirement.

26                  d. Adequacy of Representation

27         To resolve the question of adequacy, the court must

28  make two inquiries: "(1) do the named plaintiffs and their

                                    7

counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. These questions involve consideration of a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Brown v. Ticor Title Ins., 982 F.2d 386, 390 (9th Cir. 1992).

First, there do not appear to be any conflicts of interest. The named plaintiffs' interests are generally aligned with the putative class members. The putative class members suffered a similar injury as the named plaintiffs, and the definition of the class is narrowly tailored and aligns with the named plaintiffs' interests. See Windsor, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); Murillo, 266 F.R.D. at 476 (finding that an appropriate class definition ensured that "the potential for conflicting interests will remain low while the likelihood of shared interests remains high").

The settlement agreement provides for an incentive award of $1,000 to each of the named plaintiffs, to be paid separate from and in addition to the class recovery of $40 per class member. An incentive award of $1,000 to each of the named plaintiffs does not on its face appear to create a conflict of interest. The Ninth Circuit has specifically approved the award of "reasonable incentive payments" to named plaintiffs. Staton,

1  327 F.3d at 977-78.  Moreover, courts have generally found that

2  $5,000 incentive payments are reasonable.  Hopson v. Hanesbrands

3  Inc., Civ. No. 08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal.

4  Apr. 3, 2009) (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d

5  454, 463 (9th Cir. 2000); In re SmithKline Beckman Corp., 751 F.

6  Supp. 525, 535 (E.D. Pa. 1990); Alberto v. GMRI, Inc., 252 F.R.D.

7  652, 669 (E.D. Cal. 2008)).  Here, the proposed award amount of

8  $1,000 per representative is significantly lower than $5,000

9  payments found to be reasonable and proportionate to the recovery

10  of other class members.

11       The second prong of the adequacy inquiry examines the

12  vigor with which the named plaintiffs and their counsel have

13  pursued the common claims.  "Although there are no fixed

14  standards by which 'vigor' can be assayed, considerations include

15  competency of counsel and, in the context of a settlement-only

16  class, an assessment of the rationale for not pursuing further

17  litigation."  Hanlon, 150 F.3d at 1021.

18       Plaintiffs' counsel states that he and his colleagues

19  at Edelson PC "are experienced members of the plaintiffs' bar who

20  have built their practice litigating similarly complex consumer

21  class actions, including many under the TCPA."  (Balabanian Decl.

22  ¶ 17 (Docket No. 74-2).)  Further, plaintiffs' counsel states he

23  has "already dedicated substantial resources to the prosecution

24  of this Action . . . and will continue to do so throughout the

25  Action's pendency."  (Id. ¶ 18.)  The court finds no reason to

26  doubt that plaintiffs' attorney is qualified to conduct the

27  proposed litigation and assess the value of the settlement.

28       In addition, plaintiffs' counsel seems to have

1    seriously considered the risks of continued litigation in

2    deciding to settle this action.  For instance, he recognized that

3    if the case were to proceed to trial, defendant would likely

4    assert several "potentially dispositive defenses":

5            For example, on the issue of consent, there is no
             dispute that iYogi collected the phone numbers for the
6            calls at issue directly from its customers at the time
             they subscribed to its remote support services.  To
7            that end, iYogi will also likely raise the defense that
             it was in a direct relationship with the Settlement
8            Class Members and that their provision of their
             cellular phone numbers is therefore enough to
9            constitute consent.

10   (Id. ¶¶ 26-27.)  Plaintiffs' counsel also acknowledged that iYogi

11   would undoubtedly challenge a motion for class certification and

12   appeal any judgment in favor of the class, further delaying

13   recovery.  (Id. ¶ 27.)  At this stage, the court agrees that

14   these factors weighed in favor of settlement.  The named

15   plaintiffs and their counsel appear to be prepared to prosecute

16   the action vigorously on behalf of the class.

17           2. Rule 23(b)

18           An action that meets all the prerequisites of Rule

19   23(a) may be certified as a class action only if it also

20   satisfies the requirements of one of the three subdivisions of

21   Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

22   Cir. 2013).  Plaintiffs seek certification under Rule 23(b)(3),

23   which provides that a class action may be maintained only if (1)

24   "the court finds that questions of law or fact common to class

25   members predominate over questions affecting only individual

26   members" and (2) "that a class action is superior to other

27   available methods for fairly and efficiently adjudicating the

28   controversy."  Fed. R. Civ. P. 23(b)(3).

                                    10

1                       a. Predominance

2              "Because Rule 23(a)(3) already considers commonality,

3   the focus of the Rule 23(b)(3) predominance inquiry is on the

4   balance between individual and common issues." Murillo, 266

5   F.R.D. at 476 (citing Hanlon, 150 F.3d at 1022); see also

6   Windsor, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry

7   tests whether proposed classes are sufficiently cohesive to

8   warrant adjudication by representation.").

9              The class members' contentions appear to be similar, if

10  not identical.  Again, although some nuances among the class

11  members' allegations could exist, there is no indication that

12  those variations are "sufficiently substantive to predominate

13  over the shared claims." See id.  Accordingly, the court finds

14  that common questions of law and fact predominate over the class

15  members' claims.

16                      b. Superiority

17             Rule 23(b)(3) also requires a showing that "a class

18  action is superior to other available methods for fairly and

19  efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)

20  (3).  It sets forth four non-exhaustive factors to consider in

21  making this determination:

22         (A) the class members' interests in individually
           controlling the prosecution or defense of separate
23         actions; (B) the extent and nature of any litigation
           concerning the controversy already begun by or against
24         class members; (C) the desirability or undesirability
           of concentrating the litigation of the claims in the
25         particular forum; and (D) the likely difficulties in
           managing a class action.
26

27  Id.  The parties settled this action prior to certification,

28
                              11

1    making factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D.

2    at 477 (citing Windsor, 521 U.S. at 620).  Class members might

3    have an interest in individually controlling prosecution given

4    that recovery through settlement will amount to a $40 award

5    whereas the TCPA provides statutory damages of $500 per call

6    received or, at most, $1,500 if defendant's conduct is found to

7    be willful.  See 47 U.S.C. § 227(b)(3)(C), (c)(5)(B).  However,

8    the costs of pursuing litigation individually would be

9    substantially higher, especially considering that the TCPA does

10   not provide for payment of attorney fees.  Id.  There is also

11   always the risk that defendant will prevail at trial and

12   plaintiffs will recover nothing.  As a result, class members'

13   interest in pursuing individual suits is likely low.  The court

14   is unaware of any concurrent litigation already begun by class

15   members regarding TCPA violations by defendant.[1]  Objectors at

16   the fairness hearing may reveal otherwise.  See Alberto, 252

17   F.R.D. at 664.  At this stage, the class action device appears to

18   be the superior method for adjudicating this controversy.

19                  3. Rule 23(c)(2) Notice Requirements

20        If the court certifies a class under Rule 23(b)(3), it

21   "must direct to class members the best notice that is practicable

22   under the circumstances, including individual notice to all

23   members who can be identified through reasonable effort."  Fed.

24   R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

25   content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

26   _____

27        [1]    Plaintiffs have informed the court that there were
     separate actions filed by other clients of Edelson PC against
     iYogi on claims unrelated to this action.  (Pls.' Mot. at 7.)

28   Those matters have been settled on an individual basis.  (Id.)

                                  12

1   651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

2   417 U.S. 156, 172-77 (1974)).  Although that notice must be

3   "reasonably certain to inform the absent members of the plaintiff

4   class," actual notice is not required.  Silber v. Mabon, 18 F.3d

5   1449, 1454 (9th Cir. 1994) (citation omitted).

6          The settlement agreement provides that the settlement

7   administrator, Epiq Class Action & Claims Solutions, Inc., will

8   provide notice to the class via e-mail.  (Pls.' Mot. at 23-24;

9   Settlement Agreement ¶ 7.1 (Docket No. 74-1).)  If an e-mail

10  bounces back or is otherwise undeliverable, the settlement

11  administrator will re-send the email one time.  (Settlement

12  Agreement ¶ 7.1.)  The e-mail will direct class members to the

13  settlement website.  (Id.)  The parties supplied the full notice,

14  (Settlement Agreement Ex. D), and claim form, (id. at Ex. A),

15  which will be available on the settlement website.

16         The notice explains the proceedings; defines the scope

17  of the class; informs the class member of the claim form

18  requirement and the binding effect of the class action; describes

19  the procedure for opting out and objecting; and provides the time

20  and date of the fairness hearing.  The content of the notice

21  therefore satisfies Rule 23(c)(2)(B).  See Fed. R. Civ. P.

22  23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen. Elec., 361

23  F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it

24  'generally describes the terms of the settlement in sufficient

25  detail to alert those with adverse viewpoints to investigate and

26  to come forward and be heard.'" (quoting Mendoza v. Tucson Sch.

27  Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

28         Plaintiffs contend that e-mail will "be particularly

13

1   effective in this case given that e-mail was one of the primary

2   means by which iYogi communicated with its customers, and each

3   customer that registered for iYogi's services was required to

4   provide a valid e-mail address to do so." (Pls.' Mot. at 23-24;

5   Balabanian Decl. ¶ 20 (Docket No. 74-2).) The reliance on e-mail

6   alone is not generally the best form of notice, especially given

7   that the parties do not have any process in place for correcting

8   out-of-date e-mail addresses. However, given defendant's history

9   of using email to contact customers and the fact that it would

10  likely be prohibitively expensive to provide notice to such a

11  large class through other means, the court is satisfied that this

12  system is reasonably calculated to provide notice to class

13  members and is the best form of notice available under the

14  circumstances.

15       B. <u>Preliminary Settlement Approval</u>

16       After determining that the proposed class satisfies the

17  requirements of Rule 23, the court must determine whether the

18  terms of the parties' settlement appear fair, adequate, and

19  reasonable. <u>See</u> Fed. R. Civ. P. 23(e)(2); <u>Hanlon</u>, 150 F.3d at

20  1026. This process requires the court to "balance a number of

21  factors," including:

22       the strength of the plaintiff's case; the risk,
         expense, complexity, and likely duration of further
23       litigation; the risk of maintaining class action
         status throughout the trial; the amount offered in
24       settlement; the extent of discovery completed and the
         stage of the proceedings; the experience and views of
25       counsel; the presence of a governmental participant;
         and the reaction of the class members to the proposed
26       settlement.

27

28  <u>Hanlon</u>, 150 F.3d at 1026. Many of these factors cannot be

14

1   considered until the final fairness hearing, so the court need

2   only conduct a preliminary review at this time to resolve any

3   "glaring deficiencies" in the settlement agreement before

4   authorizing notice to class members.  <u>Ontiveros</u>, 2014 WL 3057506,

5   at *12 (citing <u>Murillo</u>, 266 F.R.D. at 478).

6        At the preliminary stage, "the court need only

7   'determine whether the proposed settlement is within the range of

8   possible approval.'"  <u>Murillo</u>, 266 F.R.D. at 479 (quoting

9   <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

10  This generally requires consideration of "whether the proposed

11  settlement discloses grounds to doubt its fairness or other

12  obvious deficiencies, such as unduly preferential treatment of

13  class representatives or segments of the class, or excessive

14  compensation of attorneys."  <u>Id.</u> (quoting <u>W. v. Circle K Stores,</u>

15  <u>Inc.</u>, Civ. No. 04-0438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D.

16  Cal. June 13, 2006)).  Courts often begin by examining the

17  process that led to the settlement's terms to ensure that those

18  terms are "the result of vigorous, arms-length bargaining" and

19  then turn to the substantive terms of the agreement.  <u>See, e.g.</u>,

20  <u>West</u>, 2006 WL 1652598, at *11-12; <u>In re Tableware Antitrust</u>

21  <u>Litig.</u>, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)

22  ("[P]reliminary approval of a settlement has both a procedural

23  and a substantive component.").

24        1. <u>Negotiation of the Settlement Agreement</u>

25        The parties represent that the settlement is the result

26  of arms-length settlement negotiations, including a private

27  mediation before the Honorable Morton Denlow (ret.) of JAMS

28  (Chicago).  (Balabanian Decl. ¶ 8); <u>see La Fleur v. Med. Mgmt.</u>

1    Int'l, Inc., Civ. No. 5:13-00398, 2014 WL 2967475, at *4 (N.D.

2    Cal. June 25, 2014) ("Settlements reached with the help of a

3    mediator are likely non-collusive.").  Plaintiffs' counsel stated

4    that the settlement was reached after "months of continued and

5    often contentious settlement discussions."  (Balabanian Decl. ¶

6    22.)  He declares he took into account the uncertain outcome and

7    risks of litigation, particularly the delay often inherent in

8    class actions.  (Id. ¶¶ 26-27.)  Moreover, the parties had begun

9    formal discovery and that also informed the decision to settle.

10   (Pls.' Mot. at 5.)  In light of these considerations, the court

11   finds no reason to doubt the parties' representations that the

12   settlement was the result of vigorous, arms-length bargaining.

13             2. Amount Recovered and Distribution

14             In determining whether a settlement agreement is

15   substantively fair to the class, the court must balance the value

16   of expected recovery against the value of the settlement offer.

17   See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve

18   consideration of the uncertainty class members would face if the

19   case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at

20   *14.

21             The TCPA provides for damages of $500 "for each such

22   violation" of the statute or, at most, $1,500 if defendant's

23   conduct was willful.  47 U.S.C. § 227(b)(3)(B), (c)(5)(B).  In

24   contrast, the settlement would provide each class member with $40

25   in cash, which is only eight percent of the available damages

26   under the TCPA.  In addition, the settlement agreement requires

27   class members to take the affirmative step of opting in to

28   receive the $40 payment.  Class members must submit a claim form

                                    16

1 through the settlement website; by downloading the form from the

2 website and submitting it by mail to the settlement

3 administrator; or by calling a toll free number or writing to the

4 settlement administrator to request a hard copy claim form.

5 (Settlement Agreement ¶ 6.1.)  The agreement also requires class

6 members to take the affirmative step of opting out if they do not

7 wish to be part of the settlement class.  (Id. ¶¶ 1.29, 1.30,

8 8.1.)  Class members who do not request to be excluded will

9 release defendant from their TCPA claims.  (Id. at ¶ 1.28.)

10 Therefore, there is a risk that some members of the class will

11 opt into the judgment by default, thus releasing defendant, but

12 get no recovery simply because they fail to timely return the

13 claim form.

14      While the settlement agreement provides class members

15 with only a small percentage of the possible recovery and

16 contains a potentially unfair opt-in/opt-out requirement, there

17 are many uncertainties associated with pursuing litigation that

18 justify this recovery.  As discussed above, plaintiffs' counsel

19 has testified that there are two "potentially dispositive"

20 defenses that iYogi could assert with respect to customers'

21 consent and there are risks of significant delay if defendant

22 challenges a motion for class certification or any final judgment

23 in favor of plaintiffs.  (Balabanian Decl. ¶¶ 26-27.)  In

24 addition, there is no assurance the class will recover the full

25 amount of damages even if it prevails at trial "given iYogi's

26 financial condition and limited insurance coverage."  (Id. ¶ 27.)

27      In light of the uncertainties associated with pursuing

28 litigation, the court will grant preliminary approval to the

17

1  settlement because it is within the range of possible approval.

2  Murillo, 266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d

3  616, 621 n.3 (7th Cir. 1982)).

4          3. Attorney's Fees

5          If a negotiated class action settlement includes an

6  award of attorneys' fees, that fee award must be evaluated in the

7  overall context of the settlement.  Knisley v. Network Assocs.,

8  312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at

9  455.  The court "ha[s] an independent obligation to ensure that

10  the award, like the settlement itself, is reasonable, even if the

11  parties have already agreed to an amount."  In re Bluetooth

12  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

13          The settlement agreement provides that plaintiffs'

14  counsel will apply to the court for a fee award of up to

15  $300,000, to be paid by defendant separate and apart from the

16  recovery of the class.  (Settlement Agreement ¶ 10.2.)  Defendant

17  may oppose plaintiffs' petition for the fee award.  (Id.)  If the

18  court does not approve, in whole or in part, the fee award, it

19  will not prevent the settlement agreement from becoming effective

20  or be grounds for termination.  (Id.)

21          In deciding the attorney's fees motion, the court will

22  have the opportunity to assess whether the requested fee award is

23  reasonable, by multiplying a reasonable hourly rate by the number

24  of hours counsel reasonably expended.  See Van Gerwen v. Gurantee

25  Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of

26  this lodestar calculation, the court may take into account

27  factors such as the "degree of success" or "results obtained" by

28  plaintiffs' counsel.  See Cunningham v. County of Los Angeles,

1    879 F.2d 481, 488 (9th Cir. 1988).  If the court, in ruling on

2    the fees motion, finds that the amount of the settlement warrants

3    a fee award at a rate lower than what plaintiffs' counsel

4    requests, then it will reduce the award accordingly.  The court

5    will therefore not evaluate the fee award at length here in

6    considering whether the settlement is adequate.  However, the

7    fact that the attorney's fees will not detract from the class

8    members' recovery militates in favor of approving the settlement

9    agreement.

10        IT IS THEREFORE ORDERED that plaintiffs' motion for

11   preliminary certification of a conditional settlement class and

12   preliminary approval of the class action settlement be, and the

13   same hereby is, GRANTED.

14        IT IS FURTHER ORDERED that:

15        (1) Defendant shall notify class members of the

16   settlement in the manner specified under section VII of the

17   settlement agreement;

18        (2) Class members who want to receive a settlement

19   payment under the settlement agreement must accurately complete

20   and deliver the claim form to the settlement administrator no

21   later than sixty (60) calendar days after the last day for notice

22   to be provided under section V and VI of the settlement

23   agreement;

24        (3) Class members who want to object to or comment on

25   the settlement agreement must deliver written objections to

26   plaintiffs' counsel and defendant's counsel, and must file such

27   objection with the court, no later than sixty (60) calendar days

28   after the last day for notice to be provided under section VII of

19

1   the settlement agreement.  Written objections must be filed and

2   postmarked no later than the objection deadline.  The objection

3   must include: (a) the name and case number of the action,

4   Estrada, et al. v. iYogi, Inc., Case No. 2:13-CV-01989 (E.D.

5   Cal.); (b) the class member's full name and current address; (c)

6   the email address the member used in connection with purchasing

7   an iYogi subscription; (d) a signed declaration that he/she

8   believes himself or herself to be a member of the settlement

9   class; (e) the specific grounds for the objection; (f) all

10  documents or writings that the member desires the court to

11  consider; and (g) a statement regarding whether the class member

12  or class member's counsel intend to appear at the Fairness

13  Hearing.  Any class member who files and serves a written

14  objection, as described in this paragraph, may appear at the

15  fairness hearing, either in person or through personal counsel

16  hired at the class member's expense, to object to the settlement

17  agreement.

18          (4) Class members who fail to object to the settlement

19  agreement in the manner specified above shall be deemed to have

20  waived their right to object to the settlement agreement and be

21  forever barred from making any such objections (whether in this

22  action or any other action or proceeding).

23          (5) Class members who want to be excluded from the

24  settlement must, within sixty days after the last day for notice

25  to be provided, submit a request for exclusion indicating (a) the

26  name and case number of the action, Estrada, et al. v. iYogi,

27  Inc., Case No. 2:13-CV-01989 (E.D. Cal.); (b) the name, address,

28  and telephone number of the person requesting exclusion

1   (including the telephone number allegedly called by defendant);

2   and (c) a statement to the effect that "I/We hereby request to be

3   excluded from the proposed Settlement Classes in <u>Estrada, et al.</u>

4   <u>v. iYogi, Inc.</u>, Case No. 2:13-CV-01989 (E.D. Cal.)."  Requests

5   must be in writing, signed by the person seeking exclusion, and

6   postmarked or received by the end of the opt-out period.

7          (6) The class is provisionally certified as a class of

8   all individuals who are iYogi subscribers or former subscribers

9   in the United States to whom iYogi or any agent or affiliate of

10  iYogi made or attempted to make outbound calls (including but not

11  limited to subscription renewal calls) to a telephone number

12  assigned to cellular telephone service from September 23, 2009

13  until November 18, 2013.  (Settlement Agreement ¶ 1.35.)

14  Excluded from the class are the judges presiding over the action

15  and members of their families; defendant; all persons who

16  properly execute and submit a timely request for exclusion; all

17  persons whose claims against defendant have been fully and

18  finally adjudicated and/or released; and the legal

19  representatives of any excluded persons.

20         (7) Plaintiffs Vicki Estrada, Patricia Goodman, and Kim

21  Williams-Britt are conditionally certified as the class

22  representatives to implement the parties' settlement in

23  accordance with the settlement agreement.  The law firm of

24  Edelson PC, through Jay Edelson, Rafey S. Balabanian, Benjamin H.

25  Richman, and Courtney C. Booth, is conditionally appointed as

26  class counsel.  Plaintiffs and Edelson PC must fairly and

27  adequately protect the class's interests.

28         (8) The parties agree that Epiq Class Action & Claims

1   Solutions, Inc. will serve as the settlement administrator.

2         (9) If the settlement agreement terminates for any

3   reason, the following will occur: (a) Class certification will be

4   automatically vacated; (b) plaintiffs will stop functioning as

5   class representatives; and (c) this action will revert to its

6   previous status in all respects as it existed immediately before

7   the parties executed the settlement agreement.

8         (10) All discovery and pretrial proceedings and

9   deadlines are stayed and suspended until further notice from the

10  court, except for such actions as are necessary to implement the

11  settlement agreement and this Order.

12        (11) The fairness hearing is set for January 25, 2016

13  at 2:00 p.m., in Courtroom No. 5, to determine whether the

14  settlement agreement should be finally approved as fair,

15  reasonable, and adequate.

16        (12) Based on the date this Order is signed and the

17  date of the fairness hearing, the following are the certain

18  associated dates in this settlement:

19              (a) Defendant shall send e-mail notice within 28

20  days after entry of this Order;

21              (b) Pursuant to Local Rule 293, plaintiffs shall

22  file a motion for attorney's fees no later than 28 days prior to

23  the final fairness hearing;

24              (c) The last day for class members to file a

25  claim, request exclusion, or object to the settlement is 60 days

26  after the date on which notice is provided;

27        (13) The parties shall file briefs in support of the

28  final approval of the settlement no later than January 11, 2016.

22

1          (14) In the case that the fairness hearing be

2    postponed, adjourned, or continued, the updated hearing date

3    shall be posted on the settlement website.

4    Dated:  October 6, 2015

5

WILLIAM B. SHUBB
6                        UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28