Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

[Additional counsel appear on signature page.]

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI ESTRADA, PATRICIA GOODMAN and KIM WILLIAMS-BRITT individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> IYOGI, INC., a New York corporation, <br><br> *Defendant*. | Case No. 2:13-cv-01989-WBS-CKD <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD** <br><br> Judge:   Hon. William B. Shubb <br> Date:    January 25, 2016 <br> Time:    2:00 p.m. |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on January 25, 2016 at 2:00 p.m., or at such other time as may be set by the Court, Plaintiffs Vicki Estrada, Patricia Goodman and Kim Williams-Britt will appear, through counsel, before the Honorable William B. Shubb, or any Judge sitting in his stead, in Courtroom 5, 14th Floor, of the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(h), and in accordance with this Court's October 6, 2015 Order Granting Preliminary Approval of Class Action Settlement Agreement and Approving Notice Plan (dkt. 76), to grant their Motion for Reasonable Attorneys' Fees, Expenses, and Incentive Award.

Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, along with any oral argument that may be presented to the Court, and any evidence submitted in connection therewith.

Respectfully Submitted,

**VICKI ESTRADA**, **PATRICIA GOODMAN** and **KIM WILLIAMS-BRITT**, individually and on behalf of all others similarly situated,

Dated: December 18, 2015

By: /s/ Benjamin H. Richman
One of Plaintiffs' attorneys

Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Samuel Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Courtney C. Booth (Admitted *Pro Hac Vice*)
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

    A.   Nature of the Litigation ............................................................................ 2

    B.   The Litigation History and Work Performed for the Class's Benefit ........... 3

    C.   The Parties' Settlement Efforts and Negotiations .................................... 5

III.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES
        AND EXPENSE AWARD ................................................................................... 6

    A.   Application of the Lodestar Method Demonstrates that the Requested
             Fee is Reasonable .................................................................................. 7

        1.   *The reasonable number of hours expended on the litigation warrants
                  approval of the agreed upon fee* .................................................. 7

        2.   *Class Counsel's hourly rates are reasonable and justify approval
                  of the agreed upon fee* .................................................................. 8

        3.   *Class Counsel's base lodestar warrants an upward adjustment
                  based on the relevant reasonableness factors* .......................... 11

            a.   Class Counsel Achieved Exceptional Relief for the Class ........... 12

            b.   There Were Significant Risks Involved in the Litigation ............. 13

            c.   Class Counsel's Fee Request is Consistent with Awards in
                        Similar Cases ........................................................................... 15

    B.   The Requested Fee is Equally Reasonable Under the Constructive
             Common Fund Cross-Check ................................................................ 15

IV.     THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE
        AWARD ........................................................................................................... 17

V.      CONCLUSION ................................................................................................ 19

1

**TABLE OF AUTHORITIES**

2

**United States Supreme Court Cases:**

3

*Boeing v. Van Gemert,*
4
    444 U.S. 156 (1980) ............................................................................... 16

5
*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ............................................................................... 13

6
*Hensley v. Eckerhart,*
7
    461 U.S. 424 (1983) ............................................................................ 6, 12

8
*Mims v. Arrow Fin. Servs. LLC,*
    132 S. Ct. 740 (2012) ........................................................................... 3, 13

9
**United States Circuit Court Cases:**

10
*Gonzales v. City of Maywood,*
11
    729 F.3d 1196 (9th Cir. 2013) .................................................................. 8

12
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................................................ 11

13
*In re Bluetooth Headset Prods. Liab. Litig.,*
14
    654 F.3d 935 (9th Cir. 2011) ..........................................................*passim*

15
*In re HP Inkjet Printer Litig.,*
    716 F.3d 1173 (9th Cir. 2013) .................................................................. 7

16
*In re Online DVD-Rental Antitrust Litig.,*
17
    779 F.3d 934 (9th Cir. 2015) ............................................................. 7, 17

18
*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) .................................................................... 11

19
*Rodriguez v. West Publ'g Corp.,*
20
    563 F.3d 948 (9th Cir. 2009) .................................................................. 17

21
*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ............................................................. 3, 13

22
*Staton v. Boeing Co.,*
23
    327 F.3d 938 (9th Cir. 2003) ............................................................. 7, 18

24
*Steiner v. Am. Broad. Co.,*
    248 Fed. App'x 780 (9th Cir. 2007) ...................................................... 15

25
*Vizcaino v. Microsoft Corp.,*
26
    290 F.3d 1043 (9th Cir. 2002) .................................................... 12, 15, 17

27
*Williams v. MGM-Pathe Commun. Co.,*
    129 F.3d 1026 (9th Cir. 1997) ................................................................ 16

28

**United States District Court Cases:**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
    No. 08-cv-00248 (S.D. Cal.) ....................................................................... 15

*Anderson-Butler v. Charming Charlie Inc.*,
    No. 14-cv-01921, 2015 WL 6703805 (E.D. Cal. Nov. 3, 2015) ..................... 18

*Arthur v. Sallie Mae, Inc.*,
    No. 10-cv-198 (W.D. Wash.) ....................................................................... 13

*Baird v. Sabre, Inc.*,
    No. 13-cv-999, 2014 WL 320205 (C.D. Cal. Jan. 8, 2014) ............................ 14

*Barbosa v. Cargill Meat Solutions Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013).................................................................... 9

*Birchmeier v. Caribbean Cruise Line*,
    302 F.R.D. 240 (N.D. Ill. 2014) .................................................................. 11

*Buccallato v. AT&T Operations, Inc.*,
    No. 10-cv-00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................... 15

*Davis v. Brown Shoe Co.*,
    No. 13-cv-01211, 2015 WL 6697929 (E.D. Cal. Nov. 3, 2015) ................. 17, 18

*D'Lil v. Riverboat Delta King, Inc.*,
    No. 11-cv-2230, 2015 WL 5092714 (E.D. Cal. Aug. 28, 2015) ....................... 9

*Goodman v. Hangtime, Inc.*,
    No. 14-cv-1022 (N.D. Ill.)........................................................................... 10

*Gutierrez v. Barclays Group*,
    No. 10-cv-01012 (S.D. Cal.) ....................................................................... 15

*Harris v. Vector Mktg. Corp.*,
    No. 08-cv-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ....................... 18

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
    No. 11-md-2261 (S.D. Cal.)..................................................................... 13, 15

*Kazemi v. Payless Shoesource, Inc.*,
    No. 09-cv-5142 (N.D. Cal.)......................................................................... 13

*Kirchner v. Shred-It USA, Inc.*,
    No. 14-cv-1437, 2015 WL 1499115 (E.D. Cal. Mar. 31, 2015) ....................... 7

*Knox v. Chiang*,
    No. 05-cv-02198, 2013 WL 2434606 (E.D. Cal. June 5, 2013) ..................... 12

*Kramer v. Autobytel. Inc*,
    No. 10-cv-02722 (N.D. Cal.)....................................................................... 15

*Kulesa v. PC Cleaner, Inc.*,
    No. 12-cv-725 (C.D. Cal.)........................................................................... 10

*Lambert v. Buth-Na-Bodhaige, Inc.*
No. 14-cv-514 (E.D. Cal) ...................................................................... 9, 13, 15

*Lively v. Caribbean Cruise Line, Inc.*,
No. 14-cv-00953 (E.D. Cal.) ....................................................................... 9

*Lopez v. Youngblood*,
No. 07-cv-0474, 2011 WL 10483569 (E.D. Cal. Sept. 1, 2011) .................. 16

*Lozano v. Twentieth Century Fox Film Corp.*,
No. 09-cv-06344 (N.D. Ill.) ........................................................................ 11

*McClintic v. Lithia Motors, Inc.*,
No. 11-cv-00859 (W.D. Wash.) ................................................................. 15

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) ......................................................... 6, 7, 9

*Moore v. Verizon Communications Inc.*,
No. 09-cv-1823, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014) ...................... 6

*Murillo v. Pacific Gas & Elec. Co.*,
No. 08-cv-1974, 2010 WL 2889728 (E.D. Cal. July 21, 2010) ..................... 6

*Nwabueze v. AT&T Inc.*,
No. 09-cv-01529, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014) ................... 15

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) .............................................................. 8, 9

*Pimental, et al. v. Google Inc., et al.*,
No. 11-cv-2585 (N.D. Cal.) ........................................................................ 11

*Roberts v. Paypal, Inc.*,
No. 12-cv-0622, 2013 WL 2384242 (N.D. Cal. May 30, 2013) .................... 14

*Robles v. Lucky Brand Dungarees, Inc.*,
No. 10-cv-04846 (N.D. Cal.) ...................................................................... 10

*Rojas v. Career Educ. Corp.*,
No. 10-cv-5260 (N.D. Ill.) ........................................................................... 11

*Ryabyshchuck v. Citibank (S.D.)*,
No. 11-cv-1236, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) .................... 14

*Santos v. Jaco Oil Co.*,
No. 14-cv-0738, 2015 WL 5732829 (E.D. Cal. Sept. 29, 2015) ............. 13, 17

*Satterfield v. Simon & Schuster, Inc., et al.*,
No. 06-cv-2893 (N.D. Cal.) ........................................................................ 11

*Tait v. BSH Home Appliances Corp.*,
No. 10-cv-0711, 2015 WL 4537463 (C.D. Cal. July 27, 2015) .................... 16

*Theis v. AVG Techs. USA, Inc.*,
No. 12-cv-10920 (D. Mass.) ....................................................................... 10

*Torchia v. W.W. Grainger, Inc.,*
  304 F.R.D. 256 (E.D. Cal. 2014)............................................................ 7, 12, 17

*Trulsson v. County of San Joaquin,*
  No. 11-cv-2986, 2014 WL 5472787 (E.D. Cal. Oct. 28, 2014) ......................................... 9

**<u>Miscellaneous:</u>**

47 C.F.R. 64.1200 ............................................................................................................ 3

47 U.S.C. § 227 ...................................................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................................................ 6

Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* (3d ed. 1992) ........................................................ 12

Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* (4th ed. 2007) ........................................................ 16

## I.   INTRODUCTION

Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-Britt ("Plaintiffs") brought this case after receiving unsolicited telemarketing calls on their cell phones urging them to renew or revive their computer-support subscriptions with Defendant iYogi, Inc. ("Defendant" or "iYogi").[1] Plaintiffs alleged these calls violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). After more than two years of litigation, including motion practice, formal and informal discovery, mediation with the Honorable Morton Denlow (ret.) of JAMS (Chicago), and over a year of negotiations in total, Plaintiffs and Class Counsel were able to secure a Settlement that is a first-rate result for the Settlement Class. It is that Settlement that forms the basis for the instant request for an award of reasonable attorneys' fees and expenses to Class Counsel and incentive awards to Plaintiffs as Class Representatives.

Under the terms of the proposed Settlement, each Class Member who submits a valid claim will recover a $40 cash payment, a number that will remain fixed regardless of the amount of claims made or attorneys' fees awarded by this Court. As detailed at-length in Plaintiff's preliminary approval papers, this is a substantial recovery for a TCPA case where the Settlement Class Members were in a "direct relationship" with iYogi and thus would have faced significant risks on the dispositive issue of consent to receive the telephone calls. Indeed, TCPA cases involving so-called "direct relationships" historically result in individual class members receiving a coupon or cash recovery that is significantly less than the $40 available under this Settlement. Equally important, the Settlement provides meaningful prospective relief requiring iYogi to modify its terms and conditions to (i) more clearly inform its customers that by entering into the agreement for its services, they consent to be contacted via telephone regarding the services, and (ii) more clearly inform customers of their option to elect not to receive such calls.

With the relief secured for the Settlement Class and the efforts that preceded it as a backdrop, Plaintiffs now respectfully move the Court to approve the requested attorneys' fees of $300,000 and a modest incentive award of $3,000 total (i.e., just $1,000 per named plaintiff). With

---

[1]      Except as otherwise stated herein, defined terms used in this Memorandum shall have the same meanings as ascribed to them in the Parties' Stipulation and Agreement of Settlement.

respect to the former, the requested fees are presumptively reasonable applying an Eastern District market rate to the number of hours Class Counsel necessarily expended litigating this case over the course of more than two years. Class Counsel's lodestar of $206,730.00 also warrants a modest upward adjustment of 1.45 to reach the agreed-upon fee of $300,000. This multiplier is reasonable and warranted given the results achieved for the Settlement Class, the significant risk that Plaintiffs (and thereby, Class Counsel) would recover nothing, and lodestar adjustments granted in similar cases in the Ninth Circuit. The reasonableness of the requested fee award is further confirmed when "cross-checking" with the percentage of recovery method, as it constitutes just 3.754% of the constructive common fund established by the Settlement, which obviously falls far below the Ninth Circuit's 25% benchmark.

Likewise, Plaintiffs' requested incentive award is also consistent with—and in fact, less than—awards in similar cases in this District, and is entirely appropriate given their efforts on behalf of the Settlement Class in securing the Settlement.

For these reasons, and as explained more fully below, Plaintiffs request that the Court approve the requested attorneys' fees and incentive award.

## II.    BACKGROUND

### A.    Nature of the Litigation.

iYogi is a technical support company that offers remote computer support services to millions of individuals worldwide. (Dkt. 32 ¶ 13.) iYogi's services function on a subscription-based pricing model in which consumers sign up for a year-to-year flat-fee service plan. (*Id.*) However, as the plans near or pass their date of expiration, Plaintiffs allege that iYogi employs overly aggressive sales tactics to get customers to renew their subscriptions for an additional fee, or in the event their plans have lapsed, to sign up again. (*Id.* ¶ 14.) Regardless of whether a consumer refuses the offer or had previously asked that iYogi not call, Plaintiffs allege that iYogi would often place additional calls in hopes of obtaining customers' agreements to renew their subscriptions. (*Id.* ¶ 17.)

Plaintiffs Estrada, Goodman and Williams-Britt all allege that they received several such calls to their cell phones from iYogi soliciting them to renew their service plans. (*See id.* ¶¶ 23-27,

29-33, 36-41.) As a result, Plaintiffs filed their initial complaint on September 23, 2013 (dkt. 1) and later, their First Amended Complaint (dkt. 32), asserting claims on behalf of themselves and all similarly situated individuals for iYogi's alleged violations of the TCPA.

In particular, Plaintiffs asserted claims under three provisions of the TCPA. The first provision makes it unlawful to place calls to cellular telephones without the recipient's consent using equipment the statute defines as an automatic telephone dialing system, or "ATDS":

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B).

For its part, the second provision makes it unlawful to place more than one telephone call within a twelve-month period to persons whose cellular telephone numbers are listed on the national Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c), (e). And the third prohibits the making of unsolicited robocalls utilizing an artificial or prerecorded voice to cell phones without first obtaining the call recipients' prior express consent to do so. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(1)(B).

iYogi's intrusive calls, Plaintiffs allege, are exactly the type contemplated by the TCPA, which was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy." *Id.* at 745; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that the statute's purpose is to protect significant privacy interests). Reflecting the importance of telephone subscribers' privacy, the TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is willful) and also provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)-(C); 47 U.S.C. § 227(c)(5)(B).

Based on the foregoing and the nature of telemarketing calls that iYogi allegedly placed,

1   Plaintiffs sought both monetary and injunctive relief under the TCPA. (Dkt. 32, Prayer for Relief.)

2   **B.    The Litigation History and Work Performed for the Class's Benefit.**

3   Plaintiffs initiated this action against iYogi on September 23, 2013. (Dkt. 1.) On December

4   18, 2013, iYogi filed a motion to dismiss the complaint in its entirety, arguing primarily (i) that

5   Plaintiffs did not adequately plead iYogi's use of an automatic telephone dialing system

6   ("ATDS") to make the calls, (ii) that Plaintiffs failed to state a claim because the calls fell into the

7   established business relationship exemption under the TCPA, and (iii) that Plaintiff Williams-Britt

8   could not allege the calls were solicitations since she did not plead that she answered any of them.

9   (*Id.*)

10   Although Plaintiffs initially began to respond to the motion, on January 8, 2014, they

11   amended their complaint to allege in greater detail the basis for their allegations that iYogi used an

12   ATDS to make the calls and that Plaintiff Williams-Britt in fact answered some of the calls iYogi

13   placed. (*See* dkt. 32.) This resolved the pleadings issues as iYogi answered the First Amended

14   Complaint on February 3, 2014. (Dkt. 39.) Defendant did, however, raise eighteen affirmative

15   defenses including, *inter alia*, that it had obtained consent to make the calls at issue by virtue of its

16   "prior relationship," that Plaintiffs cannot satisfy Rule 23's requisites to class certification, that

17   Plaintiffs were not charged for the calls, and that their claims are at least partially barred by the

18   statute of limitations. (*Id.*)

19   On April 4, 2014, the Parties exchanged their initial disclosures and thereafter commenced

20   formal discovery, serving their respective first sets of written discovery requests. (*See* Declaration

21   of Rafey S. Balabanian ("Balabanian Decl.") ¶ 4, attached as Exhibit 1.) As the Parties reviewed

22   and prepared responses to the outstanding discovery, they also began discussing the potential for

23   resolving the case without the need for additional protracted litigation. (*Id.* ¶ 5.) After numerous

24   telephone conferences and correspondence, the discussions progressed to the point that the Parties

25   determined to proceed with an initial private mediation before the Honorable Morton Denlow

26   (ret.) of JAMS (Chicago). (*Id.*) At that time, they also agreed that it would be most efficient to

27   discontinue their formal discovery obligations to focus their efforts and resources on resolution.

28   (*Id.* ¶ 6.) Nevertheless, they commenced informal discovery aimed at further exploring their

1  respective views of the claims and defenses at issue and possible settlement frameworks—

2  including exchanging information related to the volume of calls at issue, the number of individuals

3  to whom the calls were placed, the calls Plaintiffs received, and information relating to iYogi's

4  financial condition and applicable insurance coverage. (*Id.*)

5       **C.**     **The Parties' Settlement Efforts and Negotiations.**

6       As detailed in Plaintiffs' Motion for Preliminary Approval (dkt. 74), the Parties' path to

7  settlement was by no means an easy one. It included a formal mediation, numerous telephonic

8  conferences and correspondence after settlement conversations failed to make headway, and

9  several arm's-length rounds of negotiations between counsel. It was not until nearly a year after

10  their initial formal mediation that counsel were finally able to come to an agreement that would

11  fairly benefit the class.

12       On August 18, 2014, the Parties participated in their first mediation session with Judge

13  Denlow. (*Id.* ¶ 7.) Although the Parties were unable to reach an agreement that day, they agreed to

14  exchange certain additional information and believed that they had made progress towards an

15  ultimate resolution. (*Id.*) Nevertheless, after several months of additional arm's-length settlement

16  negotiations with the assistance of Judge Denlow—through numerous telephone conferences and

17  correspondence—it became apparent that the Parties had reached an impasse and a settlement

18  could not be reached at that time. (*Id.* ¶ 8.) Accordingly, the Parties determined to proceed with

19  the litigation, including meeting and conferring on a revised schedule of discovery and general

20  case deadlines and proposing the same to the Court. (Dkts. 58, 62.)

21       In March 2015, as the Parties geared up for more formal discovery and litigation, they

22  decided to make one last attempt at resolution. (Balabanian Decl. ¶ 9.) That led to weeks of

23  additional negotiations and ultimately, an agreement in principle as to a proposed settlement. (*Id.*)

24  Notwithstanding, it would take several additional months of (often contentious) negotiations for

25  the Parties to reach the final terms and reduce them to writing in the form of the proposed

26  Stipulation of Class Action Settlement now before the Court. (*See* dkts. 62-69.)

27

28

### III.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND EXPENSE AWARD.

Under Federal Rule of Civil Procedure 23(h), the Court may award reasonable attorneys' fees as authorized by law or by agreement of the parties. *Murillo v. Pacific Gas & Elec. Co.*, No. 08-cv-1974-WBS, 2010 WL 2889728, at *9 (E.D. Cal. July 21, 2010). Courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."). Nevertheless, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Where, as here, a settlement is comprised of claims-made payments to class members on the one hand, and a separate agreed-upon attorneys' fee to be determined by the court and paid by the defendant on the other, courts have the discretion to analyze the reasonableness of the requested attorneys' fees either under the lodestar method or as a percentage of the constructive common fund. *Id.* at 942. Under the lodestar method, a reasonable attorneys' fee "is calculated by multiplying the number of hours [class counsel] reasonably expended on the litigation…by a reasonable hourly rate for the region and for the experience of the lawyer.'" *Id.* After calculating this base lodestar amount, that figure can be adjusted upward or downward by a multiplier based on a host of factors not already subsumed within the calculation. *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 456 (E.D. Cal. 2013) (citing *In re Bluetooth*, 654 F.3d at 942).

Conversely, under the percentage-of-recovery method, the Ninth Circuit has set 25% of the common fund (or, as in this case, a constructive common fund) as the benchmark for reasonable attorneys' fees. *In re Bluetooth*, 654 F.3d at 942. Although the requested amount of attorneys' fees and expenses in this case is reasonable under either approach, courts in the Ninth Circuit find that the lodestar method "is preferable to the percentage-of-recovery method" in claims-made settlements where there is no maximum cap on the recovery for the class. *Moore v. Verizon Communications Inc.*, No. 09-cv-1823, 2014 WL 588035, at *11-12 (N.D. Cal. Feb. 14, 2014).

But, "[r]egardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable." *Monterrubio*, 291 F.R.D. at 456. The most common, but not exclusive, way "that a court may demonstrate that…the amount awarded is reasonable is by conducting a cross-check using the other method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *see also In re Bluetooth*, 654 F.3d at 945 (noting that regardless of the primary method used to determine the amount of fees, the reasonableness of that award should be "cross-checked" against the other method).

Here, as explained more fully below, the requested attorneys' fees of $300,000 is reasonable through application of the lodestar method, as Class Counsel's lodestar amounts to $206,730.00 and reaches the agreed upon amount with only a modest multiplier of 1.45. The reasonableness of the requested fee award is further confirmed under the constructive common fund approach, as it constitutes just 3.754% of the constructive common fund—well below the Ninth Circuit's 25% benchmark. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 (9th Cir. 2013) ("In settled cases involving constructive common funds, we have encouraged district courts to review the reasonableness of lodestar fees by cross-checking the lodestar calculations against a percentage fee").

A.      **Application of the Lodestar Method Demonstrates that the Requested Fee is Reasonable.**

The requested fee of $300,000 is reasonable when applying the lodestar method, whether as the primary method of calculation or as a "cross-check" to the percentage of the constructive fund approach. The lodestar amount is calculated by multiplying the number of hours Class Counsel reasonably expended on the litigation by a reasonable hourly rate. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003); *Kirchner v. Shred-It USA, Inc.*, No. 14-cv-1437-WBS, 2015 WL 1499115, at *12 (E.D. Cal. Mar. 31, 2015).

1.      *The reasonable number of hours expended on the litigation warrants approval of the agreed upon fee.*

Generally, "the first step in determining the lodestar is to determine whether the number of hours expended was reasonable." *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 275 (E.D. Cal. 2014). A "reasonable number of hours equals the number of hours which could reasonably have

1   been billed to a private client." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)

2   (internal quotation omitted). To gauge the reasonableness of the time spent on litigation, "a court

3   may independently scrutinize time sheets to determine whether the hours attorneys are asserting

4   are duplicative or excessive." *Ontiveros v. Zamora*, 303 F.R.D. 356, 374 (E.D. Cal. 2014).

5        In total, Class Counsel spent 664.3 hours litigating this case. (Balabanian Decl. ¶ 23.)

6   Here, as with every case, Class Counsel kept diligent and detailed time records that accurately and

7   reasonably reflect the amount of hours required to see this case through to settlement.[2] (*Id.* ¶ 19.)

8   The hours spent—in addition to the reduction of Class Counsel's typical hourly rates in order to

9   comport with the Sacramento market—easily equates to the number of hours which Class Counsel

10  could have billed to a private client. (*See id.* ¶¶ 18, 20.)

11       Litigating this case required over 650 hours to meet complex legal issues against

12  competent defense counsel, who themselves are extremely well-versed in the TCPA and related

13  issues. Despite that and facing a formidable set of defenses, Class Counsel were still able to

14  achieve an excellent result for the Settlement Class—though, given defense counsel's advocacy

15  for their clients, even that took formal mediation with Judge Denlow and a year of additional

16  arm's-length negotiations with opposing counsel. The hours spent litigating the case were

17  therefore reasonable and justify approval of the requested fee award.

18              **2.      *Class Counsel's hourly rates are reasonable and justify approval of the agreed upon fee.***

19       The reasonableness of counsel's hourly rates is judged in comparison to the prevailing

20  rates in the relevant community for similar work performed by attorneys with similar skills and

21  experience. *Ontiveros*, 303 F.R.D. at 373. The relevant community is the forum in which the

22  district court sits, which here is the Sacramento Division of the Eastern District of California.[3]

23

24  ───────────────

[2]      Notwithstanding the hours already expended, Class Counsel must still prepare briefing in

25  support of final approval, contend with any objections and otherwise communicate with
    Settlement Class Members about the Settlement, and continue to supervise the administration of

26  the Settlement. (Balabanian Decl. ¶ 18.) Accordingly, Class Counsel have not attached their
    detailed billing records to the instant briefing, but instead, will provide to the Court complete

27  records detailing all of their time and work through final approval of the Settlement *in camera*
    prior to the Fairness Hearing.

28  [3]      As this Court has noted, there is a narrow exception to the application of this rule such that
    "rates outside the forum may be used if local counsel was unavailable, either because they are

1  Evidence of the prevailing community rate can be shown through declarations of class counsel,

2  rate determinations in other cases (especially those involving the same attorneys), and the court's

3  own familiarity with the Sacramento legal market. *Monterrubio*, 291 F.R.D. at 459. As courts in

4  this District have consistently stated, mostly in the context of wage-and-hour or civil rights

5  litigation, the "prevailing hourly rates in the Eastern District of California are in the $400/hour

6  range." *Id.* at 460 (collecting cases); *see also Ontiveros,* 303 F.R.D. at 374 (approving $400/hour

7  for partners and $175/hour for associates); *Trulsson v. County of San Joaquin*, No. 11-cv-2986-

8  KJM, 2014 WL 5472787, at *5-6 (E.D. Cal. Oct. 28, 2014) (approving $450/hour); *but see*

9  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (approving

10  $720/hour for partner and $280/hour for associate and stating "prevailing rates in the…Eastern

11  District of California are in the $400 range, with rates of up to $650 to $675 approved for partners

12  and senior associates with significant years of experience."). In one recent TCPA class action,

13  however, Chief Judge England approved an $800/hour rate for a partner and a $450/hour rate for

14  an associate. *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 14-cv-514-MCE, dkts. 30, 35, 36 (E.D. Cal.

15  2015).

16          As reflected in the chart below, Class Counsel's adjusted lodestar[4] to date is $206,730.00.

17  (Balabanian Decl. ¶ 23.)

18  ―――――――――――――――――――――――――――――――――――――――――――

19  unwilling or unable to perform because they lack the degree of experience, expertise, or
    specialization required to handle properly the case." *D'Lil v. Riverboat Delta King, Inc.*, No. 11-
20  cv-2230-WBS, 2015 WL 5092714, at *10 (E.D. Cal. Aug. 28, 2015). As detailed in the firm
    resume accompanying the declaration, Class Counsel have extensive experience litigating and
21  settling TCPA class actions, which is likely unmatched by any other firm in the country. In
    addition, Sacramento is not a hotbed of TCPA class action litigation, with only 11 of the 230
22  TCPA decisions in the entire Ninth Circuit appearing on Westlaw coming from this District. Of
    those, only one case included a firm native to Sacramento, which because they did not appear to
23  have any prior TCPA class action experience, enlisted co-counsel from Los Angeles. *See Lively v.
    Caribbean Cruise Line, Inc.*, No. 14-cv-00953 (E.D. Cal.). Here, Class Counsel believe that their
24  experience contributed substantially to the exceptional result obtained for the Settlement Class and
    warrants application of their customary rates, but recognize that the decisional authority suggests
25  the fact that a Sacramento firm bringing one of these cases would demand application of
    Sacramento rates. As such, Class Counsel will only seek what the Sacramento market would
26  otherwise bear.

27  [4]      In truth, Class Counsel have expended many more hours on this matter than the 664.3
    included in the chart. Using their billing discretion, Class Counsel have not included time for
28  certain attorneys and tasks deemed to be duplicative, excessive, or otherwise unnecessary to

| ATTORNEY (Position) | YEARS OF EXPERIENCE | HOURS | USUAL HOURLY RATE | LOCAL HOURLY RATE | TOTAL AT LOCAL HOURLY RATE |
|---|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 19 | 12.8 | $685 | $400 | $5,120.00 |
| Rafey S. Balabanian (Managing Partner - San Francisco) | 10 | 108.5 | $570 | $400 | $43,400.00 |
| Benjamin H. Richman (Partner) | 6 | 135.4 | $450 | $400 | $54,160.00 |
| Courtney C. Booth (Associate) | 2 | 212 | $295 | $200 | $42,400.00 |
| Law Clerks | n/a | 55.3 | $215 | $100 | $5,530.00 |
| Stefan L. Coleman (Partner - The Law Offices of Stefan L. Coleman) | 9 | 140.3 | $450 | $400 | $56,120.00 |
| TOTAL | | 664.3 | | | $206,730.00 |

(*Id.*)

Each attorney's hourly rate correlates to their respective experience. (*Id.* ¶ 21.) Based on the law of this District, the rates listed are reasonable in the Sacramento legal market, and are in fact far below the hourly rates that Edelson PC attorneys charge to their hourly clients, which have been approved in similar settlements in state and federal courts across the country. *See, e.g.*, *Kulesa v. PC Cleaner, Inc.*, No. 12-cv-725-JVS, dkt. 101 (C.D. Cal. Aug. 26, 2014) (finding Edelson PC's then-current hourly rates reasonable and granting their full lodestar request); *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846-MMC, dkt. 105 (N.D. Cal. May 10, 2013) ("The Court finds the rates charged [by Edelson PC] to be appropriate and reasonable in light of the experience of each attorney and that the hourly rates are in line with comparable market rates."); *Goodman v. Hangtime, Inc.*, No. 14-cv-1022-JRB, dkt. 124 (N.D. Ill. Sept. 29, 2015); *Theis v. AVG Techs. USA, Inc.*, No. 12-cv-10920-RGS, dkt. 116 (D. Mass. May 5, 2014) (finding Edelson PC's current hourly rates reasonable in lodestar fee analysis).

Class Counsel are able to command their typical hourly rates and those adjusted for Sacramento because they are experienced members of the plaintiffs' bar who have built their

include here. (Balabanian Decl. ¶ 23 n.1.) Again, Class Counsel will provide their detailed time records to the Court *in camera* prior to the Fairness Hearing.

1   practice litigating similarly complex consumer class actions, including many under the TCPA.

2   (*See* Firm Resume of Edelson PC, attached as Exhibit 1-A to the Balabanian Decl.) Indeed,

3   Plaintiffs' counsel have regularly been found to be adequate representatives in TCPA actions

4   across the country. *See Birchmeier v. Caribbean Cruise Line*, 302 F.R.D. 240, 252 (N.D. Ill. 2014)

5   (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career*

6   *Educ. Corp.*, No. 10-cv-5260, dkt. 55 at 3 (N.D. Ill. June 26, 2012) (finding that "attorneys [at

7   Edelson PC] are competent and capable of exercising the responsibilities of Class

8   Counsel"); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-06344, dkt. 57 at 3 (N.D. Ill.

9   Nov. 17, 2010) (same); *Pimental, et al. v. Google Inc., et al.*, No. 11-cv-2585, dkt. 97 at 2 (N.D.

10  Cal. Nov. 30, 2012) (appointing Class Counsel and "find[ing] that [Jay Edelson and Rafey

11  Balabanian of Edelson PC] are competent and capable of exercising the responsibilities of Class

12  Counsel…."); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal.

13  2010) (appointing attorneys at Edelson PC as co-lead counsel). That substantial and particularized

14  experience has allowed Class Counsel to accurately weigh the merits of the Settlement Class's

15  claims along with the risks and potential rewards of further litigation as compared to Settlement.

16
17  **3.   Class Counsel's base lodestar warrants an upward adjustment based on the relevant reasonableness factors.**

18  While Class Counsel's lodestar is presumptively reasonable, the analysis does not end

19  there. Instead, the base lodestar may be adjusted upward by a multiplier based on a host of

20  "reasonableness factors." *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*,

21  150 F.3d 1011, 1029 (9th Cir. 1998)). Those factors, set forth in *Kerr v. Screen Extras Guild, Inc.*,

22  526 F.2d 67, 70 (9th Cir. 1975), are: (1) the time and labor required; (2) the novelty and difficulty

23  of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the

24  preclusion of other employment by the attorney due to acceptance of the case; (5) the customary

25  fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

26  circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

27  and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of

28

1    the professional relationship with the client; and (12) awards in similar cases.[5] Although many of

2    these factors are "subsumed within the initial calculation of hours reasonably expended at a

3    reasonable rate," *Hensley*, 461 U.S. at 434, the most important factor remains the benefit obtained

4    for the class. *In re Bluetooth*, 654 F.3d at 942 (the reasonableness of fees "is determined primarily

5    by reference to the level of success achieved by the plaintiff"). A historical review of class action

6    settlements shows that the Ninth Circuit has approved multipliers in the range of 0.6 to 19.6, with

7    most (83%) falling between 1 and 4. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6

8    and Appendix (9th Cir. 2002); *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class*

9    *Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of one to four are frequently awarded).

10   Analysis of the relevant *Kerr* reasonableness factors—especially in light of the results obtained for

11   the Settlement Class—makes it increasingly apparent that a modest multiplier of 1.45 is

12   warranted.

13                    a.    Class Counsel Achieved Exceptional Relief for the Class.

14        The benefit obtained for the Settlement Class is foremost among the factors in determining

15   a proper fee, which, given the monetary relief available to Settlement Class Members here—to say

16   nothing of the prospective relief—weighs in favor of a finding of reasonableness. *See In re*

17   *Bluetooth*, 654 F.3d at 942 (citing *Hensley*, 461 U.S. at 434-36). Here, the Settlement provides real

18   and immediate monetary relief to the Settlement Class. First, by submitting a short and simple

19   claim form, each Class Member that received an allegedly unlawful phone call will receive a $40

20   payment that will not be diluted based on either the number of claims filed or the amount of

21   attorneys' fees awarded. (*See* Dkt. 74-1 § 5.2.) This $40 settlement payment per claiming

22   Settlement Class Member is an excellent result when compared to the payments provided in

23   _____

24   [5]        This District has since determined that certain of these factors are no longer relevant or are
     duplicative. "[T]he fixed or contingent nature of a fee and the 'desirability' of a case are no longer
25   relevant factors." *Torchia*, 304 F.R.D. at 272. Additionally, "factors such as novelty and
     complexity of the issues, the special skill and experience of counsel, and the quality of
26   representation are generally subsumed within the lodestar calculation." *Knox v. Chiang*, No. 05-
     cv-02198-MCE, 2013 WL 2434606, at *5 (E.D. Cal. June 5, 2013) (internal quotations omitted).
27   The "time and labor required" factor is also subsumed through submission of counsel's lodestar.
     *See Torchia*, 304 F.R.D. at 273.
28

1  several similar TCPA settlements that have received final approval from federal district courts

2  throughout the country.

3       For example, in cases where (as here) a direct relationship exists between the defendant

4  and class members—who often voluntarily provided their phone numbers to the defendant, as in

5  this case—the typical per class member recoveries come in the form of coupons or cash payments

6  below the $40 provided here. *See, e.g.*, *Lambert*, No. 14-cv-00514-MCE, dkt. 34 (providing $25

7  gift card to each class member); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142-EMC, dkt.

8  94 (N.D. Cal. Apr. 2, 2012) (providing $25 voucher to each class member); *In re Jiffy Lube Int'l,*

9  *Inc. Text Spam Litig.*, No. 11-md-2261-JTM, dkt. 97 (S.D. Cal. Feb. 20, 2013) (providing $20

10  voucher or $15 cash to each class member); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198-JLR, dkt.

11  266 (W.D. Wash. Sept. 17, 2012) (providing $20-$40 cash payment to each class member).

12       Also relevant to assessing the benefits to the Settlement Class, in addition to the monetary

13  relief, iYogi has agreed to implement changes to its applicable Terms and Conditions for technical

14  support services regarding customers' provision of consent for iYogi or any affiliate or agent to

15  place telephone calls to new subscribers. (*See* Dkt. 74-1 § 5.1.) Defendant will also provide

16  additional language regarding new subscribers' option to revoke such consent. (*Id.*) These changes

17  not only help achieve the injunctive goals of Plaintiffs' TCPA claims and go beyond what is

18  mandated by the statute, but they also promote important public policy concerns related to privacy

19  and nuisance stemming from the same type of cost-shifting promotions that prompted Congress to

20  enact the TCPA in the first place. *See Mims*, 132 S. Ct. at 745; *Satterfield*, 569 F.3d at 954.

21            b.     <u>There Were Significant Risks Involved in the Litigation.</u>

22       When determining the reasonableness of a fee award, the "risk of costly litigation and trial

23  is an important factor" which is measured by "(1) the legal and factual merits of the claim, and (2)

24  the difficulty of establishing those merits." *Santos v. Jaco Oil Co.*, No. 14-cv-0738-JLT, 2015 WL

25  5732829, at *14 (E.D. Cal. Sept. 29, 2015) (quoting *City of Burlington v. Dague*, 505 U.S. 557,

26  562 (1992)).

27       Class Counsel recognized from the very beginning of this litigation that achieving a

28  beneficial recovery for the Settlement Class would be no easy task. (*See* Balabanian Decl. ¶¶ 13-

16.) If litigation had continued in this case, iYogi would have almost certainly reasserted the affirmative defenses outlined in its Answer to Plaintiffs' First Amended Complaint, including the contention that it stands in an established business relationship with Plaintiffs and that it is therefore exempt from liability under the TCPA. (*Id.* ¶ 14; *see also* dkt. 39). It would also likely have raised the "direct relationship" defense—i.e., that each Class Member consented to receive calls placed by or on behalf of iYogi when they voluntarily provided their cellular phone numbers at some point in the past—which courts in the Ninth Circuit have upheld. *See Roberts v. Paypal, Inc.*, No. 12-cv-0622, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.)*, No. 11-cv-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre, Inc.*, No. 13-cv-999, 2014 WL 320205, at *2 (C.D. Cal. Jan. 8, 2014).

Even if Plaintiffs cleared those initial—not to mention, potentially dispositive—hurdles, Defendant would undoubtedly challenge any motion for class certification. (Balabanian Decl. ¶ 15; *see also* dkt. 39.) Likewise, if the case proceeded to trial, other roadblocks—such as the need for expert testimony to establish whether iYogi's equipment meets the TCPA's definition of an ATDS—would stand between the class and any ultimate recovery. (*Id.*) And given the amounts at stake, regardless of the outcome at the class certification stage or trial, the losing party would be almost guaranteed to appeal, thus further delaying and potentially foreclosing any relief to the class.

Class Counsel initiated this action aware of Defendant's defenses and these risks, and nonetheless prosecuted the class's claims in the face of substantial opposition by experienced defense counsel, investing more than 650 hours of attorney time and thousands of dollars in hard costs. (*See* Balabanian Decl. ¶¶ 16-17.) After balancing the strength of the class's claims against the legal, factual and procedural obstacles ahead, it is clear that there was significant risk that the class (and with them, Class Counsel) may have recovered substantially less, if anything at all, thus further supporting the reasonableness of Class Counsel's lodestar and requested fee award.

c.      Class Counsel's Fee Request is Consistent with Awards in Similar Cases.

Multiplying Class Counsel's total lodestar of $206,730.00 by approximately 1.45 results in the agreed upon fees of $300,000 (notwithstanding the expenses of $11,530.22 Class Counsel incurred in litigating this action). This multiplier falls well within the range of historical approval and is on par with or lower than multipliers awarded in similar cases within the Ninth Circuit. *See, e.g., Vizcaino*, 290 F.3d at 1051 (affirming fee award with a 3.65 multiplier); *Buccallato v. AT&T Operations, Inc.*, No. 10-cv-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding fee with a 4.3 multiplier); *Steiner v. Am. Broad. Co.*, 248 Fed. App'x 780, 783 (9th Cir. 2007) (affirming fee award with a 6.85 multiplier). Moreover, courts in this District and in this Circuit have recently approved similar TCPA settlements with multipliers falling between 2 and 5. *See, e.g., Lambert*, No. 14-cv-00514-MCE, dkt. 36 (approving fee award with a lodestar cross-check multiplier of 2.95); *Kramer v. Autobytel, Inc.*, No. 10-cv-02722-CW, dkt. 148 (N.D. Cal. Jan. 27, 2012) (approving a fee award with a multiplier of 2.69); *In re Jiffy Lube*, No. 11-md-2261-JTM, dkt. 97 (approving a fee award with a multiplier of 3.58); *Guttierez v. Barclays Group*, No. 10-cv-01012-DMS, dkt. 57 (S.D. Cal. May 12, 2010) (approving a fee award with a multiplier of 4.55); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 08-cv-00248-JAH, dkts. 115-1, 137 (S.D. Cal. 2012) (approving a fee award with a lodestar cross-check multiplier of 3.81); *McClintic v. Lithia Motors, Inc.*, No. 11-cv-00859-RAJ, dkt. 51 (W.D. Wash. Oct. 23, 2012) (approving a fee award with a lodestar cross-check multiplier of 3.1). Ultimately, given the results achieved on behalf of the class, the risks Class Counsel faced, and fees awarded in similar cases, the lodestar method supports awarding attorneys' fees of $300,000.

**B.      The Requested Fee is Equally Reasonable Under the Constructive Common Fund Cross-Check.**

The percentage of the constructive common fund approach, utilized as a cross-check, also demonstrates that the requested fee is reasonable. Where, as here, "a settlement does not create a common fund from which to draw, a court may, in its discretion, analyze the case as a 'constructive common fund' for fee-setting purposes." *Nwabueze v. AT&T Inc.*, No. 09-cv-01529-SI, 2014 WL 324262, at *1 (N.D. Cal. Jan. 29, 2014) (citing *In re Bluetooth*, 654 F.3d at 940-41);

1    *see also Lopez v. Youngblood*, No. 07-cv-0474-DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept.

2    1, 2011). The value of the constructive common fund is determined by adding together all

3    potential costs of the settlement to determine "the total amount defendants were willing to spend

4    to settle the case." *In re Bluetooth*, 654 F.3d at 945; *see also Lopez*, 2011 WL 10483569, at *12

5    ("Where there is a claims-made settlement, such as here, the percentage of the fund approach in

6    the Ninth Circuit is based on the total money available to class members, plus costs (including

7    class administrative costs) and fees. It is well established that, in claims made or class reversion

8    cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is

9    appropriate to award class fund attorneys' fees based on the gross settlement fund.") (citing

10   Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007); *Boeing v.*

11   *Van Gemert*, 444 U.S. 156 (1980); *Williams v. MGM-Pathe Commun. Co.*, 129 F.3d 1026 (9th

12   Cir. 1997)).[6] The Ninth Circuit has set 25% as the "benchmark" for a reasonable fee award when

13   utilizing the percentage-of-the-fund method, which is measured against the total amount of the

14   constructive common fund. *See In re Bluetooth*, 654 F.3d at 945.

15       Here, the constructive common fund totals $7,990,563.15. Calculating this amount starts

16   with the maximum amount Defendant could be required to pay to the Settlement Class Members if

17   they each submitted a claim. If all 188,887 Class Members made a claim for the $40, the total

18   claims would amount to $7,555,480. To this is added the estimated cost of class notice and

19   administration ($132,083.15) (Balabanian Decl. ¶ 28), the requested fee award ($300,000), and the

20   requested incentive award ($3,000) for a grand total of $7,990,563.15. The requested attorneys'

21   fee award of $300,000 represents just 3.754% of that amount, which is far less than the

22   $2,563,521.05 in fees that would be awarded if the Court were to compute the attorneys' fees as a

23

24

25

26   [6]     For purposes of this Court's application of the percentage-of-recovery approach, "a claims-
     made settlement is…the functional equivalent of a common fund settlement where the unclaimed
27   funds revert to the defendant'…reversionary fund settlements and claims-made settlements 'are
     fully synonymous.'" *Tait v. BSH Home Appliances Corp.*, No. 10-cv-0711-DOC, 2015 WL
28   4537463, at *6 (C.D. Cal. July 27, 2015) (quoting *Newberg on Class Actions* § 13:7).

1  percentage of the constructive common fund and the Ninth Circuit's 25% benchmark were

2  applied.[7]

3      The non-exhaustive list of factors set forth in *Vizcaino,* 290 F.3d at 1047-50, guide the

4  assessment of a request for attorneys' fees calculated using the percentage-of-recovery method:

5  "the extent to which class counsel achieved exceptional results for the class, whether the case was

6  risky for class counsel, whether counsel's performance generated benefits beyond the cash

7  settlement fund, the market rate for the particular field of law [],…the burdens class counsel

8  experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the

9  case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at

10  954-55 (internal quotation omitted). These factors are largely similar to the *Kerr* reasonableness

11  factors addressed under the lodestar analysis. *Santos*, 2015 WL 5732829, at *13 ("Notably, the

12  Court must consider similar factors under either [the lodestar or the percentage-of-recovery]

13  method."); *see also Torchia*, 304 F.R.D. at 272. Ultimately, and as discussed *supra*, the results

14  achieved by Class Counsel in this case, coupled with the contingent nature of their fees, high

15  degree of risk in prosecuting Plaintiffs' claims, requisite level of skill, and similarity to awards in

16  similar cases, justify the requested fee award here using the percentage of the fund approach as a

17  cross check.

18  **IV.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD.**

19      To compensate class representatives for the work they do on behalf of class members,

20  courts typically grant requests for incentive awards. *Rodriguez v. West Publ'g Corp.*, 563 F.3d

21  948, 958-59 (9th Cir. 2009). Indeed, incentive awards are typical in class actions and are intended

22  to "compensate class representatives for work done and on behalf of the class, to make up for

23  financial or reputational risk undertaken in bringing the action and, sometimes, to recognize their

24  willingness to act as a private attorney general." *Davis v. Brown Shoe Co.*, No. 13-cv-01211-LJO,

25  2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015). The Court has discretion to approve any

26  ―――――――――――――――

27  [7]    If the 25% benchmark were applied, the constructive common fund would be the sum of $7,555,480 in total claims, $132,083.15 in notice and administration costs, the $3,000 incentive

28  award, and "X" amount of fees, where X = 25% of the total. Thus, $7,555,480 + $132,083.15 + $3,000 + X = 4X. Solving this equation for X produces an attorneys' fee award of $2,563,521.05.

1   incentive award and should consider "relevant factors including the actions the plaintiff has taken

2   to protect the interests of the class, the degree to which the class has benefitted from those actions,

3   the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears

4   of workplace retaliation." *Id.* (quoting *Staton*, 327 F.3d at 977). In the Ninth Circuit, an incentive

5   award of $5,000 is "presumptively reasonable." *Id.* (quoting *Harris v. Vector Mktg. Corp.*, No. 08-

6   cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

7          Here, Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-Britt seek an

8   incentive award of just $3,000 ($1,000 per Class Representative), which is significantly lower than

9   incentive awards typically granted in this Circuit and is entirely reasonable considering that their

10  involvement was essential to the ultimate success of the Settlement and when compared to

11  incentive awards in similar settlements. (*See* Balabanian Decl. ¶¶ 31-32.) Plaintiffs devoted their

12  own time and effort in pursuing their claims, both for themselves and for the benefit of the class.

13  (*Id.* ¶ 32.) From the moment the case began, they exhibited a willingness to participate and assume

14  the responsibilities of a class representative, namely to ensure the protection of and benefit to the

15  class as a whole, rather than simply furthering their own interests. (*Id.*) More specifically,

16  Plaintiffs provided Class Counsel with information about their personal experiences in receiving

17  telephone calls from Defendant, which was critical to the filing of this lawsuit and particularly the

18  filing of the First Amended Complaint. (*See id.* ¶ 33.)

19         Additionally, awards greater than this amount are commonly approved in this District. *See,*

20  *e.g.*, *Davis*, 2015 WL 6697929, at *11 (approving incentive awards of $7,000 each to two class

21  representatives and $2,500 each to the remaining class representatives); *Anderson-Butler v.*

22  *Charming Charlie Inc.*, No. 14-cv-01921-WBS, 2015 WL 6703805, at *7 (E.D. Cal. Nov. 3,

23  2015) (approving an incentive award of $5,000 to each of the two class representatives).

24  Accordingly, the requested collective incentive award of $3,000 for Plaintiffs Vicki Estrada,

25  Patricia Goodman, and Kim Williams-Britt as Class Representatives can be appropriately

26  approved as well.

27

28

1  **V.     CONCLUSION**

2         For the reasons stated above, Plaintiffs respectively request that the Court find that the

3  agreed-upon attorneys' fees, expenses, and incentive award are reasonable and award such further

4  relief the Court deems reasonable and just.

5                                            Respectfully Submitted,

6                                            **VICKI ESTRADA**, **PATRICIA GOODMAN** and
                                             **KIM WILLIAMS-BRITT**, individually and on
7                                            behalf of all others similarly situated

8  Dated: December 18, 2015                  By: /s/ Benjamin H. Richman
                                                 One of Plaintiffs' attorneys
9
                                             Rafey Balabanian (Admitted *Pro Hac Vice*)
10                                           rbalabanian@edelson.com
                                             Samuel Lasser (SBN – 252754)
11                                           slasser@edelson.com
                                             EDELSON PC
12                                           329 Bryant Street
                                             San Francisco, California 94107
13                                           Tel: 415.212.9300
                                             Fax: 415.373.9435
14
                                             Jay Edelson (Admitted *Pro Hac Vice*)
15                                           jedelson@edelson.com
                                             Benjamin H. Richman (Admitted *Pro Hac Vice*)
16                                           brichman@edelson.com
                                             Courtney C. Booth (Admitted *Pro Hac Vice*)
17                                           cbooth@edelson.com
                                             EDELSON PC
18                                           350 North LaSalle Street, 13th Floor
                                             Chicago, Illinois 60654
19                                           Tel: 312.589.6370
                                             Fax: 312.589.6378
20
                                             Stefan Coleman (Admitted *Pro Hac Vice*)
21                                           law@stefancoleman.com
                                             LAW OFFICES OF STEFAN COLEMAN, LLC
22                                           201 S Biscayne Blvd, 28th Floor
                                             Miami, Florida 33131
23                                           Telephone: (877) 333-9427

24

25

26

27

28