Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*Admitted Pro Hac Vice*)
jedelson@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

[Additional counsel appear on signature page.]

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI ESTRADA, PATRICIA GOODMAN and KIM WILLIAMS-BRITT individually and on behalf of all others similarly situated, | Case No. 2:13-cv-01989-WBS-CKD |
| *Plaintiffs,* | **PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| *v.* | |
| IYOGI, INC., a New York corporation, | Judge:  Hon. William B. Shubb |
| *Defendant.* | Date:   January 25, 2016 |
| | Time:   1:30 p.m. |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on January 25, 2016 at 1:30 p.m., or at such other time as may be set by the Court, Plaintiffs Vicki Estrada, Patricia Goodman and Kim Williams-Britt will appear, through counsel, before the Honorable William B. Shubb, or any Judge sitting in his stead, in Courtroom 5, 14th Floor, of the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, California 95814, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), and in accordance with this Court's October 6, 2015 Order Granting Preliminary Approval of Class Action Settlement Agreement (dkt. 76), to grant final approval of the proposed class action settlement reached between Plaintiffs and Defendant iYogi, Inc.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, and any other matter that may be submitted at the hearing.

Respectfully Submitted,

**VICKI ESTRADA**, **PATRICIA GOODMAN** and **KIM WILLIAMS-BRITT**, individually and on behalf of all others similarly situated,

Dated: January 11, 2016          By:  /s/ Benjamin H. Richman
                                      One of Plaintiffs' attorneys

Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
EDELSON PC
329 Bryant Street
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   FACTS ......................................................................................................................2

      A.    A Brief History of the Litigation ...............................................................2

      B.    Settlement Negotiations .............................................................................4

III.  THE NOTICE PLAN HAS BEEN EXECUTED SUCCESSFULLY AND
      SATISFIED DUE PROCESS ...................................................................................5

IV.   THE COURT CORRECTLY CERTIFIED THE CLASS FOR SETTLEMENT
      PURPOSES ..............................................................................................................6

V.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ..................7

      A.    The Relevant Factors All Weigh in Favor of Settlement Approval................8

            1.    *The Settlement is fair relative to the strength of Plaintiffs' case* ..............8

            2.    *The Settlement is preferable to the risk, expense, and complexity of
                  continued litigation* ...................................................................................10

            3.    *The risk of maintaining class status favors approval of the
                  Settlement* ...................................................................................................11

            4.    *The Settlement provides strong relief to the Settlement Class* ................12

            5.    *The Parties had sufficient information to reach the Settlement* .............13

            6.    *Experienced counsel recommend the Settlement* .....................................14

            7.    *The lack of participation by governmental parties is a neutral factor* .....15

            8.    *The reaction of Settlement Class Members favors approval of the
                  Settlement* ...................................................................................................15

      B.    The Settlement is not the Product of Collusion Between the Parties ....................17

VI.   CONCLUSION ........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases:</u>**

*Mims v. Arrow Fin. Servs. LLC,*
    132 S. Ct. 740 (2012) ............................................................................................1

**<u>United States Court of Appeals Cases:</u>**

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004)..................................................................................8

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992)................................................................................7

*Gene and Gene, LLC v. Biopay LLC,*
    541 F.3d 318 (5th Cir. 2008)................................................................................12

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..............................................................................14

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011)..................................................................8, 17, 18

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015)...........................................................................7, 8

*Johnston v. Comerica Mortg. Corp.,*
    83 F.3d 241 (8th Cir. 1996)..................................................................................17

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998)..............................................................................13

*Officers for Justice v. Civil Service Com'n of City & Cnty. of San Francisco,*
    688 F.2d 615 (9th Cir. 1982)..................................................................................8

*Rannis v. Recchia,*
    380 F. App'x 646 (9th Cir. 2010)...........................................................................5

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009)............................................................................8, 15

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009)..................................................................................3

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994)..................................................................................5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)..................................................................17

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)................................................................10

**United States District Court Cases:**

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012)......................................................11

*Anderson-Butler v. Charming Charlie, Inc.*,
    No. 14-cv-01921-WBS, 2015 WL 6703805 (E.D. Cal. Nov. 3, 2015)..............18

*Arthur v. Salle Mae, Inc.*,
    No. 10-cv-198-JLR (W.D. Wash. Sept. 17, 2012) ..................................12

*Baird v. Sabre, Inc.*,
    No. 13-cv-999-SVW, 2014 WL 320205 (C.D. Cal. Jan. 8, 2014) ................9, 13

*Barbosa v. Cargill Meat Solutions Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013)........................................................8, 10

*Bayat v. Bank of the West*,
    No. 13-cv-2376-EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ........11, 12

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) .......................................................14, 15

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) ..........................................................11

*Ching v. Siemens Industry, Inc.*,
    No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ........11, 14

*Collins v. Cargill Meat Solutions Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011).........................................................6-7

*Connelly v. Hilton Grand Vacations Co., LLC*,
    294 F.R.D. 574 (S.D. Cal. 2013)..........................................................12

*Davis v. Brown Shoe Co.*,
    No. 13-cv-01211-LJO, 2015 WL 6697929 (E.D. Cal. Nov. 3, 2015)............6, 7, 8, 18

*Gragg v. Orange Cab Co.*,
    995 F. Supp. 2d 1189 (W.D. Wash. 2014) ..............................................9

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
    No. 11-md-2261-JTM, (S.D. Cal. Feb. 20, 2013) ................................................12

*In re Magsafe Apple Power Adapter Litig.*,
    No. 91-cv-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015)...................18

*Kazemi v. Payless Shoesource, Inc.*,
    No. 09-cv-5142-EMC (N.D. Cal. Apr. 2, 2012) ................................................12

*LaGarde v. Support.com, Inc.*,
    No. 12-cv-0609-JSC, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013)...................12

*Lambert v. Buth-Na-Bodhaige, Inc.*,
    No. 14-cv-514-MCE (E.D. Cal. Nov. 20, 2015) ................................................12

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)..........11, 13, 14, 16

*Lee v. Stonebridge Life Ins. Co.*,
    289 F.R.D. 292 (N.D. Cal. 2013) ......................................................................11

*Luna v. Shac, LLC*,
    --- F. Supp. 3d ---, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) .......................9

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010).....................................................................7, 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................10, 15

*Ogbeuhi v. Comcast of Cal./Co./Fla./Or., Inc.*,
    No. 13-cv-00672-KJM, 2015 WL 3622999 (E.D. Cal. June 9, 2015) ...................13, 15, 17

*Roberts v. PayPal, Inc.*,
    No. 12-cv-0622-PJH, 2013 WL 2384242 (N.D. Cal. May 30, 2013) ............................9, 13

*Rose v. Bank of Am. Corp.*,
    No. 11-cv-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .............................18

*Ryabyshchuck v. Citibank (S.D.)*,
    No. 11-cv-1236-IEG, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012) .............................9, 13

*Smith v. Microsoft*,
    297 F.R.D. 464 (S.D. Cal. 2014)........................................................................12

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014) ......................................................................9

*Swift v. Direct Buy, Inc.*,
     No. 11-cv-401-PPS (N.D. Ind. Oct. 24, 2013) ...................................................9

*Villegas v. J.P. Morgan Chase & Co.*,
     No. 09-cv-00261-SBA, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...........................17

*Willner v. Manpower Inc.*
     No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015) .............................16

*Zakskorn v. Am. Hondo Motor Co., Inc.*,
     No. 11-cv-02610-KMJ, 2015 WL 3622990 (E.D. Cal. June 9, 2015) ...........................15

**Statutes:**

28 U.S.C. § 1715 ..............................................................................................5, 15

47 C.F.R. 64.1200 *et seq.* ...........................................................................................3

47 U.S.C. §§ 227 *et seq.* .....................................................................................1, 2-3

**Miscellaneous:**

Fed. R. Civ. P. 23 ............................................................................................5, 7

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist
     and Plain Language Guide* (2010),
     http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ...............5, 6

Procedural Guidance for Class Action Settlements,
     United States District Court, Northern District of California,
     www.cand.uscourts.gov/ClassActionSettlementGuidance ................................................16

1  **I.      INTRODUCTION.**

2         Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-Britt ("Plaintiffs")

3  respectfully request that the Court grant final approval to the Parties' proposed class action

4  Settlement.[1] Plaintiffs brought suit against Defendant iYogi, Inc. ("Defendant" or "iYogi") for

5  allegedly violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by

6  making autodialed telemarketing calls to its customers urging them to renew their subscriptions

7  for computer support services. As explained in Plaintiffs' previous briefing—in support of

8  preliminary approval and for reasonable attorneys' fees—the Settlement came after a mediation

9  with the Honorable Morton Denlow of JAMS and is a strong result for the Settlement Class,

10 providing both $40 cash payments to claiming Class Members as well as various prospective

11 measures that will ensure the cessation of the sorts of allegedly unauthorized calls at issue. Put

12 simply, the result exceeds that typically recovered in TCPA cases where, as here, the consumer

13 purchases a product or initiates contact with the defendant company, as recovery in such suits is

14 typically limited to less than $25 in cash or coupons.

15        On October 6, 2015, the Court granted preliminary approval of the Settlement and directed

16 the Settlement Administrator to distribute notice to the Settlement Class. Since that time, the

17 Notice Plan was successfully implemented and the deadlines for submitting requests to be

18 excluded and objecting to the Settlement have expired. The reaction of the Settlement Class was

19 unquestionably positive—only four of the 188,887 Class Members requested to be excluded and

20 only a single individual took exception with the Settlement. Notwithstanding, hoping to get as

21 much participation from the Settlement Class as possible, Plaintiffs' counsel requested, and to its

22 credit Defendant agreed, to send two additional rounds of email notice to those Settlement Class

23 Members who had not already submitted claims to remind them of their ability to do so. The

24 response to the additional notice was also very positive: the rate of Settlement Class Member

25 participation more than doubled.

26 _____

27 [1]      Except as otherwise stated herein, defined terms used in this Memorandum shall have the same meanings as ascribed to them in the Parties' Stipulation and Agreement of Settlement. (Dkt.

28 74-1.)

1   While Plaintiffs and Class Counsel would have of course preferred that every Settlement

2   Class Member submitted a claim, the ultimate rate of Settlement Class Member participation is

3   well within the range of what can be expected in these types of cases, and was only achieved

4   through the Parties' vigorous effort to maximize the effect of the Notice Plan. In the end, given the

5   great effort to notify the Settlement Class of the Settlement, the significant monetary relief

6   available, and the prospective measures secured, the Settlement is more than deserving of this

7   Honorable Court's final approval.

8   For these reasons and as explained further below, Plaintiffs respectfully request that the

9   Court enter an order finding the Settlement to be fair, reasonable, adequate, and granting final

10   approval.

11   **II.    FACTS.**

12   **A.    A Brief History of the Litigation.**

13   iYogi is a technical support company that offers remote computer support services to

14   millions of individuals worldwide. (Dkt. 32 ¶ 13.) iYogi's services function on a subscription-

15   based pricing model in which consumers sign up for a year-to-year flat-fee service plan. (*Id.*)

16   Plaintiffs allege that as those service plans approach and (in some instances) pass their date of

17   expiration, iYogi places numerous, sometimes aggressive, telephone calls to consumers to get

18   them to renew or re-enroll their subscriptions (*Id.* ¶ 14.) Plaintiffs Estrada, Goodman, and

19   Williams-Britt all allege that they received several such calls to their cell phones. (*See id.* ¶¶ 22-

20   27, 29-33, 36-41.) As a result, Plaintiffs filed their initial complaint on July 3, 2013 (dkt. 1) and

21   later, their First Amended Complaint (dkt. 32), asserting claims on behalf of themselves and all

22   similarly situated individuals for iYogi's alleged violations of the TCPA.

23   In particular, Plaintiffs asserted claims under three provisions of the TCPA. The first

24   provision makes it unlawful to place calls to cellular telephones without the recipient's consent

25   using equipment the statute defines as an automatic telephone dialing system, or "ATDS":

26   It shall be unlawful for any person within the United States . . . to make any call
27   (other than a call made for emergency purposes or made with the prior express
    consent of the called party) using any automatic telephone dialing system . . . to
    any telephone number assigned to a . . . cellular telephone service[.]

28

47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B). For its part, the second provision makes it unlawful to place more than one telephone call within a twelve-month period to persons whose cellular telephone numbers are listed on the national Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c), (e). And the third prohibits the making of unsolicited robocalls utilizing an artificial or prerecorded voice to cell phones without first obtaining the call recipients' prior express consent to do so. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(1)(B).

iYogi's calls, Plaintiffs allege, are exactly the type contemplated by the TCPA, which was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy." *Id.* at 745; *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that the statute's purpose is to protect significant privacy interests). Reflecting the importance of telephone subscribers' privacy, the TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is willful) and also provides for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)-(C); 47 U.S.C. § 227(c)(5)(B).

On December 18, 2013, iYogi filed a motion to dismiss Plaintiffs' initial complaint in its entirety, arguing primarily (i) that Plaintiffs did not adequately plead iYogi's use of an ATDS to make the calls, (ii) that Plaintiffs failed to state a claim because the calls fell into the established business relationship exemption, and (iii) that Plaintiff Williams-Britt could not allege the calls were telephone solicitations since she did not plead that she answered any of them. (Dkt. 25.)

Although Plaintiffs initially prepared to respond to the motion, on January 8, 2014, they filed their amended complaint to allege in greater detail the basis for their allegations that iYogi used an ATDS to make the calls and that Plaintiff Williams-Britt in fact answered some of them. (*See* dkt. 32.) On February 3, 2014, iYogi answered the First Amended Complaint, raising eighteen affirmative defenses including, *inter alia*, that it had obtained consent to make the calls at issue,

1  that the putative class did not satisfy Rule 23's requisites to class certification, that Plaintiffs were

2  not charged for the calls, and that their claims are at least partially barred by the statute of

3  limitations. (Dkt. 39.)

4      On April 4, 2014, the Parties exchanged their initial disclosures and thereafter commenced

5  formal discovery, serving their respective first sets of written discovery requests. (Dkt. 74-2 ¶ 7.)

6  As the Parties reviewed and prepared to respond to the outstanding discovery, they also began

7  discussing the potential for resolving the case without the need for additional protracted litigation.

8  (*Id.* ¶ 8.)

9      **B.      Settlement Negotiations.**

10      After numerous telephone conferences and correspondence, the discussions progressed to

11  the point where the Parties determined to proceed with an initial private mediation before the

12  Honorable Morton Denlow (ret.) of JAMS (Chicago). (Dkt. 74-2 ¶ 8.) At that time, they also

13  agreed that it would be most efficient to continue their formal discovery obligations in order to

14  focus their efforts and resources on resolution. (*Id.*) Nevertheless, they commenced informal

15  discovery aimed at further exploring their respective views of the claims and defenses at issue and

16  possible settlement frameworks—including exchanging information related to the volume of calls

17  at issue, the number of individuals to whom the calls were placed, the calls Plaintiffs received, and

18  information relating to iYogi's financial condition and applicable insurance coverage. (*Id.*)

19      On August 18, 2014, the Parties participated in their first mediation session with Judge

20  Denlow. (*Id.* ¶ 19.) Although the Parties were unable to reach an agreement that day, they agreed

21  to exchange certain additional information and believed that they had made progress towards an

22  ultimate resolution. (*Id.*) Nevertheless, after several months of additional arm's-length settlement

23  negotiations with the assistance of Judge Denlow—through numerous telephone conferences and

24  correspondence—it became apparent that the Parties had reached an impasse and a settlement

25  could not be reached at that time. (*Id.* ¶ 10.) The Parties thus determined to proceed with the

26  litigation, including meeting and conferring on a revised schedule of discovery and general case

27  deadlines, and proposing the same to the Court. (Dkts. 58, 62.)

28      In March 2015, as the Parties began to engage once again in formal discovery and

litigation, they decided to make one last attempt at resolution. (Dkt. 74-2 ¶ 11.) That led to weeks of additional negotiations and ultimately, an agreement in principle as to a proposed settlement. (*Id.*) Notwithstanding, it would take several more months of additional (and often contentious) negotiations for the Parties to reach the final terms of the proposed Settlement and reduce them to writing in the form of their Stipulation of Class Action Settlement now before the Court. (*See* dkts. 62-69.)

## III.   THE NOTICE PLAN HAS BEEN EXECUTED SUCCESSFULLY AND SATISFIED DUE PROCESS.

Prior to granting final approval to the Settlement Agreement, the Court must determine whether the notice provided to the Settlement Class was "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B).[2] Such notice must, *inter alia*, "clearly and concisely state in plain, easily understood language," the nature of the action, the class definition, and class members' right to exclude themselves from the class. *Id.* While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *see also Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010). The Federal Judicial Center has suggested that a notice plan that reaches at least 70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf /$file/NotCheck.pdf.

Here, the Court-approved Notice Plan, which is set forth in the Settlement Agreement, called for a third-party administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to send a single direct email notice to the last-known email addresses of Settlement Class Members. (Agreement ¶ 7.1.) The email notice contained language directing Settlement Class Members to the Settlement Website, which contained information related to the Settlement, answers to frequently asked questions, and relevant court documents, as well as access to online claim forms.

---

[2]   The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, also required sending the U.S. Attorney General, the Attorneys General of each of the fifty States and the District of Columbia copies of the Settlement and other documents related to this case. The required CAFA notice was sent on August 31, 2015. (Dkt. 81 ¶ 4.)

1  (*Id.* ¶ 7.2.) In approving the Notice Plan, this Court held that the notice complies with the

2  requirement of Fed. R. Civ. P. 23. (Dkt. 76 at 13-14.) Specifically, the Court correctly found that

3  the Notice Plan "is reasonably calculated to provide notice to class members and is the best form

4  of notice available under the circumstances." (*Id.* at 14.) The Court appointed Epiq as the

5  Settlement Administrator. (*Id.* at 13.)

6          Epiq and the Parties not only fully satisfied the Court-approved Notice Plan, but went

7  above and beyond it, providing additional "reminder" notices to ensure Class Members were

8  notified of the Settlement and their ability to submit a claim. Specifically, on November 3, 2015,

9  Epiq emailed the Court-approved notice to 188,887 Settlement Class Members. (Declaration of

10 Richard Bithell ("Bithell Decl.") ¶¶ 4-6, attached as Exhibit 1.) Epiq then, on November 19, 2015,

11 re-sent the notice to 44,207 Class Members whose initial email had "bounced." (*Id.* at ¶ 7.) In an

12 effort to ensure that the Notice achieved its maximum effect, the Parties conferred and agreed to

13 send out a second round of direct email notice to those Class Members who had not yet submitted

14 claims, which went out on December 10, 2015. (*Id.* ¶ 8). The positive response that resulted from

15 this second round of direct email notice prompted the Parties to send a second "reminder" notice

16 on December 31, 2015. (*Id.* ¶ 9.) All told, the notice was successfully delivered to 85.6% of the

17 Settlement Class, thus easily satisfying the requirements of due process and Rule 23. *See* Federal

18 Judicial Center, *Judges' Class Action and Notice Claims Process Checklist and Plain Language*

19 *Guide* at 3 (recognizing that a notice plan that reaches at least 70% of the class is reasonable).

20 **IV.    THE COURT CORRECTLY CERTIFIED THE CLASS FOR SETTLEMENT**
        **PURPOSES.**

21
        The next step in the final approval analysis requires the Court to determine whether the

22
   Settlement Class meets the requirements for class certification. *Davis v. Brown Shoe Co.*, No. 13-

23
   cv-01211-LJO, 2015 WL 6697929, at *4 (E.D. Cal. Nov. 3, 2015). As the Court held in its

24
   Preliminary Approval Order, the Settlement Class does meet those requirements and that holding

25
   should be reaffirmed here. (*See* dkt. 76 at 5-12.)

26
        Concerning Rule 23(a), specifically, the Settlement Class is comprised of approximately

27
   188,887 individuals, which easily satisfies the numerosity requirement. *See Collins v. Cargill*

28

1     *Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (acknowledging that numerosity is

2     generally satisfied where the number of class members exceeds forty). Commonality is also

3     satisfied, because "the class presents common questions of law and fact arising out of

4     Defendant's" conduct, *see Davis*, 2015 WL 6697929, at *4, meaning that "the class would be

5     comprised of individuals alleging that an iYogi employee or agent called their cellphones to

6     convince them to renew their subscription in violation of the TCPA." (Dkt. 76 at 6.) As for

7     typicality, that requirement is met because the Settlement Class alleges the same set of facts which

8     resulted in a common injury—namely, receiving unwanted and unwarranted calls that allegedly

9     violated the TCPA. (*See id.*) Finally, the adequacy requirement is sufficiently met "because

10     Plaintiffs will fairly and adequately represent the interests of the class" and Class Counsel "are

11     qualified to conduct the proposed litigation and assess the value of the settlement." (*Id.*)

12        The Settlement Class also satisfies the prerequisites under Rule 23(b)(3). Predominance is

13     met because "although some nuances among the class members' allegations could exist, there is

14     no indication that those variations are 'sufficiently substantive to predominate over the shared

15     claims.'" (Dkt. 76 at 7 (quoting *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal.

16     2010)). And when considering the recovery afforded by the Settlement weighed against the

17     substantial risks of continued litigation, it is clear that "the class action device appears to be the

18     superior method for adjudicating this controversy." (*See* dkt. 76 at 12.)

19        For these reasons, Plaintiffs respectfully request that the Court affirm its findings on

20     preliminary approval and the certification of the Settlement Class for settlement purposes.

21     **V.       THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL.**

22        The next step prior to granting final approval is for the Court to determine whether the

23     proposed Settlement is "fair, reasonable, and adequate" for the Settlement Class. Fed. R. Civ. P.

24     23(e)(2); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). The Ninth

25     Circuit has recognized "the strong judicial policy that favors settlements, particularly where

26     complex class litigation is concerned," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

27     Cir. 1992), and "[i]t is the settlement taken as a whole, rather than the individual component parts,

28     that must be examined for overall fairness." *Online DVD-Rental*, 779 F.3d at 944; *see also Davis*,

2015 WL 6697929, at *2 (internal quotations omitted). To assess the fairness, reasonableness, and

adequacy of a settlement, courts look to the following eight factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Online DVD-Rental*, 779 F.3d at 944 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566,

575 (9th Cir. 2004)). In addition, where—as here—the parties reached a settlement prior to formal

class certification, "the Court must also ensure that 'the settlement is not the product of collusion

among the negotiating parties.'" *Davis*, 2015 WL 6697929, at *4 (quoting *In re Bluetooth Headset

Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)).[3]

   As explained below, each of the eight *Churchill* factors weigh in favor of final approval of

the Settlement, and the Settlement was anything but the product of collusion between the Parties.

**A.      The Relevant Factors All Weigh in Favor of Settlement Approval.**

   ***1.       The Settlement is fair relative to the strength of Plaintiffs' case.***

   The first factor—the strength of Plaintiffs' case—weighs in favor of final approval here. In

assessing the strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome

must be tested.'" *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013)

(quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Rather, "the court's

assessment is based on 'nothing more than an amalgam of delicate balancing, gross

approximations, and rough justice.'" *Id.* (quoting *Officers for Justice v. Civil Service Com'n of

City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Here, while Plaintiffs are

confident in the strength of their claims, ultimately prevailing on the merits is far from guaranteed.

   If litigation had continued in this case, iYogi would have almost certainly reasserted the

affirmative defenses outlined in its Answer to Plaintiffs' First Amended Complaint, including the

contention that it is exempt from liability because it has an established business relationship with

Plaintiffs and because obtaining cell phone numbers from Class Members by virtue of its "direct

---

[3]      Before granting final approval, the Court must hold a hearing to find the Settlement "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

relationship" with them equates to consent to receive the calls at issue. (Dkt. 74-2 ¶ 26; *see also* dkt. 39.) Courts in the Ninth Circuit have found these arguments persuasive in a handful of instances. *See Roberts v. Paypal, Inc.*, No. 12-cv-0622-PJH, 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that prior provision of a cell phone number to the caller for any reason constitutes prior express consent to be called); *Ryabyshchuck v. Citibank (S.D.)*, No. 11-cv-1236-IEG, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Baird v. Sabre, Inc.*, No. 13-cv-999-SVW, 2014 WL 320205, at *2 (C.D. Cal. Jan. 8, 2014).

Next, even if Plaintiffs were able to overcome those initial—not to mention, potentially dispositive—hurdles, Defendant would undoubtedly challenge class certification. (Dkt. 74-2 ¶ 27.) Likewise, if the case proceeded to trial, other challenges, such as the need for expert testimony to establish whether iYogi's equipment meets the TCPA's definition of an ATDS, would stand between the Settlement Class and any ultimate recovery. (*Id.*) Even with experts battling over the technicalities of what iYogi's dialing system is capable of, courts are divided on the level of human involvement necessary for a system to be an ATDS. *Compare Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 818-19 (N.D. Ill. 2014) (granting summary judgment to plaintiff on ATDS issue because "[t]he FCC found that a predictive dialer, which makes calls from a database of numbers, constitutes an ATDS") *with Luna v. Shac, LLC*, --- F. Supp. 3d ---, 2015 WL 4941781, at *4-5 (N.D. Cal. Aug. 19, 2015) (granting summary judgment to defendant because technology did not automatically send text messages, thus human intervention was required), *and Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014) (granting defendant's motion for summary judgment and finding that dialing equipment, which required operator to press a button to make each call, required human intervention and was not an ATDS).

Additionally, given iYogi's financial condition and limited insurance coverage, even if Plaintiff did ultimately prevail at trial, the class cannot be assured of recovery. (Declaration of Rafey S. Balabanian ("Balabanian Decl.") ¶ 4, attached as Exhibit 2); *see also Swift v. Direct Buy, Inc.,* No. 11-cv-401-PPS, dkt. 189 at 7, 9 (N.D. Ind. Oct. 24, 2013) (preliminarily approving settlement against defendant in "dire financial situation," when "a major benefit of the settlement [was] that class members [would] obtain these benefits much more quickly than had the parties not

settled," because "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all."). Finally, given the amount at stake and iYogi's reputational interests, iYogi would likely appeal any verdict in favor of the class. (Balabanian Decl. ¶ 7.)

Consequently, because ultimate success at trial is far from certain, the first factor supports settlement approval. *See Barbosa*, 297 F.R.D. at 446 (finding that "although Plaintiffs maintain their strong belief in the underlying merits of the case, Class Counsel . . . have considered the uncertainties surrounding proving the claims in a lengthy and complex jury trial in negotiating the settlement amount" and therefore "this factor weighs in favor of approval").

### 2. *The Settlement is preferable to the risk, expense, and complexity of continued litigation.*

Absent settlement it is clear that the risk, expense, complexity, and likely duration of further litigation weigh in favor of final approval. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Barbosa*, 297 F.R.D. at 446 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). Immediate receipt of monetary compensation through settlement—even if lower than what could potentially be achieved through ultimate success on the merits—has value to the class, especially when compared to risky and costly continued litigation. *See id.* (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)) (acknowledging that "settlement is encouraged in class actions where possible").

Here, continued litigation would be risky. The hurdles to ultimate success on the merits noted *supra* make the outcome of continued litigation uncertain and present "significant risks . . . and no guarantee of recovery" for the class. *See Barbosa*, 297 F.R.D. at 446. Continued litigation would be costly in terms of both time and money. *See id.* (noting that "[a]voiding such unnecessary expenditures of resources and time benefit all parties and the Court."). Defendant would undoubtedly continue to defend this case vigorously to judgment and beyond. (*See* Balabanian Decl. ¶ 5.) Continued litigation would require the eventual briefing of class certification and likely summary judgment, both of which would require further extensive

discovery and incur significant time and expense. (*Id.*); *see also Bayat v. Bank of the West*, No. 13-cv-2376-EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) ("Absent settlement, the costs and complexity of this case will certainly increase as [motion practice] (along with associated discovery) will need to be litigated."). In addition, an appeal by the losing party is all but inevitable, further raising the costs in terms of both time and money. *See Bayat*, 2015 WL 1744342, at *4 ("[R]egardless of who prevails on the merits of [a contested issue], the losing party would likely appeal, thus significantly prolonging this litigation and increasing its expense and complexity."). Avoiding unnecessary discovery, motion practice, and appeals benefits not just the Parties, but also this Court and the Ninth Circuit. *See Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources."); *see also Ching v. Siemens Industry, Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *3 (N.D. Cal. June 27, 2014) (same).

Accordingly, because continued litigation would be risky, costly, complex, and long, the second factor favors approval of the Settlement here.

### 3. *The risk of maintaining class status favors approval of the Settlement.*

The risk of maintaining class action status throughout the litigation likewise weighs in favor of approving the Settlement. TCPA class actions are routinely certified and Plaintiffs would have had a strong chance of succeeding in adversarial class certification here. *See Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (certifying a nationwide class in a TCPA text message action); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying both a national and state subclass in a TCPA text message action); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (certifying nationwide classes in a TCPA robocall action).

Nonetheless, should litigation continue in this case, Defendant would likely attempt to defeat class certification by arguing that whether putative class members provided consent when purchasing iYogi's support services is an individual issue rendering certification improper. (Balabanian Decl. ¶ 6.) Plaintiffs recognize that some judicial authority exists supporting this

argument. *See, e.g.*, *Gene and Gene, LLC v. Biopay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (stating that the predominant issue in a TCPA case "is undoubtedly one of *individual* consent"); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578-79 (S.D. Cal. 2013) (finding "that express consent should be evaluated on an individualized basis"); *Smith v. Microsoft*, 297 F.R.D. 464, 471-72 (S.D. Cal. 2014) (denying class certification in a TCPA case based in part on individualized consent issues). Although this Court held that such issues do not predominate over the questions common to all Settlement Class Members and certified a class for settlement purposes (*see* dkt. 76), there is a chance that, should litigation continue and Defendant opposes class certification, the action would not proceed on a classwide basis. If that were to happen, of course, the Settlement Class would receive nothing. As a result, this factor weighs in favor of approval as well. *See LaGarde v. Support.com, Inc.*, No. 12-cv-0609-JSC, 2013 WL 1283325, at *5 (N.D. Cal. Mar. 26, 2013) (finding that when a defendant "would likely raise several meritorious arguments" contesting class certification, the risk favored settlement).

### 4.     The Settlement provides strong relief to the Settlement Class.

The fourth factor—the amount offered in settlement—is considered the most important. *Bayat*, 2015 WL 1744342, at *4. Here, the Settlement provides real and immediate monetary and prospective relief to the Settlement Class.

A review of other TCPA settlements highlights the strength of the relief available here. In terms of comparable settlements, the monetary relief of $40 per Settlement Class Member is consistent with (and in some cases, greater than) other settlements in this area of the law. In "direct relationship" TCPA cases like this, where the person called voluntarily provided their cellular telephone number to the caller, the typical per class member recovery ranges from coupons or vouchers to less than $25 in cash. *See Lambert v. Buth-Na-Bodhaige, Inc.,* No. 14-cv-514-MCE, dkt. 34 (E.D. Cal. Nov. 20, 2015) (providing $25 gift card to each settlement class member); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142-EMC, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-md-2261-JTM, dkt. 97 (S.D. Cal. Feb. 20, 2013) (providing for a $20 voucher, which could be redeemed for $15 cash after nine month waiting period); *Arthur v. Sallie Mae,*

*Inc.*, No. 10-cv-198-JLR, dkt. 266 (W.D. Wash. Sept. 17, 2012) (providing for a $20-40 cash payment to each class member). As a result, the Settlement amount alone weighs in favor of final approval.

The context of the Settlement Class Members' direct relationship with iYogi sheds further light on the strength of the relief. That is, the Settlement Class Members (i) provided their telephone numbers to iYogi, (ii) arguably gave consent to be contacted in some capacity pursuant to iYogi's privacy policy, and (iii) signed up for a year-long service.[4] Additionally, in order to obtain the support services they paid for, Settlement Class Members often communicated with iYogi representatives *by telephone*. Thus, while the calls were undoubtedly a nuisance and, in Plaintiffs' perspective, are prohibited by the TCPA, consumers were merely being contacted by iYogi on a telephone number they provided and in a manner not surprising given the services paid for. Given this practical reality, a $40 payment upon submission of a short and simple claim form is a strong result for the Settlement Class.

Accordingly, this factor likewise weighs in favor of final approval.

### 5. The Parties had sufficient information to reach the Settlement.

The next factor—the extent of discovery completed and the stage of the proceedings— "evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'" *Larsen*, 2014 WL 3404531, at *5 (quoting *Linney*, 151 F.3d at 1239). Formal discovery is not a requirement for final settlement approval; rather, "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Ogbeuhi v. Comcast of Cal./Co./Fla./Or., Inc.*, No. 13-cv-00672-KJM, 2015 WL 3622999, at *7 (E.D. Cal. June 9, 2015) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, in addition to conducting a careful investigation of the claims before settling, the Parties did begin

---

[4]     On this point, Plaintiffs argue that, if anything, iYogi's privacy policy provided that they may be contacted by e-mail and mail—not by phone—making the terms inapplicable for the calls here. Nevertheless, some courts, including in this Circuit, have found that provision of a telephone number is enough to constitute consent. *See Roberts,* 2013 WL 2384242, at *5; *Ryabyshchuck,* 2012 WL 5379143, at *3; *Baird,* 2014 WL 320205, at *2.

1   the process of engaging in formal discovery, as well as informal discovery during settlement

2   negotiations. (Balabanian Decl. ¶ 8.) Based on their investigations and the discovery produced, the

3   Parties had sufficient information to make an informed decision.

4       Specifically, the Settlement comes after more than two years of litigation, which included a

5   thorough investigation into iYogi's conduct by Class Counsel prior to filing suit, the formal and

6   informal exchange of documents, and more than a year's worth of settlement negotiations,

7   including formal mediation before Judge Denlow (ret.). (*Id.*) All of the information gathered over

8   the course of the litigation and settlement negotiations allowed the Parties to make reasoned and

9   informed decisions about the ultimate resolution of this Action, and this factor thus supports final

10  settlement approval.

11              ***6.    Experienced counsel recommend the Settlement.***

12      The sixth factor—the experience and view of counsel—also weighs in favor of final

13  approval here. Class Counsel have extensive experience prosecuting and settling class actions,

14  particularly those involving claims under the TCPA. (Balabanian Decl. ¶ 9); *see also* dkt. 76 at 9

15  ("The court finds no reason to doubt that plaintiffs' attorney is qualified to conduct the proposed

16  litigation and assess the value of the settlement."). Further, Class Counsel have been litigating *this*

17  case for more than two years. (Balabanian Decl. ¶ 9.) As other courts have noted, "[t]he opinions

18  of counsel should be given considerable weight both because of counsel's familiarity with this

19  litigation and previous experience with cases." *Larsen*, 2014 WL 3404531, at *5; *Ching*, 2014 WL

20  2926210, at *5. On the other side of this action was experienced defense counsel from a top-tier

21  "BigLaw" firm who vigorously defended their client and only agreed to the Settlement after

22  engaging in hard-fought litigation. (*See* Balabanian Decl. ¶ 9.) Consequently, this factor supports

23  final approval of the Settlement. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257

24  (N.D. Cal. 2015) ("Class counsel believes the settlement properly balances the monetary exposure

25  that the class stands to gain with the magnitude of risk of continued litigation—at bottom, that the

26  settlement is fair, adequate and reasonable . . . . Given counsel's experience in this field, his

27  assertion . . . support[s] final approval of the settlement." (citing *Hanlon v. Chrysler Corp.*, 150

28  F.3d 1011, 1026 (9th Cir. 1998)).

7. **The lack of participation by governmental parties is a neutral factor.**

The next factor looks to the presence of a governmental party. There has been no involvement of any federal or state government in this litigation. And consistent with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, notice of the proposed Settlement was provided to appropriate state and federal officials. (Dkt. 81 ¶ 4.) None of these officials has raised any objection or concern regarding the Settlement. (Balabanian Decl. ¶ 10.) This factor therefore "is irrelevant to the court's analysis." *See Murillo*, 2010 WL 2889728, at *8.[5]

8. **The reaction of Settlement Class Members favors approval of the Settlement.**

The final factor—the reaction of class members—likewise strongly supports final approval of the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Ogbeuhi*, 2015 WL 3622999, at *8 (quoting *DIRECTV*, 221 F.R.D. at 529). Thus, this Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Bellinghausen*, 306 F.R.D. at 258.

Here, out of approximately 188,887 Settlement Class Members, thousands have filed claims, only four (0.00002118% of the Settlement Class) requested to be excluded from the Settlement, and only *one* (0.00000529%) submitted an objection to the Settlement. (*See* Bithell Decl. ¶ 10; dkt. 80.) This small amount of opt-outs and the single objection show nothing other than a positive reaction by the Settlement Class, which supports final approval. *See, e.g.*, *Rodriguez*, 563 F.3d at 967 (approving district court's finding of "favorable reaction" to settlement where 0.000144% of the class members objected); *Zakskorn v. Am. Honda Motor Co., Inc.*, No. 11-cv-02610-KJM, 2015 WL 3622990, at *9 (E.D. Cal. June 9, 2015) (finding a "positive" reaction of the class where less than 0.0005% of the class objected and less than 0.0247% of the

---

[5]    To be clear, by pointing out that no Attorneys General, state or federal, have filed objections to the Settlement, Plaintiffs do not mean to imply that those officials have endorsed the Settlement in any way. All that is intended by the statement is to point out the fact that no objections have been filed by the relevant governmental agencies.

1  class opted out); *Larsen*, 2014 WL 3404531, at *5 (finding "positive response" where 0.000114%

2  of the class opted out and 0.000079% of the class objected).

3       The sole objection appears to misunderstand the purpose of the relief sought. (*See* dkt. 80.)

4  While Dr. McCarthy notes his frustration with Defendant's persistent calls seeking renewal of his

5  computer support subscription, he believes the Settlement amount offered to be inadequate

6  because iYogi was supposedly unable to fix his computer problems and he should receive a refund

7  of his subscription price. (*Id.*) But asking the Court to order a larger settlement is not a valid

8  objection. *See* Procedural Guidance for Class Action Settlements, United States District Court,

9  Northern District of California, http://www.cand.uscourts.gov/ClassActionSettlement Guidance

10  (last visited Jan. 11, 2016). Ultimately, Plaintiffs have explained in detail—in their Preliminary

11  Approval Motion (dkt. 74), Motion for Reasonable Attorneys' Fees and Incentive Award (dkt. 79),

12  and now here (*see* Section V.A.4, *supra*)—that the $40 monetary recovery and significant

13  prospective relief confers a substantial benefit upon the Settlement Class for the annoyance of

14  having received unwanted telephone solicitations. The fact that iYogi's diagnostic may not have

15  worked for a given Settlement Class Member isn't something this Settlement is intended to

16  address.

17       The fact that not a single Settlement Class Member raised a substantive objection to the

18  terms of the Settlement, and no professional objectors have inserted themselves into the

19  litigation—as is nearly inevitable in class action settlements these days—speaks volumes as to the

20  strength of the relief obtained. *See Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 WL

21  3863625, at *4-5 (N.D. Cal. June 22, 2015) (approving a class action settlement and finding "the

22  absence of a large number of objections to a proposed class action settlement raises a strong

23  presumption that the terms of a proposed class action settlement are favorable to the class

24  members.") (internal quotation omitted).

25       Consequently, all eight *Churchill* factors weigh in favor of granting final approval to the

26  Settlement.

27  **B.**    **The Settlement is not the Product of Collusion Between the Parties.**

28       In addition to examining the eight *Churchill* factors discussed above, when a settlement is

1   reached prior to formal class certification courts must ensure that the settlement is not the product

2   of collusion. *See Bluetooth*, 654 F.3d at 946-47. This Court has already once concluded that the

3   Settlement—reached with the assistance of a neutral mediator—was non-collusive. (Dkt. 76 at 16)

4   ("[T]he court finds no reason to doubt the parties' representations that the settlement was the result

5   of vigorous, arms-length bargaining."); *see also Ogbuehi*, 2015 WL 3622999, at *8 (finding that

6   "participation in mediation 'tends to support the conclusion that the settlement process was not

7   collusive'") (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261-SBA, 2012 WL

8   5878390, at *6 (N.D. Cal. Nov. 21, 2012)). In addition, while the Ninth Circuit has identified

9   "signs" of a potentially collusive settlement, *Bluetooth*, 654 F.3d at 947, none of those factors is a

10  concern here.[6]

11          First, Class Counsel are not receiving a disproportionate amount of a settlement fund. Even

12  where, as here, the monetary recovery for the class and the fee awarded to class counsel are

13  "technically funded separately, the class recovery and the agreement on attorneys' fees should be

14  viewed as a 'package deal.'" *Bluetooth*, 654 F.3d at 948-49 (quoting *Johnston v. Comerica Mortg.*

15  *Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996)). Here, Plaintiffs' fee request is reasonable whether

16  analyzed either under the lodestar method or the percentage of a constructive common fund

17  method—supporting the overall reasonableness of the instant Settlement. (*See* dkt. 79.) As

18  discussed more fully in Plaintiffs' Motion for Reasonable Attorneys' Fees and Incentive Award

19  (dkt. 79), Class Counsel is requesting $300,000 in reasonable attorneys' fees, or their lodestar plus

20  a modest multiplier of 1.45, which is well within the range of possible approval. (*See id.* at 11-15.)

21  That request is the equivalent of just 3.754% of the constructive common fund under the

22  percentage of the fund method. (*See id.* at 16.) This percentage falls significantly below the 25%

23

24

---

25  [6]      The three signs of collusion discussed in *Bluetooth* include: (1) a disproportionate
    distribution of the settlement to counsel; (2) a 'clear sailing' provision, under which the defendant
26  agrees not to oppose an attorney's fee award up to a certain amount; and (3) reversion of any of
    the settlement fund or un-awarded fee award to the defendant. *Bluetooth*, 654 F.3d at 947-49. A
27  fourth factor discussed by courts in this District involves "when . . . the class representative
    receives an enhancement payment that is much higher than payments unnamed class members
28  stand to receive from the settlement." *Ogbuehi*, 2015 WL 3622999, at *8 (citing *Staton v. Boeing*
    *Co.*, 327 F.3d 938, 975 (9th Cir. 2003)).

---

benchmark established by the Ninth Circuit. *See Bluetooth*, 654 F.3d at 942.[7] Thus, the first factor typically indicative of collusion is absent from this Settlement.

Second, the Settlement does not contain a clear sailing provision. Rather, the Settlement expressly provides that "Defendant may oppose Class Counsel's petition for the Fee Award." (Agreement ¶ 10.2). The lack of a clear sailing provision therefore indicates the absence of collusion involved in reaching the Settlement. *See Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (finding no collusion in part because of the absence of a "clear sailing arrangement").

Third, the Settlement does not provide for the reversion of unclaimed portions of a common fund back to the Defendant. The agreement between the Parties did not create a common fund; instead, Defendant agreed to an uncapped claims-made Settlement whereby Settlement Class Members could claim a fixed sum of $40 each. (Agreement ¶ 5.2.)

Finally, the requested incentive award of $3,000 for the three named Class Representatives ($1,000 per named Plaintiff) is reasonable, especially when compared to incentive awards granted in other cases in this District. *See, e.g., Davis*, 2015 WL 6697929, at *11 (approving incentive awards of $7,000 each to two class representatives and $2,500 each to the remaining class representatives); *Anderson-Butler v. Charming Charlie, Inc.*, No. 14-cv-01921-WBS, 2015 WL 6703805, at *7 (E.D. Cal. Nov. 3, 2015) (approving incentive award of $5,000 to each of the two class representatives). There are thus no "red flags" indicating a collusive agreement, and this Court should grant final approval to the Settlement. *See Ogbuehi*, 2015 WL 3622999, at *9 (granting final approval of a settlement and finding no collusiveness when the requested incentive award of $5,000 was "not unreasonable.").

---

[7] Further, in *Bluetooth*, the court was faced with a settlement that did not provide *any* monetary payments to class members—in contrast to the $40 payment available to Settlement Class Members here. *See Bluetooth*, 654 F.3d at 945. And the Settlement did not institute a cap on the amount of recovery claimed by Settlement Class Members who submitted valid claims, which also weighs in favor of a finding of no collusion between the Parties. *See In re Magsafe Apple Power Adapter Litig.*, No. 091-cv-01911-EJD, 2015 WL 428105, at *8 (N.D. Cal. Jan. 30, 2015) ("Here, the proposed settlement did not provide a cap on the number of cash refunds or replacement adapters that would be provided, thus class counsel's fee was independent of the class response . . . . As such, there is no sign of collusion due to a disproportionate distribution.").

1    The absence of collusion in conjunction with consideration of the eight *Churchill* factors

2    discussed above supports granting final approval to the Settlement.

3    **VI.    CONCLUSION.**

4    In this Action, because (1) the Court correctly certified the Settlement Class for settlement

5    purposes in its Order granting preliminary approval (dkt. 76), (2) notice of the Settlement was

6    properly disseminated to the Settlement Class, (3) the eight *Churchill* factors all support final

7    approval of the Settlement, and (4) the Settlement is not the product of collusion between the

8    Parties, the Court may appropriately grant final approval of the Settlement.

9                                      Respectfully Submitted,

10   Dated: January 11, 2016           By: /s/ Benjamin H. Richman
                                          One of Plaintiffs' attorneys

11

12                                     Rafey Balabanian (Admitted *Pro Hac Vice*)
                                       rbalabanian@edelson.com
                                       Samuel Lasser (SBN – 252754)
13                                     slasser@edelson.com
                                       EDELSON PC
14                                     329 Bryant Street
                                       San Francisco, California 94107
15                                     Tel: 415.212.9300
                                       Fax: 415.373.9435
16

17                                     Jay Edelson (Admitted *Pro Hac Vice*)
                                       jedelson@edelson.com
                                       Benjamin H. Richman (Admitted *Pro Hac Vice*)
18                                     brichman@edelson.com
                                       EDELSON PC
19                                     350 North LaSalle Street, 13th Floor
                                       Chicago, Illinois 60654
20                                     Tel: 312.589.6370
                                       Fax: 312.589.6378
21

22

23

24

25

26

27

28