UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| VICKI ESTRADA, PATRICIA GOODMAN and KIM WILLIAMS-BRITT on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>IYOGI, INC., a New York Corporation,<br><br>    Defendant. | CIV. NO. 2:13-01989 WBS CKD<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u> |

----oo0oo----

        Plaintiffs brought this putative class action against iYogi, Inc. ("iYogi"), alleging defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by employing aggressive sales tactics to get customers to renew their subscriptions to iYogi and placing calls to consumers regardless of whether they had refused the offer or previously asked that

1

defendant not call.  Presently before the court is plaintiffs' motion for final approval of the class action settlement and motion for attorney's fees and incentive awards for the named plaintiffs.  (Docket Nos. 79, 82.)

I. Factual and Procedural Background

iYogi is a technical support company that offers remote computer services to millions of individuals worldwide. Consumers sign up for a year-to-year flat fee service plan. Plaintiffs Vicki Estrada, Patricia Goodman, and Kim Williams-Britt allege that iYogi placed numerous, aggressive telephone calls to them and the other class members as their service plans neared expiration and subsequent to expiration in violation of three provisions of the TCPA.

The court granted preliminary approval of plaintiffs' class action settlement on October 6, 2015.  (Docket No. 76.) Plaintiffs now seek final approval of the class-wide settlement pursuant to Federal Rule of Civil Procedure 23(e).  (Docket No. 82.)  Defendant does not oppose plaintiffs' motion for final approval or their motion for reasonable attorney's fees, expenses, and incentive awards.  (Def.'s Statement of Non-Opp'n at 2 (Docket No. 83).)

II. Discussion

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members,

whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litig., Third, § 30.41 (1995)).

The Ninth Circuit has declared a strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

A. Class Certification

A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). See Ontiveros v. Zamora, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506, at *4 (E.D. Cal. July 7, 2014); Fed. R. Civ. P. 23(a)-(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, see Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class, see Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403-05 (1977).

1. Rule 23(a) Requirements

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

3

> defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

In its Preliminary Approval Order, the court found that the class satisfied these requirements and the court is unaware of any changes that would alter its analysis.

2. Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its Preliminary Approval Order, the court found that both prerequisites were satisfied. The court is unaware of any changes that would affect this conclusion. Accordingly, since the settlement class satisfied both Rule 23(a) and Rule 23(b)(3), the court will grant final certification of the settlement class.

3. Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it

4

"must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)). Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

In this case, the court-appointed third-party administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), emailed notice to the last known addresses of class members. (Pls.' Mot. for Final Approval at 5.) The notice directed class members to the settlement website, which contained information related to the settlement, answers to frequently asked questions, and access to online claim forms. (Id.)

In addition to the initial email, which satisfied the court-approved notice plan, the parties also agreed to resend the notice to the 44,207 class members (out of 188,887 total) whose initial emails had bounced. (Id. at 6.) The parties also sent two reminder emails to all of the class members who had not yet submitted claim forms. (Id.) The notice was successfully delivered to 85.6% of the settlement class. (Id.)

Accordingly, the court finds that the content of the notice was reasonably certain to inform the class members of the terms of the settlement agreement and the method used was the best form of notice available under the circumstances. See Fed.

1  R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen.
2  Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory
3  if it 'generally describes the terms of the settlement in
4  sufficient detail to alert those with adverse viewpoints to
5  investigate and to come forward and be heard.'" (citation
6  omitted)).

    B. Rule 23(e): Fairness, Adequacy, and Reasonableness of
       Proposed Settlement

        Having determined class treatment to be warranted, the court must now determine whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at 1026. This process requires the court to "balance a number of factors," including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026.

    1. Strength of Plaintiffs' Case

        An important consideration is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement. DIRECTV, 221 F.R.D. at 526. The district court, however, is not required to reach any ultimate conclusions on the merits of the dispute, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." Officers for Justice v. Civil Serv. Comm'n of the

6

City & Cty. of SF, 688 F.2d 615, 625 (9th Cir. 2004).

The settlement terms compare favorably to the uncertainties with respect to liability in this case. If the case were to proceed to trial, defendant would likely reassert two strong affirmative defenses: that it is exempt from liability because it has an established business relationship with plaintiffs and that receiving cell phone numbers from class members by virtue of its direct relationship with them constitutes consent. (Pls.' Mot. for Final Approval at 8.) Plaintiffs' also predict that iYogi would undoubtedly challenge a motion for class certification and appeal any judgment in favor of the class, further delaying recovery. (Id.) Lastly, there is no assurance the class would recover the full amount of damages even if it were to prevail at trial given iYogi's financial condition and limited insurance coverage. (Id.)

In comparing the strength of plaintiffs' case with the proposed settlement, the court finds that the proposed settlement is a fair resolution of the issues in this case.

2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Further litigation could greatly delay resolution of this case and increase expenses. Prior to any judgment, the parties would likely have had to litigate class certification and summary judgment, both of which would require additional discovery, time, and expense. (Id. at 10-11.) This weighs in favor of settlement of the action.

3. Risk of Maintaining Class Action Status Throughout Trial

If the case proceeded to trial, plaintiffs would have a strong chance of certifying the class given the court's certification for the purposes of settlement and that TCPA class actions are routinely certified. (Id. at 11.) However, plaintiffs acknowledge a risk that defendant would defeat class certification by arguing that the question of whether class members provided consent when purchasing iYogi's support services is an individual issue not appropriate for certification. (Id.) Accordingly, this factor also favors approval of the settlement.

### 4. Amount Offered in Settlement

In assessing the amount offered in settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Officers for Justice, 688 F.2d at 628. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Id.

Each class member who submitted a claim form in this case will receive $40 in cash, regardless of how many claims are made. (Pls.' Mot. for Final Approval at 12.) The attorney's fees and costs will not be deducted from the settlement amount. In addition, class members will receive prospective relief because defendant has agreed to modify its terms and conditions to more clearly inform its customers that by entering into the agreement for its services they consent to being contacted by telephone regarding the services and to more clearly inform customers of their option to elect not to receive such calls. (Id.)

8

1         While the TCPA provides for damages of $500 "for each
2    such violation" of the statute or, at most, $1,500 if defendant's
3    conduct was willful, 47 U.S.C. § 227(b)(3)(B), (c)(5)(B), the
4    settlement in this case is fair given the risks and costs of
5    further litigation in this case.
6              5. Extent of Discovery and the State of Proceedings
7         A settlement that occurs in an advanced stage of the
8    proceeding indicates the parties carefully investigated the
9    claims before reaching a resolution. Alberto v. GMRI, Inc., Civ.
10   No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12,
11   2008). The parties in this case began formal discovery and also
12   conducted significant informal discovery during settlement
13   negotiations. (Pls.' Mot. for Final Approval at 14.) The
14   parties also engaged in extensive mediation before a third-party
15   mediator, which included an in-person mediation session and
16   several months of additional arm's-length negotiations with the
17   assistance of the mediator. (Id. at 4.) The parties'
18   investigation of the claims through formal discovery, informal
19   discovery, and mediation weigh in favor of settlement.
20             6. Experience and Views of Counsel
21        Plaintiffs' counsel have extensive experience
22   litigating class actions, particularly those involving TCPA
23   claims. (Balabanian Decl. ¶ 9 (Docket No. 82-2).) In addition,
24   class counsel has been litigating this case for more than two
25   years. (Id.) Based on their experience, plaintiffs' counsel
26   believe the proposed settlement is fair and adequate to the class
27   members. (Id. ¶ 3.) The court gives considerable weight to
28   class counsel's opinions regarding the settlement due to

1  counsel's experience and familiarity with the litigation.
2  Alberto, 2008 WL 4891201, at *10.  This factor supports approval
3  of the settlement agreement.
4              7. Presence of Government Participant
5         No governmental entity participated in this matter;
6  this factor, therefore, is irrelevant to the court's analysis.
7              8. Reaction of the Class Members to the Proposed
8                 Settlement
9         Notice of the settlement was sent to 188,887
10 participating class members on November 3, 2015 and only four
11 class members submitted requests for exclusion prior to the
12 January 2, 2016 deadline.  (Bithell Decl. ¶ 10 (Docket No. 82-
13 1).)  Only one class member objected to the settlement.  (Pls.'
14 Mot. for Final Approval at 16; see also McCarthy Obj. (Docket No.
15 80).)[1]  "It is established that the absence of a large number of
16 objections to a proposed class action settlement raises a strong
17 presumption that the terms of a proposed class settlement action
18 are favorable to the class members."  DIRECTV, 221 F.R.D. at 529.
19 Accordingly, this factor weighs in favor of the court's approval
20 of the settlement.
21         Having considered the foregoing factors, the court

---

[1] John Thomas McCarthy, a former iYogi subscriber, objected that the settlement reward "is far too meager." (McCarthy Obj.)  He claims that he was subjected to iYogi's "constant telephonic harassment" and that iYogi was also unable to fix the computer problems he was having. (Id.)  He contends that class members who received unfavorable service and were subjected to telephonic harassment should be refunded the full subscription fee plus an additional amount. (Id.) This objection is of limited relevance given that it was iYogi's telephone practices, not the quality of iYogi's technical support services, that were at issue in this case.

10

finds the settlement is fair, adequate, and reasonable pursuant to Rule 23(e).

## B. Attorney's Fees

Plaintiffs' counsel requests $300,000 in attorney's fees for 664.3 hours of work on this case. Defendant does not oppose. (Def.'s Statement of Non-Opp'n at 2.)

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.). The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The Ninth Circuit recognizes two methods of assigning attorney's fees: the lodestar method and the percentage of recovery method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). While the percentage of recovery method is favored in common fund cases, here, where attorney's fees do not detract from a common settlement fund, the lodestar method is more appropriate. As a result, the court will apply the lodestar method and incorporate a percentage of the fund cross-check.

### 1. Lodestar Method

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Bluetooth, 654 F.3d at 941. While the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate multiplier based on a number of reasonableness factors. Id. at 941-42.

In determining the size of an appropriate fee award, the Supreme Court has emphasized that courts need not "achieve auditing perfection" or "become green-eyeshade accountants." Fox v. Vice, 131 S.Ct. 2205, 2217 (2011). Rather, because the "essential goal of shifting fees . . . is to do rough justice," the court may "use estimates" or "take into account [its] overall sense of a suit" to determine a reasonable attorney's fee. Id.

    a. Reasonable Hours

In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). The court may reduce the hours "where documentation is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." Id.

Plaintiffs' counsel represent that they worked a total of 664.3 hours on this case over a two-year time period. (Pls.' Mot. for Att'y's Fees at 8.) Jay Edelson, managing partner, represents to have worked 12.8 hours; Rafey S. Balabanian, managing partner in San Francisco, 108.5 hours; Benjamin H.

1  Richman, partner, 135.4 hours; Courtney C. Booth, associate, 212
2  hours; law clerks, 55.3 hours; and Stefan L. Coleman, partner at
3  the Law Offices of Stefan L. Coleman, 140.3 hours.  (Id. at 10.)
4  This included formal mediation, a year of arm's-length
5  negotiations, and complex legal issues against competent defense
6  counsel.  (Id. at 8.)  The information provided by plaintiffs'
7  counsel is sufficient to conclude that the 664.3 hours claimed
8  are reasonable and not excessive.
9            b. Reasonable Rate
10           Plaintiffs' counsel seeks a rate of $400 per hour for
11 partners, $200 for associates, and $100 for law clerks.  (Id. at
12 9-10.)  A reasonable rate is typically based upon the prevailing
13 market rate in the community "for similar work performed by
14 attorneys of comparable skill, experience, and reputation."
15 Chalmers, 796 F.2d at 1211.  The relevant community is generally
16 the forum in which the district sits.  Barjon v. Dalton, 132 F.3d
17 496, 500 (9th Cir. 1997).  Plaintiffs' counsel argue the
18 requested hourly rates correlate with reasonable rates in the
19 Sacramento market and are significantly lower than the rates
20 Edelson PC attorneys regularly charge to their hourly clients.
21 (Pls.' Mot. for Att'y's Fees at 10.)
22           Courts in the Eastern District of California have
23 regularly approved hourly rates of $400 or more for partners or
24 experienced attorneys, $150-175 for associates, and $100 for law
25 clerks in similarly complex cases.  See, e.g., Monterrubio v.
26 Best Buy Stores, L.P., 291 F.R.D. 443, 460-61 (E.D. Cal. 2013)
27 (England, J.) (applying the "prevailing hourly rates in the
28 Eastern District of California" of $400 for partners, $150 for

13

associates, and $100 for law clerks in a wage and hour class action); Ontiveros v. Zamora, 303 F.R.D. 356, 374 (E.D. Cal. 2014) (finding that the reasonable hourly rate in the Eastern District is $400 for experienced attorneys and $175 for associates in a wage and hour class action); Trulsson v. Cnty. Of San Joaquin Dist. Att'y's Office, Civ. No. 2:11-02986 KJM DAD, 2014 WL 5472787, at *6 (E.D. Cal. Oct. 28, 2014) (approving an hourly rate of $450 for an experienced attorney in a civil rights case). Moreover, plaintiffs' counsel explains that the partners involved in this case have as much as nineteen years of experience as litigators and that the law firm of Edelson PC has particularized experience in complex consumer class actions under the TCPA. (Pls.' Mot. for Att'y's Fees at 11, Ex. 1-A.) In light of the prevailing rates in the Eastern District in comparably complex cases and the experience of the attorneys, the court finds plaintiffs' proposed hourly rates of $400 for partners, $200 for associates, and $100 for law clerks reasonable.

Accordingly, the lodestar figure in this case is $206,730.00, calculated as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| Edelson: | 12.8 | x | $400 | = | $ 5,120.00 |
| Balabanian: | 108.5 | x | $400 | = | $ 43,400.00 |
| Richman: | 135.4 | x | $400 | = | $ 54,160.00 |
| Booth: | 212 | x | $200 | = | $ 42,400.00 |
| Law Clerks: | 55.3 | x | $100 | = | $ 5,530.00 |
| Coleman: | 140.3 | x | $400 | = | $ 56,120.00 |
| | | | | | $ 206,730.00 |

c. Enhancement of Lodestar

1      In addition to the lodestar figure, plaintiffs' counsel
2 requests a multiplier of 1.45.  In determining whether or not a
3 multiplier is appropriate, the court considers a number of
4 reasonableness factors including "the quality of representation,
5 the benefit obtained for the class, the complexity and novelty of
6 the issues presented, and the risk of nonpayment."  Bluetooth,
7 654 F.3d at 942 (citation omitted); see also Kerr v. Screen Guild
8 Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975) (enumerating
9 factors on which courts may rely in adjusting the lodestar
10 figure).  The most important factor is the benefit obtained for
11 the class.  Id.  Given the risks inherent to this case and the
12 possibility that plaintiffs would not have recovered anything, as
13 discussed above, the court finds that a 1.45 multiplier is
14 appropriate in this class action case.  Accordingly, the court
15 finds that a fee award of $300,000 is reasonable and appropriate
16 in this case.

17         2. Percentage of Recovery Cross-Check
18      Under the percentage of recovery method, the court may
19 award class counsel a percentage of the common fund recovered for
20 the class.  Vizcaino, 290 F.3d at 1047.  The Ninth Circuit has
21 approved a benchmark percentage of 25% for a reasonable fee award
22 and courts may adjust this figure upwards or downwards if the
23 record shows "special circumstances justifying a departure."
24 Bluetooth, 654 F.3d at 942 (citation omitted).  Where there is a
25 claims-made settlement, such as here, the percentage of the fund
26 approach in the Ninth Circuit is based on the total money
27 available to class members, not just the money actually claimed.
28 Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir.

1  1997) ("We conclude that the district court abused its discretion
2  by basing the fee on the class members' claims against the fund
3  rather than on a percentage of the entire fund or on the
4  lodestar."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904
5  F.2d 1301, 1311 (9th Cir. 1990) ([A]ttorneys' fees sought under a
6  common fund theory should be assessed against every class
7  members' share, not just the claiming members.").
8       The total money available to class members in this case
9  is $7,555,480.00.  This is because there are 188,887 class
10 members who could have each made a claim for $40.00.  Applying
11 the 25% benchmark, the percentage of recovery method would
12 justify a fee award of $1,888,870.00.  Accordingly, the
13 percentage of the recovery cross-check confirms that a fee award
14 of $300,000 is reasonable.
15      D. Incentive Payments to Named Plaintiffs
16      The court may award "reasonable incentive payments" to
17 named plaintiffs "to compensate class representatives for work
18 done on behalf of the class, to make up for financial or
19 reputational risk undertaken in bringing the action, and,
20 sometimes, to recognize their willingness to act as a private
21 attorney general." Davis v. Brown Shoe Co., Inc., Civ. No. 1:13-
22 01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015).
23 In assessing the reasonableness of incentive payments, the court
24 should consider "the actions the plaintiff has taken to protect
25 the interests of the class, the degree to which the class has
26 benefitted from those actions" and "the amount of time and effort
27 the plaintiff expended in pursuing the litigation." Staton, 327
28 F.3d at 977 (citation omitted).  In the Ninth Circuit, an

incentive award of $5,000.00 is presumptively reasonable.  <u>Davis</u>, 2015 WL 6697929, at * 11.

The three class representatives in this case seek incentive payments of $1,000.00 each, for a total of $3,000.00. (Pls.' Mot. for Att'y's Fees at 18 (Docket No. 79).)  An award amount of $1,000.00 per representative is significantly lower than the $5,000.00 awards found to be presumptively reasonable in the Ninth Circuit.  The award also seems to fairly compensate the class representatives for the time and resources they committed to pursuing this case and representing the class.  Their contributions included assisting in the investigation of their claims, providing information for discovery, reviewing drafts and discovery documents, and participating in conference calls with class counsel.  (Balabanian Decl. ¶ 33.)  The court therefore finds that the incentive payments are reasonable.

III. <u>Conclusion</u>

Based on the foregoing, the court grants final certification of the settlement class and approves the settlement set forth in the settlement agreement as fair, reasonable, and adequate.  Consummation of the settlement agreement is therefore approved.  The settlement agreement shall be binding upon all participating class members who did not exclude themselves.

IT IS THEREFORE ORDERED that plaintiffs' motions for final approval of the class and class action settlement and for reasonable attorney's fees, expenses, and incentive awards be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED THAT:

(1)  solely for the purpose of this settlement, and pursuant

```
 1              to Federal Rule of Civil Procedure 23, the court hereby
 2              certifies the following class: All individuals who are
 3              iYogi subscribers or former subscribers in the United
 4              States to whom iYogi or any agent or affiliate of iYogi
 5              made or attempted to make outbound calls (including but
 6              not limited to subscription renewal calls) to a telephone
 7              number assigned to cellular telephone service from
 8              September 23, 2009 until November 18, 2013.
 9              Specifically, the court finds that:
10              (a)   the settlement class members are so numerous that
11                    joinder of all settlement class members would be
12                    impracticable;
13              (b)   there are questions of law and fact common to the
14                    settlement class which predominate over any
15                    individual questions;
16              (c)   claims of the named plaintiffs are typical of the
17                    claims of the settlement class;
18              (d)   the named plaintiffs and plaintiffs' counsel have
19                    fairly and adequately represented and protected the
20                    interests of the settlement class; and
21              (e)   a class action is superior to other available
22                    methods for the fair and efficient adjudication of
23                    the controversy.
24        (2)   the court appoints the named plaintiffs, Vicki Estrada,
25              Patricia Goodman, and Kim Williams-Britt, as
26              representatives of the class and finds that they meet the
27              requirements of Rule 23;
28        (3)   the court appoints Jay Edelson, Rafey S. Balabanian,
```

|   |   |   |
|---|---|---|
| 1 |     | Benjamin H. Richman, and Courtney C. Booth, Edelson PC, |
| 2 |     | 329 Bryant Street, San Francisco, California, 94107, as |
| 3 |     | counsel to the settlement class and finds that counsel |
| 4 |     | meet the requirements of Rule 23; |
| 5 | (4) | the settlement agreement's plan for class notice is the |
| 6 |     | best notice practicable under the circumstances and |
| 7 |     | satisfies the requirements of due process and Rule 23. |
| 8 |     | The plan is approved and adopted.  The notice to the |
| 9 |     | class complies with Rule 23(c)(2) and Rule 23(e) and is |
| 10 |    | approved and adopted; |
| 11 | (5) | having found that the parties and their counsel took |
| 12 |    | appropriate efforts to locate and inform all putative |
| 13 |    | class members of the settlement, and given that only one |
| 14 |    | class member filed an objection to the settlement, the |
| 15 |    | court finds and orders that no additional notice to the |
| 16 |    | class is necessary; |
| 17 | (6) | as of the date of the entry of this Order, the plaintiffs |
| 18 |    | and all class members who have not timely opted out |
| 19 |    | hereby do and shall be deemed to have released the |
| 20 |    | released parties of any and all claims that the class |
| 21 |    | members had or have that have been or could have been |
| 22 |    | asserted in this action or in any other action or |
| 23 |    | proceeding (as defined by paragraph 1.28 of the |
| 24 |    | settlement agreement); |
| 25 | (7) | plaintiffs' counsel is entitled to fees and costs in the |
| 26 |    | amount of $300,000; |
| 27 | (8) | the named plaintiffs are entitled to incentive payments |
| 28 |    | of $1,000 each; and |

    (9)    this action is dismissed with prejudice; however, without affecting the finality of this Order, the court shall retain continuing jurisdiction over the interpretation, implementation, and enforcement of the settlement agreement with respect to all parties to this action and their counsel of record.

The clerk is instructed to enter judgment accordingly.

Dated:   January 26, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE